**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| **VICKI TIMPA, INDIVIDUALLY, AND AS REPRESENTATIVE OF THE ESTATE OF ANTHONY TIMPA, AND AS NEXT FRIEND OF K. T., A MINOR CHILD** | § § § § § | |
| **Plaintiffs,** | § § | |
| **V.** | § § | **CIVIL ACTION NO. _____** |
| **THE CITY OF DALLAS, JOHN DOE # 1-3, LONE STARR MULTI-THEATRES, LTD D/B/A NEW FINE ARTS, JOHN DOE # 4, AND JOHN DOE # 5** | § § § § § § | |
| **Defendants.** | § | |

**PLAINTIFFS' ORIGINAL COMPLAINT**

**NOW COMES** Vicki Timpa, Individually, and as Representative of the Estate of Anthony Timpa and as next friend of K.T., complaining of the City of Dallas, Dallas Police Department Officers John Doe # 1-3, Lone Starr Multi-Theatres, Ltd. d/b/a New Fine Arts, and John Doe # 4 and John Doe # 5, in support thereof, Plaintiffs respectfully show the Court as follows.

**PARTIES AND SERVICE**

1.     Plaintiffs are citizens of the United States, the State of Texas, and a resident of Dallas County, Texas

2.     Defendant City of Dallas, a municipal corporation, may be served by delivering a copy of the summons and of the complaint to the City of Dallas Manager, A.C. Gonzales, City Manager, at Dallas City Hall, 1500 Marilla St., Room 4EN, Dallas, Texas 75201.

3.      Defendant Lone Starr Multi-Theatres, Ltd. ("Lone Starr") is a Texas limited partnership whose business address is 1720 W. Mockingbird Ln. Dallas, Texas 7523. Defendant may be served with process by serving its registered agent Paul Radnitz at 4159 Billy Mitchell Rd. Addison, Texas 75001.

4.      John Doe # 1 is an unknown Dallas Police Officer. Service is not requested at this time. When requested, said Defendant may be served with personal process at his/her place of employment located at Jack Evans Police Headquarters, 1400 S. Lamar Street, Dallas, Texas 75215.

5.      John Doe # 2 is an unknown Dallas Police Officer. Service is not requested at this time. When requested, said Defendant may be served with personal process at his/her place of employment located at Jack Evans Police Headquarters, 1400 S. Lamar Street, Dallas, Texas 75215.

6.      John Doe # 3 is an unknown Dallas Police Officer. Service is not requested at this time. When requested, said Defendant may be served with personal process at his/her place of employment located at Jack Evans Police Headquarters, 1400 S. Lamar Street, Dallas, Texas 75215.

7.      John Doe # 4 is an unknown security guard believed to be employed by, or contracted by, Lone Starr, and was allegedly involved in the initial apprehension of Anthony Timpa. Service is not requested at this time.

8.      John Doe # 5 is an unknown security guard that was allegedly involved in the initial apprehension of Anthony Timpa. Service is not requested at this time.

## **JURISDICTION**

9.      The action arises under the Fourth and Fourteenth Amendments to the United States Constitution, and Title 42 U.S.C. §§ 1983 and 1988.

10.     This Court has jurisdiction over these claims pursuant to Title 28 U.S.C. §§ 1331 and 1343.

11.     This Court also has supplemental jurisdiction of the State law claims alleged in this petition pursuant to Title 28 U.S.C. § 1367.

## VENUE

12.     Venue is proper pursuant to Title 28 U.S.C. §1391(b)(1) in that the Defendants resides in Dallas, and the cause of action arises in the Northern District of Texas, Dallas Division.

## CONDITIONS PRECEDENT

13.     All conditions precedent have been performed or have occurred.

## FACTS

### ANTHONY TIMPA SUBDUED

14.     On August 10, 2016, Anthony Timpa was at New Fine Arts located at 1720 W. Mockingbird Ln. Dallas, TX 75235.

15.     According to Lone Starr store employees, Mr. Timpa purchased a lighter in the store.

16.     Mr. Timpa left the store and proceeded to cross the street.

17.     Upon leaving the store, Mr. Timpa was pursued by John Doe # 4, an unknown Security Guard believed to be employed by, or contracted by, Lone Starr.

18.     As Mr. Timpa began to cross Mockingbird Lane, John Doe # 4 restrain and subdue Mr. Timpa, and placed him in handcuffs.

19.     John Doe # 5 was allegedly driving by at the moment and stopped to help John Doe # 4.

20.     With the efforts of John Doe # 4 and # 5, Mr. Timpa was restrained and handcuffed.

## OFFICER RESTRAINS AND KILLS NON-RESISTING DECEDENT

21.     After Mr. Timpa had been subdued, John Doe # 1, 2 and/or 3 imposed excessive physical restraint on Mr. Timpa.

22.     At some point in time after being placed in handcuffs by John Does # 4 and # 5, John Does # 1-3 arrived on the scene.

23.     John Doe # 1, 2 and/or 3 put their handcuffs on Mr. Timpa.

24.     John Doe # 1, 2 and/or 3 held Mr. Timpa in a face-down, prone position.

25.     During that time, John Doe # 1, 2 and/or 3 removed the security guard's handcuffs and attached their own handcuffs to Mr. Timpa.

26.     During that time, John Doe # 1, 2 and/or 3 continuously had a knee in and applied pressure to Mr. Timpa's back.

27.     During that time and after being handcuffed by John Doe # 1, 2 and/or 3, Mr. Timpa never threatened John Doe # 1, 2 and/or 3.

28.     Mr. Timpa never resisted being handcuffed by John Doe # 1, 2 and/or 3.

29.     Mr. Timpa never attempted to flee from John Doe # 1, 2 and/or 3.

30.     Mr. Timpa never attempted to hit or fight with John Doe # 1, 2 and/or 3.

31.     Mr. Timpa never used a weapon to threaten or assault John Doe # 1, 2 and/or 3.

32.     EMS was eventually called to the scene.

33.    When Mr. Timpa was put in the ambulance by EMS to be transported to the hospital, the EMT's noticed Mr. Timpa had stopped breathing

34.    Mr. Timpa was pronounced dead a Parkland Hospital at 11:30 p.m.

## NOTICE THAT MR. TIMPA WAS SUFFERING DRUG-INDUCED PSYCHOSIS

35.    Mr. Timpa was killed while in the custody of the Dallas Police Department.

36.    Because Mr. Timpa died in police custody, the Dallas Police Department was required to complete a Custodial Death Report, and submit it to the Texas Attorney General.

37.    Sergeant E. Merritt, in the course of his/her duties for and under color of law, completed the Custodial Death Report.

38.    The Dallas Police Department's Custodial Death Report[1] ("CDR") states that Mr. Timpa appeared intoxicated.

39.    The CDR states that Mr. Timpa never threatened the officers involved.

40.    The CDR states that Mr. Timpa never resisted being handcuffed or arrested by the officers involved.

41.    The CDR states that Mr. Timpa never attempted to escape or flee from the officers involved.

42.    The CDR states that Mr. Timpa never attempted to hit or fight with the officers involved.

43.    The CDR states that Mr. Timpa never used a weapon to threaten or assault the officers involved.

44.    The CDR states that Mr. Timpa was securely handcuffed when John Does # 1-3 arrived.

---

[1] A copy of the CDR is attached hereto as Exhibit 1.

45.     John Doe # 1, 2 and/or 3 removed and placed their own handcuffs on Mr. Timpa after he was subdued and handcuffed by John Does # 4 and # 5.

46.     Emergency Medical Services were called.

47.     When EMS arrived, Mr. Timpa was placed in the ambulance and stopped breathing.

48.     A witness at the scene reported Mr. Timpa said "Someone is following me" as Mr. Timpa left the store.

49.     A witness at the scene described Mr. Timpa's behavior as "irrational."

50.     The autopsy showed that Mr. Timpa had ingested cocaine and Tramadol prior to their arrest.

## CAUSE OF DEATH

51.     The medical autopsy completed by the Dallas County Medical Examiner shows that Mr. Timpa's death was the result of excessive physical restraint.

52.     Detective Eduardo Ibarra told Vicki Timpa that Mr. Timpa died, "as a result of a lot of trauma."

53.     The manner of Mr. Timpa's death was homicide.[2]

54.     The cause of Mr. Timpa's death was excessive physical restraint and drug use.

55.     Dr. Emily Ogden, the medical examiner on the case, told Vicki Timpa that the John Doe # 1, 2 and/or 3 restrained by placing a knee on Mr. Timpa's back for "thirteen minutes" while Mr. Timpa lay face-down restrained in handcuffs.

## FACTS SHOW THAT OFFICERS USED EXCESSIVE, DEADLY FORCE

56.     Mr. Timpa was unarmed

57.     Mr. Timpa did not resist arrest.

---

[2] A copy of Mr. Timpa's death Certificate is attached hereto as Exhibit 2.

58.     Mr. Timpa did not evade arrest or detention.

59.     The Dallas Police Department did not remove or recover any weapons from Mr. Timpa.

60.     Mr. Timpa had not physically attacked the police officers at the scene.

61.     It is believed that Mr. Timpa suffered cardiac arrest because of trauma inflicted by the Dallas police officers.

62.     John Doe # 1, 2 and/or 3 employed deadly force against Mr. Timpa.

63.     John Doe # 1, 2 and/or 3 were acting under color of law when he/she used force against Mr. Timpa.

64.     John Doe # 1, 2 and/or 3 knew that Mr. Timpa was unarmed and not resisting.

65.     In fact, Mr. Timpa had already been handcuffed and lying in the prone position when the John Does # 1-3 arrived at the scene.

66.     John Doe # 1, 2 and/or 3 manifested conscious indifference to Mr. Timpa by holding him face down for 13 minutes, at least, applying excessive pressure to Mr. Timpa's head and torso.

67.     It is believed that the excessive pressure applied by the John Doe # 1, 2 and/or 3 to Mr. Timpa's chest cut off the blood flow to their heart, causing Mr. Timpa's heart to arrest.

68.     Extended and aggressive restraint is excessive force when an arrestee is impaired and non-threatening.

69.     The use of excessive force in this instance was clearly unreasonable.

70.     John Doe # 1, 2 and/or 3 knew or should have known that the use of excessive force in this instance was unreasonable, and constitutionally excessive.

71.     John Doe # 1, 2 and/or 3 violated Mr. Timpa's Fourteenth Amendment rights.

**NO REASONABLE OFFICER COULD BELIEVE THAT USE OF FORCE WAS
JUSTIFIED**

72.     John Doe # 1, 2 and/or 3's actions of restraining Mr. Timpa were deliberate,
malicious, and exercised with a wanton/reckless disregard for Mr. Timpa's constitutional rights.

73.     Since at least 1994, the Fifth Circuit has held that certain forms of restraint, like
the one used in this case, fall under the deadly force prohibition of the Fourth Amendment under
certain circumstances. *See Gutierrez v. City of San Antonio,* 139 F.3d 441, 447-49 (5th Cir.
1998).

74.     Fourth and Fourteenth Amendment jurisprudence has clearly established that
police officers cannot use excessive force upon an unarmed suspect who is not showing signs of
active resistance.

75.     The force utilized by John Doe # 1, 2 and/or 3 was excessive, and, therefore,
constituted an unreasonable seizure of Mr. Timpa in violation of the Fourteenth Amendments to
the United States Constitution.

76.     John Doe # 1, 2 and/or 3's actions constituted an unlawful deprivation of Mr.
Timpa's liberty without due process of law in violation of the Fourteenth Amendment to the
United States Constitution.

## CAUSES OF ACTION

**VIOLATION OF CONSTITUTIONAL RIGHTS**

77.     The factual allegations contained in the preceding paragraphs are hereby
incorporated and re-alleged for all purposes and incorporated herein with the same force and
effect as if set forth verbatim.

78.     John Doe # 1, 2 and/or 3 willfully and maliciously used excessive force to restrain
Anthony Timpa despite having no legitimate reason for doing so.

79.     The force used by John Doe # 1, 2 and/or 3 was recklessly excessive and killed Mr. Timpa.

80.     John Doe # 1, 2 and/or 3 and the City of Dallas' exercise of established policies and customs violated Mr. Timpa's rights clearly established under the United States Constitution to:

      a.   freedom from unreasonable seizure of their person;

      b.   freedom from the use of unreasonable, unnecessary, and excessive force;

      c.   freedom from infringement of rights to substantive due process;

81.     Alternatively, John Doe # 1, 2 and/or 3 and the City of Dallas violated established policies and customs, namely the forcible continuous pressure placed on Mr. Timpa's back, violated Mr. Timpa's rights clearly established under the United States Constitution to

      a.   freedom from unreasonable seizure of their person;

      b.   freedom from the use of unreasonable, unnecessary, and excessive force;

      c.   freedom from infringement of rights to substantive due process;

82.     The above-described actions subjected Mr. Timpa to a deprivation of rights and privileges secured to plaintiff by the Constitution and laws of the United States, including the due process clause of the Fourteenth Amendment to the Constitution of the United States, within the meaning of 42 U.S.C. § 1983.

## 42 U.S.C § 1983 AGAINST INDIVIDUAL DEFENDANTS

83.     The factual allegations contained in the preceding paragraphs are hereby incorporated and re-alleged for all purposes and incorporated herein with the same force and effect as if set forth verbatim. John Doe # 1, 2 and/or 3 exercise of these established policies and custom violated the decedent's clearly established right under the United States Constitution to:

    a.   freedom from unreasonable seizure of their person;

    b.   freedom from the use of unreasonable, unnecessary, and excessive force.

84.    John Doe # 1, 2 and/or 3 acted willfully, deliberately, maliciously, or with reckless disregard for Mr. Timpa's constitutional rights.

85.    The above-described actions subjected Mr. Timpa to a deprivation of rights and privileges secured to plaintiff by the Constitution and laws of the United States, including the due process clause of the Fourteenth Amendment to the Constitution of the United States, within the meaning of 42 U.S.C. § 1983.

## WRONGFUL DEATH

86.    The factual allegations contained in the preceding paragraphs are hereby incorporated and re-alleged for all purposes and incorporated herein with the same force and effect as if set forth verbatim. As the surviving parent of decedent Anthony Timpa, Plaintiff Vicki Timpa has an action for wrongful death based on the facts stated in Tex. Civ. Prac. & Rem. Code §§ 71.001-71.012.

## SURVIVAL ACTION

87.    The factual allegations contained in the preceding paragraphs are hereby incorporated and re-alleged for all purposes and incorporated herein with the same force and effect as if set forth verbatim. Had Mr. Timpa survived, he would have been entitled to bring actions for violations of their constitutional rights and for deprivations of state common law actions for Negligence, Assault, Battery, False Imprisonment and Intentional Infliction. As representative of their estate, Plaintiff has a cause of action for personal injuries suffered by Anthony Timpa, including to their health, dignity, and reputation before their death. Tex. Civ. Prac. & Rem. Code § 71.021.

## FALSE IMPRISONMENT

88.     The factual allegations contained in the preceding paragraphs are hereby incorporated and re-alleged for all purposes and incorporated herein with the same force and effect as if set forth verbatim.

89.     Plaintiff pleads a cause of action against Lone Starr and John Does #4 and 5 for false imprisonment.

90.     John Does # 4 and 5 unilaterally decided to make a citizen's arrest of Mr. Timpa by restraining him with handcuffs. John Doe # 4 was acting within the course and scope of his employment with Lone Starr.

91.     Mr. Timpa was conscious of this confinement and was harmed by the citizen's arrest in that the excessive restraint literally killed him.

## ASSAULT AND BATTERY

92.     The factual allegations contained in the preceding paragraphs are hereby incorporated and re-alleged for all purposes and incorporated herein with the same force and effect as if set forth verbatim.

93.     Pursuant to Texas state law, Plaintiffs pleads a cause of action against Lone Starr and John Does #4 and 5 for assault and battery.

94.     John Does # 4 and 5 intentionally, knowingly, and recklessly placed decedent Anthony Timpa in fear of imminent bodily injury.

95.     John Does # 4 and 5 intentionally, knowingly, and recklessly caused decedent Anthony Timpa serious bodily injury.

96.     John Does # 4 and 5 intentionally, knowingly, and recklessly placed decedent Anthony Timpa in fear of imminent bodily injury.

97.     John Does # 4 and 5 intentionally, knowingly, and recklessly caused decedent Anthony Timpa serious bodily injury and death.

98.     John Doe # 4 was acting within the course and scope of his employment with Lone Starr.

## NEGLIGENCE AND GROSS NEGLIGENCE

99.     The factual allegations contained in the preceding paragraphs are hereby incorporated and re-alleged for all purposes and incorporated herein with the same force and effect as if set forth verbatim.

100.    Plaintiff pleads a cause of action against the Defendants Lone Starr and John Does #4 and 5 for negligence and gross negligence.

101.    At all times relevant to this lawsuit, Defendant Lone Starr owed a duty to Plaintiff to exercise reasonably prudent and ordinary care in the determining whether John Doe # 4 was fit to guard the storefront.

102.    Defendant Lone Starr violated this duty by negligently permitting Security Guard Doe to remain unsupervised and employ inappropriate force indiscriminately. Defendant Lone Starr failed to act in a reasonably prudent manner, as others would have under the same or similar circumstances.

103.    John Doe # 4 was acting within the course and scope of his employment with Lone Starr.

## NEGLIGENT HIRING, SUPERVISION, AND/OR TRAINING

104.    The factual allegations contained in the preceding paragraphs are hereby incorporated and re-alleged for all purposes and incorporated herein with the same force and effect as if set forth verbatim.

105.    Plaintiff pleads a cause of action against Defendant Lone Starr for negligent hiring, supervision, and/or training.

106.    At all times relevant to this lawsuit, Defendant Lone Starr owed a duty to Plaintiff to exercise reasonably prudent and ordinary care in the determining whether John Doe # 4 was fit to guard the storefront and properly trained.

107.    Defendant Lone Starr violated this duty by negligently permitting John Doe # 4 to carry handcuffs unsupervised, and employ the handcuffs indiscriminately. Defendant Lone Starr failed to act in a reasonably prudent manner, as others would have under the same or similar circumstances.

108.    John Doe # 4 was acting within the course and scope of his employment with Lone Starr.

## GROSSLY NEGLIGENT HIRING, SUPERVISION AND/OR TRAINING

109.    The factual allegations contained in the preceding paragraphs are hereby incorporate and re-alleged for all purposes and incorporated herein with the same force and effect as if set forth verbatim.

110.    Plaintiff pleads a cause of action against Defendant Lone Starr for grossly negligent hiring, supervision, and/or training.

111.    The acts and omissions of Defendant Lone Starr, described above, when viewed objectively from the standpoint of the Defendant at the time of the acts or omissions, involved an extreme degree of risk, considering the probability and magnitude of the potential harm to others, and Defendants had actual, subjective awareness of the risk involved, but nevertheless proceeded with conscious indifference to the rights, safety, or welfare of others.

## RESPONDEAT SUPERIOR

112.    Plaintiff specifically pleads *respondeat superior* and holds the Defendant Lone Starr liable for these acts described which John Doe # 4 committed during the course and scope of his/her employment for the Lone Starr.

113.    Likewise, at all point relevant to Defendant Security Guard Doe's actions Lone Starr was vicariously liable for Security Guard Doe's intentional torts.

114.    John Doe # 4 was acting within the course and scope of his employment with Lone Starr.

## DAMAGES

115.    Plaintiffs sustained actual and consequential damages as a direct result of the actions and/or omissions of the Defendant described hereinabove.

116.    As a direct and proximate result of Defendants' acts and omissions as heretofore alleged, Anthony Timpa suffered physical impairment, excruciating pain, mental anguish, medical treatments, and death. The estate is therefore entitled to recover all reasonable and necessary medical and funeral expenses incurred for the care, treatment and burial of Anthony Timpa that resulted from the tortious acts of the Defendants. In addition, the Estate of Anthony Timpa has an action for the injuries suffered, including but not limited to the disfigurement, humiliation, past pain and suffering, mental anguish and physical capacity suffered because of the incident.

117.    Furthermore, Plaintiff Vicki Timpa, as a parent of the decedent, and K.T., as minor child of the decedent, have suffered Wrongful Death damages for their individual (1) pecuniary loss, (2) mental anguish, (3) loss of companionship and society, and (4) loss of inheritance. Such damages include, but are not limited to past and future lost earnings, past and

future mental anguish damages, and other actual damages that are determined under trial of the merits.

118. In addition, the foregoing acts were committed with the kind of willfulness, wantonness, fraud, and/or malice for which the law allows imposition of punitive damages against said Defendants. Plaintiffs are therefore entitled to exemplary damages in an amount exceeding the minimum jurisdictional limits of this Court.

## ATTORNEY'S FEES

119. Plaintiff is further entitled to receive her reasonable attorneys' fees pursuant to 42 U.S.C. § 1988.

120. Plaintiffs are further entitled to receive pre-judgment and post-judgment interest at the highest interest rate allowable by law.

## JURY DEMAND

121. Plaintiff demands a jury trial.

## PRAYER

Plaintiffs respectfully pray that the Defendants be cited to appear and answer herein, and that upon a final hearing of the cause, judgment be entered for the Plaintiffs against the Defendants for damages in an amount within the jurisdictional limits of the Court; exemplary damages, attorneys' fees, together with pre- and post- judgment interest as allowed by law, costs of court, and such other further relief to which the Plaintiffs may be entitle at law or in equity.

Respectfully Submitted,

By:  /s/ Geoff J. Henley
Geoff J. Henley
Texas Bar No. 00798253
ghenley@henleylawpc.com

R. Lane Addison
Texas Bar No. 24059355
rladdison@henleylawpc.com
**HENLEY & HENLEY, P.C.**
3300 Oak Lawn Avenue, Suite 700
Dallas, Texas 75219
Tel. (214) 821-0222
Fax. (214) 821-0124
**ATTORNEYS FOR PLAINTIFFS**

# EXHIBIT 1



**Custodial Death Report**
**Filed: 8-11-2016 7:09 am**
**PA16349C**

## Agency/Facility Information

**Name:** Dallas Police Dept.
**Address:** 1400 S. Lamar Street
**City, Zip:** Dallas, 75215
**Phone:** 214-671-3654
**Director:** David O. Brown
**Name of Report Filer:** Sergeant E. Merritt #8112
**Email of Report Filer:** e.merritt@dpd.dallascityhall.com

## Identity Of Deceased

**Name:** Anthony Timpa
**Race/Ethnicity:** Anglo
**Sex:** Male
**DOB:** 08-05-1984
**Age:** 32

## Date Of Custody (arrest, incarceration)

8-10-2016 10:30 pm

## Date Of Death

8-10-2016 11:30 pm

## Where did the event causing the death occur?

**Address:** 1700 Mockingbird Lane
**City:** Dallas
**County:** Dallas

## Has a medical examiner or coroner conducted an evaluation to determine a cause of death?

No, evaluation pending

## Apparent Manner Of Death:

Other
     **Description:** Unknown

## Medical Cause Of Death:

Unknown at this time

## Was the cause of death the result of a pre-existing medical condition or did the deceased develop the condition after admission?

Don't know

**Had the deceased been receiving treatment for the medical condition after admission to your jail's jurisdiction?**

Not Applicable

**Type of Custody**

Custody of Peace Officer subsequent to arrest

**What were the most serious offenses with which the deceased was (or would have been charged with at the time of death)?**

1. APOWW
**Status:** Not filed at time of death

**Type of Charges**

Other - **Specify:** APOWW

**Did the deceased die from a medical condition or from injuries sustained at the crime/arrest scene?**

Don't know

**If injured at the crime/arrest scene, how were these injuries sustained?**

Unknown

**Was the deceased under restraint in the time leading up to the death or the events causing the death?**

Yes
**Devices used:**
Handcuffs

**At any time during the arrest/incident, did the deceased:**

Appear intoxicated (either alcohol or drugs)? - Yes.
Threaten the officers(s) involved? - No.
Resist being handcuffed or arrested? - No.
Try to escape/flee from custody? - No.
Grab, hit or fight with the officer(s) involved? - No.
Use a weapon to threaten or assault the officer(s)? - No.
Other - No.
Not Applicable - No.

**What type of weapon(s) caused the death?**

Not Applicable

**Where did the deceased die?**

At medical facility

**What was the time and date of the deceased's entry into the law enforcement facility where the death occurred?**

Not Applicable

### At the time of entry into the facility, did the deceased:

Appear intoxicated (either alcohol or drugs)? - No.
Exhibit any mental health problems? - No.
Exhibit any medical problems? - No.
Not Applicable - Yes.

### If death was an accident or homicide, who caused the death?

Don't know

### If death was an accident, homicide or suicide, what was the means of death?

Don't know

### Summary of How the Death Occurred:

On August 10, 2016, at approximately 10:13 p.m., the subject was with an unidentified
black male at the New Fine Arts store in the 1700 block of Mockingbird Avenue. The
subject became irrational and ran out of the store. Witnesses said the subject believed
someone was after him. A security guard followed the subject out of the business and
east on Mockingbird Lane. The subject began walking into traffic so the security
guard tried to physically restrain him. A second security guard was driving by the
location, saw the altercation, and stopped to aid the first security guard. The security
guards work for different companies. The two were able to put the subject into
handcuffs. At this point, an officer arrived and put his handcuffs on the subject.
Additional cover officers arrived and they attempted to gain control of the subject.
DFR was called to the scene and the subject was placed in the ambulance, then he
stopped breathing. The subject was transported to Parkland Hospital where he was
pronounced. Officers did not use an Electronic Control Weapon or an impact weapon.
An independent civilian witness was at the scene and provided a statement. Three of
the involved officers were wearing body cameras.

# EXHIBIT 2

# STATE OF TEXAS

## CITY OF DALLAS

| STATE OF TEXAS | CERTIFICATE OF DEATH | STATE FILE NUMBER |
|---|---|---|

**1. LEGAL NAME OF DECEASED** (include AKA'S, if any) (First, Middle, Last)
ANTHONY ALAN TIMPA

**2. SEX** MALE

**4. DATE OF BIRTH** (mm-dd-yyyy) JUNE 3, 1984

**5. AGE-Last Birthday** (Years) 32

**6. DATE OF DEATH – ACTUAL OR PRESUMED** (mm-dd-yyyy) AUGUST 10, 2016

**8. BIRTHPLACE** (City & State or Foreign Country) DALLAS, TX

**7. SOCIAL SECURITY NUMBER** 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

**9. MARITAL STATUS AT TIME OF DEATH** ☒ Never Married

**10a. RESIDENCE STREET ADDRESS** 2728 McKINNON STREET

**10b. STATE** TEXAS

**10c. COUNTY** DALLAS

**10d. ZIP CODE** 75201

**10e. APT. NO** 1420

**10c. CITY OR TOWN** DALLAS

**10c. INSIDE CITY LIMITS?** ☒ Yes

**11. FATHER'S NAME PRIOR TO FIRST MARRIAGE** JOSEPH CHARLES TIMPA

**12. MOTHER'S NAME PRIOR TO FIRST MARRIAGE** VICKI ANN HUBER

**13. PLACE OF DEATH (CHECK ONLY ONE)**
IF DEATH OCCURRED IN A HOSPITAL: ☒ ER/Outpatient

**14. COUNTY OF DEATH** DALLAS

**15. CITY/TOWN, ZIP** DALLAS, 75235

**16. FACILITY NAME** PARKLAND MEMORIAL HOSPITAL

**17. INFORMANT'S NAME & RELATIONSHIP TO DECEASED** KIM TIMPA - STEPMOTHER

**18. MAILING ADDRESS OF INFORMANT** (Street and Number, City, State, Zip Code) 1833 MORAINE WAY, HEATH, TX 75032

**19. METHOD OF DISPOSITION** ☒ Burial

**20. SIGNATURE AND LICENSE NUMBER OF FUNERAL DIRECTOR OR PERSON ACTING AS SUCH**
DANIEL ADAMS, BY ELECTRONIC SIGNATURE - 116605

**21** Section REFLECTION WERS
Block FAMILY ESTATE
Lot 12
Space 1

**22. PLACE OF DISPOSITION** (Name of cemetery, crematory, other place)
REST HAVEN MEMORIAL PARK

**23. LOCATION** (City/Town, and State) ROCKWALL, TX

**24. NAME OF FUNERAL FACILITY** REST HAVEN FUNERAL HOME-ROCKWALL CHAPEL

**25. COMPLETE ADDRESS OF FUNERAL FACILITY** (Street and Number, City, State, Zip Code) 2500 STATE HWY 66, ROCKWALL, TX 75087

**26. CERTIFIER (Check only one)**

**27. SIGNATURE OF CERTIFIER**
EMILY OGDEN , BY ELECTRONIC SIGNATURE

**28. DATE CERTIFIED** (mm-dd-yyyy) AUGUST 13, 2016

**29. LICENSE NUMBER** Q0681

**30. TIME OF DEATH** (Actual or presumed) 11:30 PM

**31. PRINTED NAME, ADDRESS OF CERTIFIER** (Street and Number, City, State, Zip Code)
EMILY OGDEN 2356 N. STEMMONS FWY, DALLAS, TX 75207

**32. TITLE OF CERTIFIER** M.D

**33 PART 1. ENTER THE CHAIN OF EVENTS**

IMMEDIATE CAUSE ☒ PENDING

## SEE ATTACHED AMENDMENT

Approximate Interval Onset to death UNKNOWN

**34. WAS AN AUTOPSY PERFORMED?** ☒ Yes

**35. WERE AUTOPSY FINDINGS AVAILABLE TO COMPLETE THE CAUSE OF DEATH** ☒ No

**36. MANNER OF DEATH**
☒ Pending investigation

**37. DID TOBACCO USE CONTRIBUTE TO DEATH?** ☒ Unknown

**38. IF FEMALE**

**39. IF TRANSPORTATION INJURY, SPECIFY**

**40a. DATE OF INJURY** (mm-dd-yyyy)

**40b. TIME OF INJURY**

**40c. INJURY AT WORK?**

**40d. PLACE OF INJURY**

**40e. LOCATION** (Street and Number, City, State, Zip Code)

**40f. COUNTY OF INJURY**

**41. DESCRIBE HOW INJURY OCCURRED**

**42a. REGISTRAR FILE NO.** 0208882

**42b. DATE RECEIVED BY LOCAL REGISTRAR** AUGUST 18, 2016

**42c. REGISTRA**
REGISTRAR - CITY OF DALLAS, ELECTRONICALLY FILED

VS-112 REV / 2008

# AMENDMENT TO MEDICAL CERTIFICATION OF CERTIFICATE OF DEATH

STATE OF TEXAS

ENTER NAME OF DECEASED AND PLACE OF DEATH EXACTLY AS SHOWN ON THE ORIGINAL DEATH CERTIFICATE

1. LEGAL NAME OF DECEASED (Include AKA's, if any) (First, Middle, Last)

**ANTHONY ALAN TIMPA**

2. DATE OF DEATH (mm-dd-yyyy): AUGUST 10, 2016

PLACE OF DEATH (CITY OR TOWN AND COUNTY)

**PARKLAND MEMORIAL HOSPITAL, DALLAS, DALLAS**

IS THE DATE OF DEATH BEING CORRECTED? ☐ Yes ☒ No

26. CERTIFIER (Check only one)

☐ Certifying physician-To the best of my knowledge, death occurred due to the cause(s) and manner stated

☒ Medical Examiner/Justice of the Peace - On the basis of examination, and/or investigation, in my opinion, death occurred at the time, date and place, and due to the cause(s) and manner stated

27. SIGNATURE OF CERTIFIER

**EMILY OGDEN , BY ELECTRONIC SIGNATURE**

28. DATE CERTIFIED (mm-dd-yyyy): OCTOBER 10, 2016

29. LICENSE NUMBER: Q0681

30. TIME OF DEATH (Actual or presumed): 11:30 PM

31. PRINTED NAME, ADDRESS OF CERTIFIER (Street and Number, City, State, Zip Code)

**EMILY OGDEN  2355 N. STEMMONS FWY, DALLAS, TX 75207**

M.D

32. TITLE OF CERTIFIER

32. PART I. ENTER THE CHAIN OF EVENTS – DISEASES, INJURIES, OR COMPLICATIONS – THAT DIRECTLY CAUSED THE DEATH. DO NOT ENTER TERMINAL EVENTS SUCH AS CARDIAC ARREST, RESPIRATORY ARREST, OR VENTRICULAR FIBRILLATION WITHOUT SHOWING THE ETIOLOGY. DO NOT ABBREVIATE. ENTER ONLY ONE CAUSE ON A EACH

Approximate interval Onset to death

IMMEDIATE CAUSE (First disease or condition resulting in death)

a. **SUDDEN CARDIAC DEATH**

UNKNOWN

Due to (or as a consequence of)

Sequentially list conditions if any, leading to the cause. Based on line a. Enter the UNDERLYING CAUSE (disease or injury that initiated, the events resulting in death) LAST

b. **THE TOXIC EFFECTS OF COCAINE AND PHYSIOLOGIC STRESS ASSOCIATED WITH PHYSICAL RESTRAINT**

Due to (or as a consequence of)

c.

Due to (or as a consequence of)

d.

PART 2. ENTER OTHER SIGNIFICANT CONDITIONS CONTRIBUTING TO DEATH, BUT NOT RESULTING IN THE UNDERLYING CAUSE GIVEN IN PART I.

**CARDIAC HYPERTROPHY, BIPOLAR DISORDER**

34. WAS AN AUTOPSY PERFORMED? ☒ Yes ☐ No

35. WERE AUTOPSY FINDINGS AVAILABLE TO COMPLETE THE CAUSE OF DEATH? ☒ Yes ☐ No

36. MANNER OF DEATH
☐ Natural
☐ Accident
☐ Suicide
☒ Homicide
☐ Pending Investigation
☐ Could not be determined

37. DID TOBACCO USE CONTRIBUTE TO DEATH?
☐ Yes
☒ No
☐ Probably
☐ Unknown

38. IF FEMALE
☐ Not pregnant with in past year
☐ Pregnant at time of death
☐ Not pregnant, but pregnant within 42 days of death
☐ Not pregnant, but pregnant 43 days to one year before death
☐ Unknown if pregnant within the past year

39. IF TRANSPORTATION INJURY, SPECIFY
☐ Driver/Operator
☐ Passenger
☐ Pedestrian
☐ Other (Specify)

40a. DATE OF INJURY (mm-dd-yyyy): AUGUST 10, 2016.

40b. TIME OF INJURY: 10:32 PM

40c. INJURY AT WORK? ☐ Yes ☒ No

40d. PLACE OF INJURY (e.g., Decedent's home, construction site, restaurant, wooded area): OUTSIDE

40e. LOCATION (Street and Number, City,State,Zip Code)

**1720 WEST MOCKINGBIRD LANE, DALLAS, TX 75235**

40f. COUNTY OF INJURY: DALLAS

41. DESCRIBE HOW INJURY OCCURRED

**ILLICIT DRUG USE AND PHYSICAL RESTRAINT**

VS-174 REV 1/2008

42. REGISTRAR FILE NO.: 0208882

42a. DATE FILED (MM-DD-YYYY): OCTOBER 10, 2016

42b. STATE REGISTRAR: *Geraldine K. Harris*

EDR  000001949944



This is a true and correct reproduction of the original record as recorded in this office. Issued under authority of Section 191.051, Health and Safety Code.

*Anedrya Price*
Anedrya Price
Local Registrar

ISSUED  OCT 27 2016

THE STATE OF TEXAS

BUREAU OF VITAL STATISTICS • DALLAS, TEXAS

WARNING: THIS DOCUMENT HAS A DARK BLUE BORDER AND A COLORED BACKGROUND

ANY ALTERATION OR ERASURE VOIDS THIS CERTIFICATE