## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| **VICKI TIMPA, INDIVIDUALLY, AND AS REPRESENTATIVE OF THE ESTATE OF ANTHONY TIMPA, AND CHERYLL TIMPA INDIVIDUALLY AS NEXT FRIEND OF K. T., A MINOR CHILD** Plaintiffs, | § § § § § § § § | |
| **V.** | § § | **CIVIL ACTION NO. 3:16-cv-03089-N** |
| **DUSTIN DILLARD, DANNY VASQUEZ, RAYMOND DOMINGUEZ, DOMINGO RIVERA, KEVIN MANSELL, GLENN JOHNSON, CRIMINAL INVESTIGATIVE UNIT, LLC** | § § § § § § § § § § § | |
| Defendants. | § | |

## PLAINTIFFS' SECOND AMENDED COMPLAINT

**NOW COMES** Vicki Timpa, Individually, and as Representative of the Estate of Anthony Timpa and Cheryll Timpa, individually, as next friend of K.T., ("Plaintiffs"), complaining of Dallas Police Department Officers Dustin Dillard, Danny Vasquez, Rivera, Mansell, and Dominguez, Glenn Johnson, and Criminal Investigative Unit, LLC, in support thereof, Plaintiffs respectfully show the Court as follows.

## PARTIES AND SERVICE

1.  Plaintiff Vicki Timpa is a citizen of the United States, the State of Texas, and a resident of Dallas County, Texas.

2.      Plaintiffs Cheryll Timpa and K.T. are citizens of the United States, the State of Texas, and residents of Collin County, Texas.

3.      Dustin Dillard is a Dallas Police Officer. The Defendant may be served with personal process at his/her place of employment located at Jack Evans Police Headquarters, 1400 S. Lamar Street, Dallas, Texas 75215.

4.      Danny Vasquez is a Dallas Police Officer. The Defendant may be served with personal process at his/her place of employment located at Jack Evans Police Headquarters, 1400 S. Lamar Street, Dallas, Texas 75215.

5.      Domingo Rivera is a Dallas Police Officer. The Defendant may be served with personal process at his/her place of employment located at Jack Evans Police Headquarters, 1400 S. Lamar Street, Dallas, Texas 75215.

6.      Raymond Dominguez is a Dallas Police Officer. The Defendant may be served with personal process at his/her place of employment located at Jack Evans Police Headquarters, 1400 S. Lamar Street, Dallas, Texas 75215.

7.      Kevin Mansell is a Dallas Police Officer. The Defendant may be served with personal process at his/her place of employment located at Jack Evans Police Headquarters, 1400 S. Lamar Street, Dallas, Texas 75215.

8.      Glenn Johnson, owner of Crime Investigative Unit, is a security guard that was allegedly involved in the initial apprehension of Anthony Timpa. Defendant may be served with personal process at his/her place of employment located at 1555 W. Mockingbird Lane, Dallas, Texas 75235.

9.      Crime Investigative Unit, LLC ("CIU"), a Texas limited liability company. Defendant has its principal place of business at 1555 W. Mockingbird Lane, Dallas, Texas 75235.

Service of process on defendant may be made according to the laws of the State of Texas by serving Glenn Johnson, manager of the LLC.

## JURISDICTION

10.     The action arises under the Fourth and Fourteenth Amendments to the United States Constitution, and Title 42 U.S.C. §§ 1983 and 1988.

11.     This Court has jurisdiction over these claims pursuant to Title 28 U.S.C. §§ 1331 and 1343.

12.     This Court also has supplemental jurisdiction of the State law claims alleged in this petition pursuant to Title 28 U.S.C. § 1367.

## VENUE

13.     Venue is proper pursuant to Title 28 U.S.C. §1391(b)(1) in that the Defendants resides in Dallas, and the cause of action arises in the Northern District of Texas, Dallas Division.

## CONDITIONS PRECEDENT

14.     All conditions precedent have been performed or have occurred.

## FACTS

### MAN IN MENTAL CRISIS ALREADY IN HANDCUFFS

15.     On August 10, 2016, Anthony "Tony" Timpa was at New Fine Arts located at 1720 W. Mockingbird Lane. Dallas, TX 75235.

16.     While at that location, he contacted 9-1-1 telling the dispatcher that he feared for his safety. He further told the dispatcher that he suffered from anxiety, schizophrenia, had been off of his medication, and was unarmed. The call gets disrupted for some reason, and the dispatcher calls him back. Throughout both calls, Timpa states he is anxious, and afraid. At times, his statements are incoherent, and it is more than apparent that he is disoriented.

17.    While outside of the store, Tony suddenly and inexplicably to onlookers runs into the parking lot, as depicted on a surveillance camera.

18.    Upon leaving the store, Tony was pursued by Sammie Washington, who was working in the course and scope of his employment for Terron Security Services, Inc., a Security Company employed by, or contracted by, New Fine Arts.

19.    Timpa crosses near the 1700 block of Mockingbird Lane multiple time in a disoriented panic. Concerned for his own safety, he flags down a security guard.

20.    Tony's behavior remains erratic, as other 9-1-1 callers indicate.

21.    Seeing Tony, the two security guards handcuff him on the ground.

22.    Officers from the Dallas Police Department begin arriving on the scene. First on the scene is Sgt. Kevin Mansell who arrives near 10:30:36 PM. Some seven minutes minutes later at 10:37:46 PM, Officers Justin Dillard, and Danny Vasquez arrive. Next come Officers Domingo Rivera and Raymond Dominguez, three minutes later at 10:40:13 and 10:40:41, respectively.

23.    All of the DPD patrolmen were in uniform, and acting under color of law.

24.    Defendants Dillard, Vasquez, and Rivera wore body cameras that recorded the events before them.

## THE DEFENDANTS SMOTHER TONY FOR 14 MINUTES

25.    Officers Dillard and Vasquez approach Timpa, who is handcuffed, and laying on the ground.

26.    Their body cameras record Timpa telling the officers that, "You're going to kill me." (Vasquez 0:50-0:60).

27.    Dillard tells them that he is not going to do so, but then he and other officers proceed to roll Timpa onto his chest face down in the grass. Once face down, Vasquez puts his knee on

Timpa's left shoulder, and pins it to the ground for approximately 160 seconds. (Dillard 0:50-3:30).

28.    Dillard puts his knee into the back of Anthony Timpa, and pins him with his bodyweight. Dillard likewise puts hands on Timpa's shoulders, and presses them into the ground. As Vasquez and his own bodycam depicts, Dillard maintains this position for approximately 14 minutes and 7 seconds. (Vasquez 1:30-15:37). Periodically, Dillard applied additional force into Timpa's back. (Vasquez 2:03, 4:28, 8:40).

29.    While Dillard and Vasquez pin down Timpa's torso, Defendant Johnson puts his bodyweight on Timpa's thighs, and pulls and holds Timpa's feet and ankles forward at an angle. (Vasquez 1:31-3:47).

30.    Vasquez too would continuously push down on Timpa's back with one of his hands. (Vasquez 9:29-12:15).

31.    In sum, Defendants Vasquez, Johnson, and Rivera help Dillard smother Timpa for more than 14 minutes.

32.    The body cameras vividly depict the horror that unfolds during these minutes.

33.    Anthony Timpa repeatedly tells the officers that they are going to "kill me," and "don't hurt me." (*e.g.* Vasquez 2:30-2:35). Likewise, he makes repeated cries for help. (Vasquez 3:10, 3:40-3:45).

34.    Early on, Dillard asks Timpa, "Tony, what did you take today?" (Dillard 1:03-1:20; Vasquez 1:42-1:55).

35.    With the officers on top of him, and with his face in the grass, Timpa replies, "Coke." (Dillard 1:07; Vasquez 1:45). Timpa follows that up with "I know it's illegal, but I only took a little bit." (Dillard 1:15-1:20; Vasquez 1:50-2:00).

36.    The trauma of Tony's disorientation becomes more apparent on the tapes as Timpa mumbles, and gasps on the ground.

37.    The officers needlessly prolong Timpa's restraint on the ground in several ways.

38.    One way, they did so was by switching the security guard's handcuffs with one of the officer's. This was done for the stated reason of "not having to worry" about making the change once Timpa was standing. To facilitate this change, though, the officers spent yet more time on top of Timpa.

### OFFICERS RIDICULE A DYING MAN RATHER THAN RENDER AID

39.    Tony continues to gasp, gag, and groan. (Vasquez 9:15-9:35). Meanwhile, the officers surrounding him laugh, and jeer.[1]

40.    As time progresses, the officers, though, increase their ridicule of Timpa, and some of his incoherent remarks.

41.    After approximately 11 and half minutes with Dillard's knee square in his back, Timpa goes completely unresponsive. (Vasquez 11:50). He is no longer gasping, or mumbling. He is completely silent.

42.    It is not until more than a minute later, Dillard inquires if Tony is conscious. He does not dislodge his knee, or move off of the unresponsive Timpa. Even after realizing that Tony is unresponsive, Dillard continues to keep his bodyweight on top of Tony for an additional two and a half minutes. (Vasquez 13:02-15:37).

43.    The officers begin suggesting that Tony has fallen asleep, asserting even that he might have been snoring. (Vasquez 13:33-13:50). During this time, they then begin making jokes

---

[1] They probe through his wallet making light of his association with a Rockwall yacht club, a Baylor Hospital health club, and his ownership of a Mercedes. ("He's got 'mur-ka-deeze' somewhere." Vasquez 9:15-9:21)

about waking Tony up for school, and breakfast.[2] One mimics Tony's incoherent speech,[3] while Tony lays silently on the grass.

### OFFICERS FINALLY RECOGNIZE THEY HAVE KILLED TONY

44. The officers then discuss with EMS workers what to do with Tony. It is decided then that they will place him on a gurney, and arrange transportation.

45. As they heave Tony onto the gurney, the officers finally acknowledge Tony's true condition, as he has now been unresponsive for more than three minutes and 30 seconds.

46. "I hope I didn't kill him," Dillard begins. (Dillard 15:55).

47. Some of the officers begin to laugh. (Dillard 16:00-16:05).

48. One says off camera in a mock effort to distance himself from Tony's death, "What's this 'we' you are talking about?" (Dillard 16:00-16:05).

49. The officers load Tony into the ambulance. Shortly thereafter, one of the EMS workers tells, Sgt. Kevin Mansell, "He's dead." (Dillard 17:00).

50. Mansell, who had been away from the group for the previous several minutes, while speaking with Tony's stepmother, Kim Timpa, on the phone abruptly ends the phone call.

51. He then walks over to Vasquez, and angrily says, "What the fuck?" (Vasquez 17:55).

52. Hearing the visibly agitated sergeant, Vasquez shuts off his body camera.

53. While Mansell, and Vasquez are discussing what they did. Defendants Dillard, and Rivera are inside the ambulance preparing to administer cardiopulmonary resuscitation on Tony. CPR begins at 17:15 on Dillard's camera, more than five minutes and twenty seconds after Tony became silent. For the next several minutes, the officers take turns administering pumping Tony's

---

[2] Vasquez 14:05 – 14:30.
[3] *Id.* at 14:09 – 14:15.

chest with their hands. Officers emerge late emerge from the ambulance, and someone says announces his death to a small group outside.

### CUSTODIAL DEATH REPORT CONCEDES THAT TONY WAS NO THREAT

54.     Because Mr. Timpa died in police custody, the Dallas Police Department was required to complete a Custodial Death Report, and submit it to the Texas Attorney General.

55.     Sergeant E. Merritt, while in the course and scope of his/her duties for and under color of law, completed the Custodial Death Report.

56.     The Dallas Police Department's Custodial Death Report[4]("CDR") states that Mr. Timpa appeared intoxicated.

57.     The CDR states that Mr. Timpa never threatened the officers involved.

58.     The CDR states that Mr. Timpa never resisted being handcuffed or arrested by the officers involved.

59.     The CDR states that Mr. Timpa never attempted to escape or flee from the officers involved.

60.     The CDR states that Mr. Timpa never attempted to hit or fight with the officers involved.

61.     The CDR states that Mr. Timpa never used a weapon to threaten or assault the officers involved.

62.     The CDR states that Mr. Timpa was securely handcuffed when the Dallas Police officers arrived.

---

[4] A copy of the CDR is attached hereto as Exhibit 1.

## MEDICAL EXAMINER CONCLUDES TONY'S DEATH WAS A HOMICIDE

63.    Dallas County Medical Examiner Dr. Emily Ogden shows that Mr. Timpa's death was the result of excessive physical restraint.

64.    Dr. Ogden concluded the manner of Tony's death was a "Homicide."

65.    Dr. Ogden concluded that suffered "SUDDEN CARDIAC DEATH," as a result of the "TOXIC EFFECTS OF COCAINE AND PHYSIOLOGIC STRESS AND PHYSICAL RESTRAINT."

66.    Dr. Emily Ogden likewise told Vicki Timpa that an officer restrained by placing a knee on Mr. Timpa's back for some thirteen minutes while Mr. Timpa lay face-down restrained in handcuffs.

## FACTS SHOW THAT OFFICERS USED EXCESSIVE, DEADLY FORCE

67.    At all times relevant to this incident, Defendants knew that Tony was in severe mental distress.

68.    At all times relevant to this incident, Defendants knew that Tony was intoxicated, and under the influence of some narcotic, specifically cocaine.[5]

69.    At all times relevant to this incident, Tony Timpa was unarmed

70.    At all times relevant to this incident, Defendants knew Tony Timpa was unarmed.

71.    At all times relevant to this incident, Defendants had no reasonable belief that Tony Timpa was armed.

72.    At no time relevant to this incident did Tony threaten any officer with a weapon.

73.    At no time relevant to this incident did Tony use a weapon against any Defendant.

74.    DPD officers did not remove or recover any weapons from Mr. Timpa.

---

[5] Officers attest to this fact expressly during arrest. While asking Tony what he took, multiple officers can be heard saying, "this isn't normal crazy, he took something." (Vasquez 11:15 – 11:28; Dillard 10:53-11:25).

75. At all times relevant to this incident, Tony was in handcuffs.

76. At all times relevant to this incident, Tony did not resist arrest.

77. At all times relevant to this incident, Tony did not evade arrest or detention.

78. Mr. Timpa had not physically attacked the police officers at the scene.

79. Defendants employed deadly force against Mr. Timpa.

80. The DPD officers acted under color of law when they used force against Mr. Timpa.

81. Defendants knew that Mr. Timpa was unarmed and not resisting.

## FORCE USED WAS CLEARLY UNNECESSARY

82. Defendants' actions of restraining Mr. Timpa were done intentionally, knowingly, and with reckless disregard for Mr. Timpa's constitutional rights.

83. Since at least 1994, the Fifth Circuit has held that certain forms of restraint, like the one used in this case, fall under the deadly force prohibition of the Fourth Amendment under certain circumstances. *See Guttierez v. City of San* Antonio, 139 F.3d 441, 447-49 (5th Cir. 1998).Sister circuits have likewise concluded the same. *See McCue v. City of Bangor, Maine*, 838 F.3d 55, 64 (1st Cir. 2016); *Champion v. Outlook Nashville, Inc.* 380 F.3d 893, 903 (6th Cir. 2004) (holding placing pressure on an arrestee's back while the arrestee is in a face down position and subdued is excessive force and clearly established); *Adbullahi v. City of Madison*, 423 F.3d 763, 765 (7th Cir. 2005); and *Drummond ex rel. Drummond v. City of Anaheim*, 343 F.3d 1052, 1057 (9th Cir. 2003); and *Weigel v. Broad*, 544 F.3d 1143, 1154 (10th Cir. 2008)[6].

---

[6] *Weigel, infra.* ("[E]ven after it was readily apparent for a significant period of time (several minutes) that Mr. Weigel was fully restrained and posed no danger, the defendants continued to use pressure on a vulnerable person's upper torso while he was lying on his stomach. A reasonable officer would know these actions present a substantial and totally unnecessary risk of death to the person.")

84.    Fourth and Fourteenth Amendment jurisprudence has clearly established that police officers cannot use excessive force upon an unarmed suspect who is not showing signs of active restraint.

85.    Furthermore, for more than two decades it has been established within the law enforcement community through studies, policy papers, seminars, training materials, and continuing education materials provided by organizations like the Federal Bureau of Investigation, the International Police Chiefs Association, the U.S. military, and countless state and local enforcement agencies that the acts Defendants committed are lethal, and thus prohibited because they restrict breathing, and other cardiopulmonary functions. Among other things, such actions stress to the respiratory muscles and inhibits movement of the diaphragm and rib cage. Those acts include:

    a.  prolonged placement of any handcuffed subject face down on the ground;

    b.  placing a knee, leg or other part in a subject's back while the person is face down on the ground;

    c.  putting weight on a subjects back while handcuffed;

    d.  elevating a person's legs while a person is handcuffed;

    e.  employing leg and hand restraints together; and

    f.  failing to actively monitor breathing, and obstructions;

These same authorities further stress that these acts are additionally dangerous when employed on subjects in mental crisis, intoxicated subjects, particularly on cocaine, and other stimulants, and certain overweight subjects. The Defendants in this particular instance knew and had ample reason to know that Tony was in mental distress, intoxicated, and had used one more narcotics,

specifically cocaine. Defendants thus had a high degree of awareness of specific lethal hazards, but disregarded them.

## CAUSES OF ACTION

## VIOLATION OF CONSTITUTIONAL RIGHTS

86.     The factual allegations contained in the preceding paragraphs are hereby incorporated and re-alleged for all purposes and incorporated herein with the same force and effect as if set forth verbatim.

## DEFENDANT DILLARD

87.     Defendant Dillard willfully, maliciously, intentionally, knowingly, and plainly incompetently used excessive force to restrain Anthony Timpa despite having no legitimate reason for doing so.

88.     The force used by Defendant Dillard was recklessly excessive and killed Mr. Timpa. This force included all of the facts alleged, including his pinning of Timpa's back with his knee for more than fourteen minutes to the ground.

89.     Defendant Dillard violated Mr. Timpa's rights clearly established under the Fourth Amendment of the United States Constitution to:

   a.  freedom from unreasonable seizure of their person; and

   b.  freedom from the use of unreasonable, unnecessary, and excessive force.

   c.  freedom from lethal force when no criminal offense has occurred;

   d.  freedom from lethal force when no officer or third person is in reasonable fear of death or serious bodily injury;

   e.  freedom from lethal force when no violent crime has been committed;

   f.  freedom from lethal force when no felony has been committed;

    g.  freedom from lethal force when the subject is not fleeing; and

    h.  freedom from lethal force when arrest is not resisted.

90.    Defendant Dillard violated Mr. Timpa's rights clearly established under the United States Constitution the right to medical care for injuries received while in custody. As alleged, Defendant and his co-defendants let several vital minutes pass before taking responsive action. When seconds counted, they laughed, they joked, and Tony died.

**DEFENDANT VASQUEZ**

91.    Defendant Vasquez willfully, maliciously, intentionally, knowingly, and plainly incompetently used excessive force to restrain Anthony Timpa despite having no legitimate reason for doing so.

92.    The force used by Defendant Dillard was recklessly excessive and killed Mr. Timpa. This force included all of the facts alleged, including his pinning of Timpa with his hands, knees, and body weight.

93.    Defendant Dillard violated Mr. Timpa's rights clearly established under the United States Constitution to:

    a.  freedom from unreasonable seizure of their person; and

    b.  freedom from the use of unreasonable, unnecessary, and excessive force.

    c.  freedom from lethal force when no criminal offense has occurred;

    d.  freedom from lethal force when no officer or third person is in reasonable fear of death or serious bodily injury;

    e.  freedom from lethal force when no violent crime has been committed;

    f.  freedom from lethal force when no felony has been committed;

    g.  freedom from lethal force when the subject is not fleeing; and

        h.  freedom from lethal force when arrest is not resisted.

94.  Defendant Vasquez violated Mr. Timpa's rights clearly established under the United States Constitution the right to medical care for injuries received while in custody. As alleged, Defendant and his co-defendants let several vital minutes pass before taking responsive action. When seconds counted, they laughed, they joked, and Tony died.

## DEFENDANT RIVERA

95.  Defendant Rivera willfully, maliciously, intentionally, knowingly, and plainly incompetently used excessive force to restrain Anthony Timpa despite having no legitimate reason for doing so.

96.  The force used by Defendant Rivera was recklessly excessive and killed Mr. Timpa. This force included all of the facts alleged, including aiding in the restraint of Timpa.

97.  Defendant Rivera violated Mr. Timpa's rights clearly established under the United States Constitution to:

        a.  freedom from unreasonable seizure of their person; and

        b.  freedom from the use of unreasonable, unnecessary, and excessive force.

        c.  freedom from lethal force when no criminal offense has occurred;

        d.  freedom from lethal force when no officer or third person is in reasonable fear of death or serious bodily injury;

        e.  freedom from lethal force when no violent crime has been committed;

        f.  freedom from lethal force when no felony has been committed;

        g.  freedom from lethal force when the subject is not fleeing; and

        h.  freedom from lethal force when arrest is not resisted.

98.    Defendant Rivera violated Mr. Timpa's rights clearly established under the United States Constitution the right to medical care for injuries received while in custody. As alleged, Defendant and his co-defendants let several vital minutes pass before taking responsive action. When seconds counted, they laughed, they joked, while Tony died.

## DEFENDANT MANSELL

99.    Defendant Mansell was personally involved in Tony's Fourth Amendment violations, and his wrongful action were causally connected to these deprivations.

100.    Sgt. Mansell was the first to arrive, and was the highest ranking supervisor on the scene. When his co-defendants arrived, he stood back, and had them take over the seizure of Tony.

101.    While Officers Dillard, Vasquez, Rivera, and Defendant Johnson employed excessive restraint, Sgt. Mansell alternated between standing around, making flippant comments, and leaving the officers unsupervised as they killed Tony. He failed to do the following:

    a.  instruct or order the officers not to perform any acts that would results in Tony's cardiac arrest;

    b.  instruct or order the officers to flip Tony on his back or side so that he could breathe properly

    c.  instruct or order the officers to pay closer attention to Tony's breathing and consciousness; and

    d.  instruct or order the officers not to risk Tony's life by prolonging any procedure needlessly, or that was comparatively valueless.

102.    His subsequent anger and surprise at the outcome sharply attest that Mansell had failed to monitor his subordinates, or restrain them in any meaningful way.

103.    His willful incation to instruct or direct his subordinates, and his departure from the immediate vicinity of Tony's seizure was a cause in fact to Tony's death.

## AIDING AND ABETTING AND BYSTANDER LIABILITY

104.    The factual allegations contained in the preceding paragraphs are hereby incorporated and re-alleged for all purposes and incorporated herein with the same force and effect as if set forth verbatim.

105.    Tony's homicide was a collective act. While Defendant Dillard plainly applied the greatest aggregate force against Tony's cardiovascular, pulmonary, and circulatory systems, his fellow officers, and Defendant Johnson assisted him in pinning Tony facedown to the ground. As a result Defendants Vasquez, Rivera, Dominguez, Mansell, and Johnson are liable for aiding and abetting.

106.    Likewise, each Defendant had an affirmative duty to prevent his fellow officers from employing needless lethal force. None of them made any effort to stop his fellow officers from killing Tony. Defendants did not flip Tony onto his back, remove Dillard, or promptly place Tony on a gurney restrained.

## WRONGFUL DEATH

107.    The factual allegations contained in the preceding paragraphs are hereby incorporated and re-alleged for all purposes and against all Defendants with the same force and effect as if set forth verbatim. As the surviving parent of decedent Anthony Timpa, Plaintiff Vicki Timpa has an action for wrongful death based on the facts stated in Tex. Civ. Prac. & Rem. Code §§ 71.001-71.012. As the only surviving child of the decedent, K.T. likewise has an action for wrongful death. *Id.*

## SURVIVAL ACTION

108.    The factual allegations contained in the preceding paragraphs are hereby incorporated and re-alleged for all purposes and against all Defendants with the same force and effect as if set forth verbatim. Had Mr. Timpa survived, he would have been entitled to bring actions for violations of their constitutional rights and for deprivations of state common law actions for Negligence, Assault, Battery, and False Imprisonment. As representative of their estate, Plaintiff has a cause of action for personal injuries suffered by Anthony Timpa, including to their health, dignity, and reputation before their death. Tex. Civ. Prac. & Rem. Code § 71.021.

## FALSE IMPRISONMENT

## DEFENDANT JOHNSON

109.    The factual allegations contained in the preceding paragraphs are hereby incorporated and re-alleged for all purposes and incorporated herein with the same force and effect as if set forth verbatim.

110.    Plaintiffs plead a cause of action against Defendant Johnson for false imprisonment.

111.    Johnson unilaterally chose to make a citizen's arrest of Mr. Timpa by restraining him with handcuffs. Johnson was acting within the course and scope of his employment with Crime Investigate Unit, LLC.

112.    Mr. Timpa was conscious of this confinement and was harmed by the citizen's arrest in that the excessive restraint literally killed him.

## ASSAULT AND BATTERY

## DEFENDANT JOHNSON

113.    The factual allegations contained in the preceding paragraphs are hereby incorporated and re-alleged for all purposes and incorporated herein with the same force and effect as if set forth verbatim.

114.    Pursuant to Texas state law, Plaintiffs plead a cause of action against Defendants Johnson and Crime Investigative Unit, LLC for assault and battery.

115.    Defendants Johnson and CIU intentionally, knowingly, and recklessly placed decedent Anthony Timpa in fear of imminent bodily injury.

116.    Defendants Johnson and CIU intentionally, knowingly, and recklessly caused decedent Anthony Timpa serious bodily injury, in this case death.

117.    Defendants Johnson and CIU intentionally, knowingly, and recklessly placed decedent Anthony Timpa in fear of imminent bodily injury.

118.    Defendants Johnson and CIU intentionally, knowingly, and recklessly caused decedent Anthony Timpa serious bodily injury and death.

119.    Defendants Johnson and Crime Investigative Unit was acting within the course and scope of his employment with their respective employers.

## NEGLIGENCE AND GROSS NEGLIGENCE

120.    The factual allegations contained in the preceding paragraphs are hereby incorporated and re-alleged for all purposes and incorporated herein with the same force and effect as if set forth verbatim.

121.    Plaintiffs plead a cause of action against the Defendants CIU and Defendant Johnson for negligence and gross negligence.

122.    At all times relevant to this lawsuit, Defendant CIU owed a duty to Plaintiff to exercise reasonably prudent and ordinary care in the determining whether Glenn Johnson was fit to guard the storefront.

123.    Defendant CIU violated this duty by negligently permitting Defendant Johnson to remain unsupervised and employ inappropriate force indiscriminately. Defendant CIU failed to act in a reasonably prudent manner, as others would have under the same or similar circumstances.

124.    Glenn Johnson was acting within the course and scope of his employment with CIU.

## RESPONDEAT SUPERIOR

125.    At all times relevant to this incident, Defendant Johnson was in the course, and scope of his employment for Defendant Crime Investigative Unit, LLC. Plaintiffs thus expressly plea the doctrine of *respondeat superior* against Defendant Crime Investigative Unit, LLC for acts committed by Defendant Johnson.

## NEGLIGENT HIRING, SUPERVISION, AND/OR TRAINING

126.    The factual allegations contained in the preceding paragraphs are hereby incorporated and re-alleged for all purposes and incorporated herein with the same force and effect as if set forth verbatim.

127.    Plaintiffs plead a cause of action against Defendant CIU for negligent hiring, supervision, and/or training.

128.    At all times relevant to this lawsuit, Defendant CIU owed a duty to Plaintiff to exercise reasonably prudent and ordinary care in the determining whether Defendant Johnson was fit to guard the storefront and properly trained.

129. Defendant CIU violated this duty by negligently permitting Defendant Johnson to carry handcuffs unsupervised, employ the handcuffs indiscriminately, and effect detentions off of the premise of his employer. Defendant CIU failed to act in a reasonably prudent manner, as others would have under the same or similar circumstances.

130. Defendant Johnson was acting within the course and scope of his employment with CIU.

## GROSSLY NEGLIGENT HIRING, SUPERVISION AND/OR TRAINING

131. The factual allegations contained in the preceding paragraphs are hereby incorporate and re-alleged for all purposes and incorporated herein with the same force and effect as if set forth verbatim.

132. Plaintiffs plead a cause of action against Defendant CIU for grossly negligent hiring, supervision, and/or training.

133. The acts and omissions of Defendant CIU, described above, when viewed objectively from the standpoint of the Defendant at the time of the acts or omissions, involved an extreme degree of risk, considering the probability and magnitude of the potential harm to others, and Defendants had actual, subjective awareness of the risk involved, but nevertheless proceeded with conscious indifference to the rights, safety, or welfare of others.

## DAMAGES

## ACTUAL DAMAGES

134. Plaintiffs sustained actual and consequential damages as a direct result of the actions and/or omissions of the Defendant described hereinabove.

135. As a direct and proximate result of Defendants' acts and omissions as heretofore alleged, the Estate of Anthony Timpa suffered physical impairment, excruciating pain, mental

anguish, medical treatments, and death. The estate is therefore entitled to recover all reasonable and necessary medical and funeral expenses incurred for the care, treatment and burial of Anthony Timpa that resulted from the tortious acts of the Defendants. In addition, the Estate of Anthony Timpa has an action for the injuries suffered, including but not limited to the disfigurement, humiliation, past pain and suffering, mental anguish and physical capacity suffered because of the incident.

136.    Plaintiff K.T., as minor child of the decedent, have suffered wrongful death damages for their individual (1) pecuniary loss, (2) mental anguish, (3) loss of companionship and society, and (4) loss of inheritance. Such damages include, but are not limited to past and future lost earnings, past and future mental anguish damages, and other actual damages that are determined under trial of the merits.

137.    Plaintiff Vicki Timpa, as a parent of the decedent, has suffered non-pecuniary wrongful death damages including, but not necessarily limited to, her mental anguish and loss of companionship and society.

138.    Plaintiff Cheryll Timpa, as the other parent of the decedent's minor child, has suffered pecuniary wrongful death damages for the loss of child support from Anthony Timpa. Such damages are based on Anthony Timpa's loss of future earnings pursuant to the Texas Family Code.

## EXEMPLARY DAMAGES

139.    In addition, the foregoing acts were committed with the kind of willfulness, and gross negligence for which the law allows imposition of punitive damages against said Defendants. Incorporating all of the facts alleged, Defendants, as trained peace officers, and security guards, acted with a high degree of awareness regarding the specific and unjustifiable risks of death to

Tony given his obvious intoxication, mental distress, professed cocaine usage, and their prolonged restraint of his limbs, and smothering of his torso. Furthermore, during this homicide, and in its immediate wake, and investigation, multiple officers systematically concealed facts, and misled witnesses, and family members concerning how this homicide occurred.

## ATTORNEY'S FEES AND PREJUDGMENT INTEREST

140.    Plaintiffs are further entitled to receive her reasonable attorneys' fees pursuant to 42 U.S.C. § 1988.

141.    Plaintiffs are further entitled to receive pre-judgment and post-judgment interest at the highest interest rate allowable by law.

## JURY DEMAND

142.    Plaintiffs demands a jury trial.

## PRAYER

Plaintiffs pray that the Defendants be cited to appear and answer herein, and that upon a final hearing of the cause, judgment be entered for the Plaintiffs against all Defendants for damages in an amount within the jurisdictional limits of the Court, and as prescribed further below:

  a. $850,000.00 in past lost earning capacity at the time of trial;

  b. $11,340,000.00 in future lost earning capacity;

  c. $500,000.00 in future lost personal services;

  d. $1,800,000.00 for the past pain and suffering of Anthony Timpa;

  e. $3,500,000.00 to K.T. for all wrongful death damages, including loss of care, comfort, protection, and society;

  f. $750,000 to each of the decedent's parents for all wrongful death damages, including loss of care, comfort, protection, and society;

g. $3,600,000.00 in exemplary damages against Defendant Dustin Dillard;

h. $1,800,000.00 in exemplary damages against Defendant Danny Vasquuez;

i. $1,800,000.00 in exemplary damages against Defendant Domingo Rivera;

j. $3,600,000.00 in exemplary damages against Defendant Kevin Mansell;

k. attorneys' fees, and

l. together with pre- and post- judgment interest as allowed by law, costs of court, and such other relief to which the Plaintiffs may be entitle at law or in equity.


Respectfully Submitted,

By:    /s/ Geoff J. Henley
       Geoff J. Henley
       Texas Bar No. 00798253
       ghenley@henleylawpc.com
       R. Lane Addison
       Texas Bar No. 24059355
       rladdison@henleylawpc.com
       **HENLEY & HENLEY, P.C.**
       3300 Oak Lawn Avenue, Suite 700
       Dallas, Texas 75219
       Tel. (214) 821-0222
       Fax. (214) 821-0124
       **ATTORNEYS FOR PLAINTIFFS**


## CERTIFICATE OF SERVICE

I hereby certify that I electronically submitted the foregoing document with the clerk of the court for the U.S. District Court, Northern District of Texas, using the CM/EFC system which will send notification to all attorneys of record who are registered for electronic notice.


/s/  Geoff J. Henley
**Geoff J. Henley**