**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **VICKI TIMPA, ET AL.** | § | |
| **Plaintiffs,** | § | |
| | § | |
| **VS.** | § | |
| | § | **CIVIL ACTION NO. 3:16-cv-03089-N** |
| | § | |
| **THE CITY OF DALLAS, ET AL.** | § | |
| **Defendants.** | § | |
| | § | |

---

**DALLAS COUNTY DISTRICT ATTORNEY'S OFFICE ON BEHALF OF DR. EMILY OGDEN'S MOTION FOR PROTECTIVE ORDER AND MOTION TO STAY UNDER FED.R.CIV.P. 26(c) AND BRIEF IN SUPPORT**

---

**TO THE HONORABLE JUDGE OF THE COURT:**

COMES NOW Movant, the Dallas County District Attorney's Office on behalf of Dr. Emily Ogden, pursuant to Fed.R.Civ.P. 26(c), and moves the Court to enter a protective order and/or stay her compliance with the *Subpoena to Testify at a Deposition in a Civil Action* served upon her to allow a state criminal grand jury investigation and prosecution into a parallel matter to be concluded. In support, Movant would show the Court as follows:

**I.**

**PROCEDURAL BACKGROUND**

Plaintiff's counsel issued a *Subpoena to Testify at a Deposition in a Civil Action* to Dr. Emily Ogden in this case. The subpoena was served and received by Dr. Emily Ogden on September 14, 2017. (Doc. 70). In addition to testimony, the subpoena seeks copies of records, photos and media relating to the death and autopsy of Anthony Alan Timpa.

## II.

## FACTUAL BACKGROUND

This case involves the in-custody death of Anthony Alan Timpa ("TIMPA"). On August 10, 2016, TIMPA was found at 1720 W. Mockingbird Lane in Dallas acting erratically and the Dallas Police Department (DPD) responded to a 911 call.  TIMPA was placed in custody and subsequently became unresponsive.  TIMPA was transported to the hospital and was pronounced dead shortly after arrival.  On August 11, 2016, the Southwestern Institute of Forensic Science a/k/a the Dallas County Medical Examiner's Office (SWIFS) was notified of TIMPA's death. Dr. Emily Ogden, a physician employed by SWIFS performed an autopsy on August 13, 2016. The autopsy was completed on October 12, 2016, and was subsequently ruled a 'Homicide.' As with all in-custody deaths, DPD conducted an internal investigation into TIMPA's death. Prior to the Dallas County District Attorney's Office (DA) receiving the case, Plaintiff filed this lawsuit and sought discovery from Dr. Emily Ogden before TIMPA's death could be fully investigated by the DA.[1]   In December of 2016, DPD turned the case over to the DA for review and presentation to the Dallas County Grand Jury.  The investigation into TIMPA's death is assigned to the Public Integrity Unit of the DA which conducts its own investigation into deaths involving law enforcement. These investigations often include re-interviewing parties and witnesses, consulting with experts in various fields and investigating any unforeseen matter, claim or defense that may come to the attention of the DA that warrants further review and investigation. During this investigation, additional information was brought forward to the DA that required further investigation of this incident. (Ex. 1).  While projections of presentment to the grand jury

---

[1] In response to Plaintiff's subpoena for autopsy records and Dr. Emily Ogden written findings, Movant entered into an agreed protective order that was entered by this Court. (Doc. 33).

are just that, projections; they are made in good faith and based upon the individual facts and circumstances of a particular case. Assistant District Attorney George B. Lewis, II anticipates this case to be presented to the Dallas County Grand Jury in the next grand jury term, likely October or November of 2017. (Ex. 1).

### III.

### ARGUMENT AND AUTHORITIES

Federal Rule of Civil Procedure 26 allows a court to enter into a protective order "for good cause shown." Fed.R.Civ.P. 26(c). The information sought by the Plaintiff relates to an on-going criminal grand jury investigation by the DA. This case was submitted by DPD in December of 2016.   This investigation involves several DPD police officers and their conduct during the arrest and/or detention of TIMPA on August 10, 2016. Due to the circumstances surrounding his death, TIMPA's death was ruled a 'Homicide'. Dr. Emily Ogden's examination of TIMPA is central to the cause and manner of death and plays an integral part in this investigation. As the examining doctor, Dr. Emily Ogden will most certainly be required to appear before the grand jury and provide testimony as to the cause and manner of TIMPA's death and any other expert opinions related thereto. Because the criminal grand jury investigation and the civil case share the same nucleus of facts; much of the evidence is also the same. "When a civil proceeding and a criminal proceeding involve overlapping evidentiary material, federal courts have consistently held that the 'government [has] a discernible interest in intervening [in the civil proceeding] in order to prevent discovery in the civil [proceeding] from being used to circumvent the more limited scope of discovery in the criminal matter." *Deal v. Deal*, 740 N.W.2d 755, 761 (Minn. 2007) (quoting *SEC v. Chestman*, 861 F.2d 49, 50 (2nd Cir. 1988)).  To require Dr. Emily Ogden to testify in a civil case before she has had the opportunity to testify

and present her findings to the grand jury; would as a practical matter impair and impede the pending criminal grand jury investigation and any subsequent prosecution.

In this instance, Movant is seeking to stay Dr. Emily Ogden's deposition so that her testimony may be obtained and presented to the criminal grand jury or subsequent prosecution before she testifies in the civil matter.  It is well settled that a district court has inherent power over its docket, which includes the power to stay proceedings and "may stay a civil proceeding during the pendency of a parallel criminal proceeding." *SEC v. Mutuals.com, Inc.*, No. 3:03-CV-2912-D, 2004 U.S. Dist. LEXIS 13718 at *7 (N.D. Tex. July 20, 2004) (Fitzwater, J.) (quoting *United States v. Little Al*, 712 F.2d 133, 136 (5th Cir. 1983).  "Such a stay contemplates 'special circumstances' and the need to avoid 'substantial and irreparable prejudice.'" *Id.*  Movant submits that special circumstances exist, requiring that this Court enter a stay in the interest of justice in order to preserve the integrity of the ongoing criminal grand jury investigation and any subsequent criminal prosecution.

Recently, in the case of *Longoria v. County of Dallas,* No. 3:14-CV-03111-L, 2015 U.S. Dist. LEXIS 79514 (N.D. Tex. June 19, 2015), Magistrate Judge David L. Horan abated a civil rights case during the pendency of a criminal prosecution, finding that special circumstances existed requiring abatement of the case.  In doing so, the Court considered the following factors in determining whether special circumstances exist necessitating a stay:

(1) the extent of the overlap between the issues in the criminal case and in the civil case;

(2) the status of the criminal case, including whether the defendant has been indicted;

(3) the private interests of the plaintiff in proceeding expeditiously, weighed against the prejudice to the plaintiff caused by the delay;

(4) the private interests of and the burden on the defendant;

(5)  the interests of the courts; and

(6)  the public interest.

*Longoria*, 2015 U.S. Dist. LEXIS 79514 at *18-19.   Movant respectfully submits that the interests supporting staying Dr. Emily Ogden's deposition outweigh any prejudice to the parties for the following reasons:

1.  Extent of overlap between issues in criminal case and civil case

The similarity of issues in the parallel civil and criminal actions "is considered the most important threshold issue in determining whether to grant a stay."  *Dominguez v. The Hartford Financial Services Group, Inc.*, 530 F.Supp.2d 902, 906-907 (S.D. Tex. 2008).  In *Longoria*, the plaintiff filed a civil rights suit alleging that a Dallas County jailer had sexually assaulted her while she was a pre-trial detainee.  At the time, the jailer had been indicted and was being criminally prosecuted.  The Court concluded that "there is significant overlap between the issues in the Criminal Case [sic] and those in this civil case." *Longoria*, 2015 U.S. Dist. LEXIS 79514 at *24.  Likewise, the instant civil suit and criminal grand jury investigation involve the same nucleus of facts, i.e. the events leading up to and surrounding the death of TIMPA on August 10, 2016.  The same witnesses and evidence will be materially the same in both cases.

2.  Status of criminal case

The criminal grand jury investigation into the death of TIMPA is reaching a conclusion. As stated by Assistant District Attorney George B. Lewis, II, in his affidavit, it is anticipated the DA's Office will present the criminal case to the Dallas County Grand Jury in October or November of 2017. (Ex. 1).  Although this factor has historically weighed the existence of an indictment in determining whether a civil/criminal defendant's motion to stay should be granted; Movant respectfully submits that the status of the ongoing criminal grand jury investigation is

just as important as whether an indictment has been issued in showing substantial and irreparable prejudice to the any subsequent prosecution by the DA's Office. *See Campbell v. Eastland*, 307 F.2d 478, 487 (5th Cir. 1962) (affirming that the trial judge in the civil proceeding should consider "the effect discovery would have on a criminal proceeding that is pending <u>or just about to be brought</u>" in determining whether to enter a stay in the civil suit) (emphasis supplied).

In *Eastwood Enterprises, LLC v. Farha*, No. 8:07-CV-1940-T-33EAJ, 2010 U.S. Dist. LEXIS 147835 (M.D. Fl. July 19, 2010), the United District Court for the Middle District of Florida granted the U.S. Government's motion to intervene and motion for a temporary stay of proceedings despite the fact that an indictment had yet to be returned.

> The Court finds that special circumstances are present in this case such that the interests of justice require a stay of this civil proceeding for 150 days due to the related criminal proceeding. Considerations of this Court include, but are not limited to, the acknowledged use of civil discovery to combat the criminal investigation and future prosecution, the ongoing use of civil discovery to investigate the criminal investigation, the resulting inequities to the government caused by asymmetrical discovery, the premature disclosures to the Individual Defendants and others of potential government witnesses and information, and the impact of the ongoing civil discovery on the integrity of the criminal investigation.

*Id.* at *9-10. The Court concluded that although no indictment had been issued, the interest of justice required such a stay to protect the "integrity of the criminal investigation." As further discussed in section 6 *infra*, the same concerns articulated by the *Eastwood* court also exist here.

3.    <u>Private interest of Plaintiff</u>

Movant is sympathetic to Plaintiff's interest in seeking civil redress for TIMPA's death. But Plaintiff will not be prejudiced by any delay. Indeed, a thorough criminal grand jury investigation would actually benefit Plaintiff. Alternatively, any delay would not prejudice Plaintiff as the criminal grand jury investigation and resulting prosecution would only preserve witness recollection and testimony relating to facts surrounding TIMPA's death.

4.    Private interest of Defendants

Defendants also would not be prejudiced by a stay in this matter and also benefit from a thorough criminal grand jury investigation. Defendants' lack of objection to this motion and the fact that Defendant Dillard has filed a motion to stay <u>all</u> proceedings in this case under the Servicemembers Civil Relief Act is evidence that no prejudice will arise by staying Dr. Emily Ogden's deposition. (Doc. 60).

5.    Interest of Court

This Court also has an interest in staying Dr. Emily Ogden's deposition in the instant suit as the criminal grand jury investigation and any ensuing criminal prosecution will streamline any needed discovery in the instant civil suit, as well as narrow the material facts at issue.

6.    The public interest

Finally, the public interest in a thorough criminal grand jury investigation and any subsequent prosecution strongly favors staying the deposition of Dr. Emily Ogden in the civil suit. The Fifth Circuit has stated that there is a strong public interest in law enforcement to be given "substantial weight" in weighing against a party's interest in determining whether a stay should be entered in a parallel civil suit.

> There is a clearcut distinction between private interests in civil litigation and the public interest in a criminal prosecution, between a civil trial and a criminal trial, and between the Federal Rules of Civil Procedure and the Federal Rules of Criminal Procedure. But these distinctions do not mean that a civil action and a criminal action involving the same parties and some of the same issues are so unrelated that in determining good cause for discovery in the civil suit, a determination that requires the weighing of effects, the trial judge in the civil proceeding should ignore the effect discovery would have on a criminal proceeding that is pending or just about to be brought. The very fact that there is a clear distinction between civil and criminal actions requires a government policy determination of priority: which case should be tried first. Administrative policy gives priority to the public interest in law enforcement. This seems so necessary and wise that a trial judge should give substantial weight to it in balancing the policy against the right of a civil litigant to a reasonably prompt

determination of his civil claims or liabilities.

The public's interest in a thorough criminal investigation and any subsequent prosecution for the death of TIMPA should be given priority.

In *Deal v. Deal*, 740 N.W.2d 755 (Minn. 2007), the Supreme Court for the State of Minnesota weighed three policy considerations "peculiar to criminal law" and looked to federal case law in limiting a criminal defendant's use of civil discovery when the pending civil and criminal proceeding involved overlapping evidentiary material:

> First, there has been a fear that broad disclosure of the essentials of the prosecution's case would result in perjury and manufactured evidence. Second, it is supposed that revealing the identity of confidential government informants would create the opportunity for intimidation of prospective witnesses and would discourage the giving of information to the government. Finally, it is argued that since the self-incrimination privilege would effectively block any attempts to discover from the defendant, he would retain the opportunity to surprise the prosecution whereas the state would be unable to obtain additional facts. This procedural advantage over the prosecution is thought to be undesirable in light of the defendant's existing advantages. The validity of each of these objections must be appraised in each of the situations in which the defendant may seek discovery and must be weighed against the importance to the defendant of the disclosure.

*Deal v. Deal*, 740 N.W.2d 755, 765 (Minn. 2007) (citing *Campbell,* 307 F.2d at 487). In reaching its conclusion, in a case of first impression, the Court recognized that "[f]ederal courts have consistently held that there is 'good cause' to issue a protective order staying civil discovery when a related criminal proceeding is pending in order to prevent the defendant's use of broad civil discovery to sidestep the much more limited discovery available in the criminal proceeding." *Deal,* 740 N.W.2d at 764. Based upon these concerns, the Supreme Court for the State of Minnesota stayed all discovery in the civil case.

Additionally, the Arizona District Court in *Lizaraga* also concluded that a "strong reason" to stay civil discovery was the concern that civil discovery could compromise the testimony of witnesses in a criminal prosecution. There are numerous witnesses who have yet to

testify before the criminal grand jury, including Dr. Emily Ogden whom will be a central witness in this case. Generally speaking, taking depositions of witnesses in civil cases before they testify in the related criminal matter could have an unintended effect on the outcome of the related criminal case and could have a chilling effect on the cooperation of witnesses.  Further, there is the possibility that any information obtained through civil discovery could end up in the public domain and available to the grand jurors, who may be influenced by said information before the case is ever presented to them. Unfortunately, in-custody death cases create a lot of media interest. The publicity could prove difficult to find unbiased grand jurors to hear this case.

Movant is not seeking to postpone Dr. Emily Ogden's deposition indefinitely. But rather, asking that compliance with the *Subpoena to Testify at a Deposition in a Civil Action* be stayed until the criminal grand jury investigation and any resulting prosecution is concluded.  Staying Dr. Emily Ogden's deposition is reasonable and just under these circumstances.[2]

## IV.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, Movant, the Dallas County District Attorney's Office on behalf of Dr. Emily Ogden prays that the Court will grant the motion and stay the deposition of Dr. Emily Ogden as set forth above and any other relief the Court may deem appropriate under the law.

---

[2] In the event Dr. Emily Ogden's deposition is eventually taken in this civil case; Movant requests that Plaintiff be ordered to pay all fees and expenses as approved by the Dallas County Commissioner's Court. (Ex. 2).

Respectfully submitted,

FAITH JOHNSON
DISTRICT ATTORNEY
DALLAS COUNTY, TEXAS

/s/ Ashley D. Fourt_____
Ashley D. Fourt
Assistant District Attorney
Texas Bar No. 00792096
Civil Division
Administration Building
411 Elm Street, 5TH Floor
Dallas, Texas 75202
(214) 653-7358
(214) 653-6134 (FAX)
ashley.fourt@dallascounty.org
ATTORNEY FOR MOVANT

## CERTIFICATE OF CONFERENCE

I, the undersigned counsel, hereby certify the following:

I conferred with Plaintiff's' attorney, Geoff Henley via email on September 25, 2017.  Plaintiff is **opposed** to Movant's Motion for Protective Order.

I conferred with Assistant City Attorney Tatia Wilson for the City of Dallas on September 18, 2017, and she is **not opposed** to Movant's Motion for Protective Order.

I contacted Susan Hutchinson, attorney for Intervenor on September 25, 2017. However, Ms. Hutchinson was unavailable and out of state. I spoke to her paralegal Julie Jones and she indicated that Ms. Hutchinson would **oppose** Movant's Motion for Protective Order. I did receive an email late yesterday from Ms. Hutchinson and she is **opposed** to the motion.

/s/ Ashley D. Fourt_____
ASHLEY D. FOURT

## <u>CERTIFICATE OF SERVICE</u>

In accordance with Rule 5(b)(2)(E) of the Federal Rules of Civil Procedure and Local Rule 5.1(d), I hereby certify  that a true and correct copy of the foregoing instrument has been electronically served upon all parties.

Dated:  September 26, 2017

/s/ Ashley D. Fourt_____
ASHLEY D. FOURT