IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| VICKI TIMPA, INDIVIDUALLY, AND AS REPRESENTATIVE OF THE ESTATE OF ANTHONY TIMPA, AND CHERYL TIMPA, INDIVIDUALLY AS NEXT FRIEND OF K. T., A MINOR CHILD | § § § § § § | |
| Plaintiffs, | § § | |
| V. | § § | CIVIL ACTION NO. 3:16-cv-03089-N |
| DUSTIN DILLARD, DANNY VASQUEZ, RAYMOND DOMINGUEZ, DOMINGO RIVERA, KEVIN MANSELL, GLENN JOHNSON, CRIMINAL INVESTIGATIVE UNIT, LLC | § § § § § § | |
| Defendants. | § | |

**PLAINTIFFS' MOTION TO CHALLENGE PROTECTIVE ORDER DESIGNATIONS**

Pursuant to the Federal Rules of Civil Procedure and Paragraph 5 of the Protective Order entered in this action (ECF Doc. 33), Vicki Timpa, Individually, and as Representative of the Estate of Anthony Timpa and Cheryll Timpa, individually, as next friend of K.T., to file this *Plaintiffs' Motion to Challenge Protective Order Designations*.

**BACKGROUND FACTS AND PROCEDURAL HISTORY**

Plaintiffs filed this civil rights action arising from the death of Anthony "Tony" Timpa on August 10, 2016. As the death certificate indicates, the Medical Examiner concluded Timpa's death was a "Homicide," caused by the "toxic effects of cocaine and physiological stress associated with physical restraint." The publicly filed Custodial Death Report, available on the Texas

Attorney General's website, states that Anthony, though, while "intoxicated," was neither resisting, nor threatening any person when killed in custody.

Plaintiffs filed suit in this matter on November 3, 2016. Before that Plaintiffs, and their counsel made multiple efforts since that August, through public records just to ascertain how Tony Timpa was killed. *The Dallas Morning News* had likewise filed fruitless public records requests in September, 2016. The City of Dallas opposed all requests, so all efforts proved futile. Plaintiff's counsel had to file a separate mandamus action. *See* Cause No. DC-16-15678, *Henley & Henley, P.C. v. City of Dallas*. During a hearing in that proceeding, Plaintiffs learned that the Dallas Police Department had *refused* to provide its own counsel, the Dallas City Attorneys' Office, information responsive to lawful production requests.[1]

On April 14, 2017, the City of Dallas, and the extant Defendants obtained a Protective Order, (ECF Doc. 33), limiting the disclosure, and mandating the sealing of a number of discovery materials. Paragraph 5 of the Protective Order specifies that a 'receiving party may challenge a producing party's designation at any time,' and specifies the procedural mechanism to do so in writing.[2] Among the affected materials was footage obtained from three different body cameras worn by Defendants Dillard, Vasquez, and Rivera. As the pleadings indicate, the footage from cameras worn by Dillard, and Vasquez actually depict the homicide on camera. Indeed, a paramedic on the scene laconically declared on camera, "He's dead."

---

[1] *Henley & Henley, P.C. v. City of Dallas,* DC-16-15678, 298th Judicial District Court Dallas County, "Hearing on Stay of Mandamus," Tr. 20:17-21.
[2] Paragraph 5 states in full: A receiving party may challenge a producing party's designation at any time. Any receiving party disagreeing with a designation may request in writing that the producing party change the designation. The producing party will then have ten (10) business days after receipt of a challenge notice to advise the receiving party whether or not it will change the designation. If the parties are unable to reach agreement after the expiration of this ten (10) business day time-frame, and after the conference required under Local Rule LR 7.1(a), the receiving party may at any time thereafter seen an order to alter the confidential status of the designated information. Until any dispute under this paragraph is ruled upon by the presiding judge, the designation will remain in full force and effect, and the information will continue to be accorded the confidential treatment required by this Protective Order.

Based on the evidence, a Dallas County grand jury handed down three indictments for Deadly Conduct on December 7, 2017. In the wake of these new criminal charges parties at the Dallas Police Department, and a departmental union, the Dallas Police Association, have made public statements about the events, and circumstances of Tony Timpa's death. The DPA released public statements calling the indictments "unjust." "Cops' colleagues criticize 'baseless charges' in death of man who called 911 for help," *The Dallas Morning News,* (Dec. 8, 2017). "The type of physical restraint used on Mr. Timpa is commonly used by officers to control combative and intoxicated individuals," DPA president Michael Mata said in the statement. "We expect the officers to be cleared of these baseless charges." Elsewhere, the Defendants' union surrogates urged "these officers did not kill this man." "3 Dallas Police Officers Indicted in Death of Unarmed Man, NBCDFW.COM, (Dec. 7, 2017). Other news reports indicated Timpa was "combative," and "died at the hospital."

On December 11, 2017, Plaintiffs' counsel sent correspondence to counsel for all Defendants requesting a change from the designation of the items in the protective order. Exhibit "A". In pertinent part, the correspondence stated:

> Pursuant to Paragraph 5 of the order dated April 14, 2017, Plaintiffs challenge the restrictions placed on the dissemination, and use of items previously produced as a result of this litigation, and the state court action in Cause No. DC-16-15678-M, *Henley & Henley, P.C. v. The City of Dallas.* They further challenge the requirements that these items be filed under seal, and returned to the City in secret at the conclusion of this litigation. Those items include:
>
> - The footage provided from the bodycameras worn by three different officers;
> - The 9-1-1 recordings;
> - The reports, and written statements of the responding officers, and the EMS workers;
> - Scene photographs;
> - Reports, written and electronically recorded statements from the Internal Affairs Division, and Special Investigation Unit of this incident.[3]

---

[3] For the convenience of the Court and the parties, Plaintiffs will refrain from submitting all items under seal, or otherwise, unless, and until so directed in the manner of the Court's preference.

On December 19, Defendants responded with electronic correspondence urging that they would not change those designations. As the matter was stayed under the court's order of October 4, 2017, (ECF Doc. 79), Plaintiffs had to wait until after March 1st to proceed with the present challenge, and sent out the previous correspondence again. Defendants—some of whom have new counsel—still maintain their opposition to changing the designation.

## ARGUMENT AND AUTHORITIES

### A. Excessive force litigation is a matter of acute public concern.

The public has a common law right of access to inspect and copy judicial records. *S.E.C. v. Van Waeyenberghe,* 990 F.2d 845, 849 (5th Cir.1993) (citing *Nixon v. Warner Communications, Inc.,* 435 U.S. 589, 98 S.Ct. 1306, 55 L.Ed.2d 570 (1978); *Belo Broadcasting Corp. v. Clark,* 654 F.2d 423, 429 (5th Cir.1981)). A "district court's discretion to seal the record of judicial proceedings is to be exercised charily." *Van Waeyenberghe,* 990 F.2d at 849 (citing *Federal Savings & Loan Ins. Corp. v. Blain,* 808 F.2d 395, 399 (5th Cir.1987)). In deciding whether to seal the court's record, the public's right of access is one of the interests to be weighed. *Belo Broadcasting Corp. v. Clark,* 654 F.2d 423, 434 (5th Cir.1981). "Public access [to judicial records] serves to promote trustworthiness of the judicial process, to curb judicial abuses, and to provide the public with a more complete understanding of the judicial system, including a better perception of its fairness." *Van Waeyenberghe,* 990 F.2d at 849 (citing *Littlejohn v. BIC Corp.,* 851 F.2d 673, 678 (3d Cir.1988)).

It is well-settled too that law enforcement, in particular, requires public oversight. *Richmond Newspapers, Inc. v. Virginia,* 448 U.S. 555, 572, 100 S.Ct. 2814, 2825 (1980); *Pansy v. Borough of Stroudsburg,* 23 F.3d 772, 792 (3d Cir.1994). As the Supreme Court explained long ago, "People in an open society do not demand infallibility from their institutions, but it is difficult for them to accept what they are prohibited from observing." *Richmond Newspapers, Inc.,* 448

U.S. at 572. It is thus axiomatic courts have repeatedly denied confidentiality designations to information pertaining to excessive force incidents. *See, e.g., Pansy,* 23 F.3d at 792; *Gutierrez v. Benavides,* 292 F.R.D. 401 (S.D. Tex. 2013); *Whitfield v. Riley,* 2009 WL 10679761 *1 (E.D. Oct. 6, 2009); *Segraves v. City of Zachary,* No. 08–357–JJB–SCR, 2009 WL 3764010, at *1 (M.D.La. Nov. 9, 2009).

"[T]he public has a strong interest in police misconduct and in official corruption and violations of civil rights by public officials." *Morrow v. City of Tenaha,* 2010 WL 3927969 *4 (E.D. Tex. 2010) citing *Flaherty v. Seroussi,* 209 F.R.D. 295, 299–300 (N.D.N.Y.2001); *Hawley v. Hall,* 131 F.R.D. 578, 585 (D.Nev.1990). As one court explains, police misconduct creates "one of the ultimate lose/lose situations in our democratic society," an "ugly and expensive syndrome" that undermines the public trust. *Doe v. Marsalis,* 202 F.R.D. 233, 238 (N.D. Ill. 2001). "Simply put, the average Chicago citizen is tired of being the victim—either direct or indirect—of repeated police misconduct." *Id.* at 238.

> The only way to end this syndrome is to evaluate and reevaluate past practices. Unfortunately, the City cannot accomplish this on its own. Some of these issues require public debate and appropriate media scrutiny.[4] *Id.*

Virtually identical considerations to the ones here operated in *Carnaby v. City of Houston,* No. 4:08–cv–1366, 2008 WL 4546606, at *2 (S.D.Tex. Oct. 10, 2008). *Carnaby* arose from the fatal shooting of Roland Carnaby by two Houston police officers. The defendants sought a protective order, like the present one, "to seal certain requested discovery, restrict attorneys' and parties' use of discovery to the lawsuit, redact identifying information from records, and return Defendants' evidence to the City of Houston within sixty days of the conclusion of the case." *Id.* at *1.

---

[4] Noting that the City of Chicago paid $18 million to settle a single "egregious police misconduct case," the *Marsalis* court explained the settlement provided a "good example of the bad cop syndrome that the City taxpayer underwrites, which follows a familiar formula: police misconduct = seriously aggrieved or sometimes dead victim = lawsuit = settlement paid by taxpayer = no real changes or evaluations to prevent further misconduct."

Providing a detailed explanation, the court denied the motion. In sum, defendants did not and could not show good cause. *Id. Carnaby* relied on the well-rooted authority Fifth Circuit reiterating the public's "common law right of access to inspect and copy judicial records." *Id.* at *2 *citing Van Waeyenberghe,* 990 F.2d at 849 (citing *Nixon v. Warner Communications, Inc.,* 435 U.S. 589, 98 S.Ct. 1306, 55 L.Ed.2d 570 (1978); *Belo Broadcasting Corp. v. Clark,* 654 F.2d 423, 429 (5th Cir. 1981). In denying the protective order, *Carnaby* emphasized "the public has a particular interest in the instant case because it involves matters of public safety and the deadly force policies of the local police department." *Id.* at *2.

Here, we have videotaped evidence of a man in mental crisis getting smothered to death on a parkway of a major thoroughfare. DPD officers killed Tony Timpa near the was 1700 block of Mockingbird Lane, though he was a not a suspect to a crime, much less a violent one. Defendants were responding to Tony's own 9-1-1 call indicating mental crisis. The Dallas County Medical Examiner concluded it was a Homicide; the Custodial Death Report indicates Timpa had neither resisted nor threatened the officers; and a Dallas County grand jury indicted three of the defendants. Such circumstances undeniably render Tony's needless death a grave public concern. Few things imaginable should concern the public interest more. As a result, Plaintiffs challenge Defendants' confidential designation for the reports, statements, recordings, photos and video footage.

**B. The Federal Rules do not restrict a party's rights of free speech.**

"A party may generally do what it wants with material obtained through the discovery process, as long as it wants to do something legal." *Ryder v. Union Pacific Railroad Company,* 315 F.R.D. 186, 188-89 (M.D. La. 2016) quoting *Harris v. Amoco Production Co.*, 768 F.2d 669, 683–84 (5th Cir.1985). "Absent a protective order, parties to a law suit may disseminate materials obtained during discovery as they see fit." *Public Citizen v. Liggett Group, Inc.*, 858 F.2d 775, 780

(1st Cir.1988)). "In particular, parties may disseminate materials to litigants in other cases or to the public." *Pincheira v. Allstate Ins. Co.*, 144 N.M. 601, 190 P.3d 322, 329 (2008) citing *Jepson, Inc. v. Makita Elec. Works, Ltd.*, 30 F.3d 854, 858 (7th Cir.1994). "The federal rules do not themselves limit the use of discovered documents or information. Rule 26(c) does, however, afford district courts the ability to impose limits. If the party from whom discovery is sought shows 'good cause,' the presumption of free use dissipates, and the district court can exercise its sound discretion to restrict what materials are obtainable, how they can be obtained, and what use can be made of them once obtained." *Id.* at 684.

Federal Rule of Civil Procedure 26(c) allows a "party or any person from whom discovery is sought [to] move for a protective order in the court where the action is pending." Fed.R.Civ.P. 26(c)(1). Relevant here, a "court may, for good cause, issue an order" forbidding the discovery sought or limiting the scope of discovery into certain matters. *See id.* "Rule 26(c)'s requirement of a showing of good cause to support the issuance of a protective order indicates that 'the burden is upon the movant to show the necessity of its issuance, which contemplates a particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements.' " *In re Terra Intern., Inc.,* 134 F.3d 302, 306 (5th Cir.1998) (*per curiam* ) (quoting *United States v. Garrett,* 571 F.2d 1323, 1326 n. 3 (5th Cir.1978)); *accord In re LeBlanc,* 559 F. App'x 389, 392 (5th Cir. 2014)(*per curiam*); *Gutierrez v. Benavides,* 292 F.R.D. 401, 403 (S.D. 2013).

Instructive here is the relatively recent decision in *Ryder v. Union Pacific Railroad Company,* 315 F.R.D. 186 (M.D. La. 2016). Relying on the Fifth Circuit's ruling in *Harris v. Amoco Production Co.*'s prescription that parties may do what they wish with discovery products—so long as it is legal—and a long train of authority elsewhere, the court in *Ryder* rejected Union Pacific's contentions that onboard train video of events leading to a collision were not

subject to restriction, because they could be "used inappropriately on webpages and other outlets that thrive on the misfortune of others." *Id.* at 189. The *Ryder* court agreed with the plaintiff's that there was nothing inherently confidential about the footage from the locomotive. No less important, the railroad company failed to provide any "particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements" to support its concern that the video will be used inappropriately or voyeuristically." *Id.*

Indeed, *Ryder* expressly rejected that anticipated usage in similar litigation elsewhere constituted good cause to restrict dissemination. *Id. citing, e.g., Sanchez v. Property and Cas.*, 2010 WL 107606 at *2 (S.D.Tex. Jan 7, 2010) (denying insurer's motion for protective order to prohibit plaintiff's counsel from using information obtained through discovery in other cases where insurer had not "articulated, or demonstrated factually, that any specific harm will flow from allowing [Plaintiff's] counsel to use these documents in other cases.")

What is more, the court cited with approval authority that broad circulation served the raison d'être of the Federal Rules of fostering efficient resolution of claims. *Id. citing Patterson v. Ford Motor Company*, 85 F.R.D. 152, 153–154 (W.D.Tex.1980) (denying motion for protective order where defendant expressed concern that "counsel for the Plaintiff is interested in developing and fomenting additional litigation against Ford Motor Company" and explaining that "[s]uch collaboration among plaintiffs' attorneys would come squarely within the aims of the Federal Rules of Civil Procedure to secure the just, speedy, and inexpensive determination of every action."). This point concerning collaboration is particularly pertinent here. To date, the extant order has precluded Plaintiffs from sharing discovery with even Intervenor's counsel.

While excessive police force demand public scrutiny in general, the restrictions concerning this action are particularly misplaced. As indicated elsewhere, Plaintiffs, their counsel, and

Intervenor struggled for more months simply to ascertain how Tony Timpa was killed with fruitless public information requests. *The Dallas Morning News* likewise encountered the same through its own independent requests.

## **CONCLUSION**

For good reason, the Fifth Circuit and courts in sister circuits hold that a party may employ discovery products for any reason "it wants," so long as it is "something legal." As American jurisprudence has rarely countenanced the prerogatives of the Star Chamber such imperatives are particularly pertinent to claims involving law enforcement. The trenchant judgment of the court in *Doe v. Marsalis* is every bit as applicable to Big D as it was to the Windy City; simply put, the public is weary and fatigued by police brutality, and misconduct. *Id.* at 238. No good cause exists to continue to squelch the facts of Tony Timpa's death. As a long and weighty chain of authorities make clear, Tony's death is a matter of acute public concern. Defendants have had, and eaten their proverbial cake—retaining complete control over all evidence, stalling proceedings, while surrogates selectively broadcast their version of this tragedy. To date, Defendants have shown no good cause for deeming the documents, footage, and recordings confidential. Nor can they.

Plaintiffs thus urge this Court to **GRANT** this motion and **ORDER** and **DECLARE** that the following are **NOT** confidential, but are public information that may be used, or disseminated for any lawful purpose:

- The footage provided from the bodycameras worn by three different officers;
- The 9-1-1 recordings;
- The reports, and written statements of the responding officers, and the EMS workers;
- Scene photographs; and
- Reports, written and electronically recorded statements from the Internal Affairs Division, and Special Investigation Unit of this incident.

Respectfully Submitted,

By: /s/ Geoff J. Henley
Geoff J. Henley
Texas Bar No. 00798253
ghenley@henleylawpc.com
R. Lane Addison
Texas Bar No. 24059355
rladdison@henleylawpc.com
**HENLEY & HENLEY, P.C.**
2520 Fairmount
Suite 200
Dallas, Texas 75201
Tel. (214) 821-0222
Fax. (214) 821-0124

**ATTORNEYS FOR PLAINTIFFS**

**CERTIFICATE OF CONFERENCE**

I hereby on March 15, 2018 t certify that I attempted to confer with all counsel in this action about this matter. An email communication was sent to all counsel, but none replied. I spoke to Gerald Bright, counsel for Defendant Danny Vasquez on March 13th, who **OPPOSES** this motion. I spoke to Edward Voss, counsel for Defendant Dustin Dillard on March 13th, who **OPPOSES** this motion. On March 15th, I conferred with Mark Goldstucker, counsel for Kevin Mansell, who **OPPOSES** this motion. Messages were left for Tatia Wilson, Raymond Dominguez, and Domingo Rivera, on March 14th and 15th. She responded, and also **OPPOSES** this motion.

Susan Hutchison, counsel for Intervenor Joe Timpa, is **UNOPPPOSED.**

/s/ Geoff J. Henley
**Geoff J. Henley**

**CERTIFICATE OF SERVICE**

I hereby on March 15, 2018 t certify that I electronically submitted the foregoing document with the clerk of the court for the U.S. District Court, Northern District of Texas, using the CM/EFC system which will send notification to all attorneys of record who are registered for electronic notice.

/s/ Geoff J. Henley
**Geoff J. Henley**