THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| VICKI TIMPA, INDIVIDUALLY, AND AS REPRESENTATIVE OF THE ESTATE OF ANTHONY TIMPA, AND CHERYLL TIMPA, INDIVIDUALLY AS NEXT FRIEND OF K.T., A MINOR CHILD, § § § § § § | | |
| Plaintiffs, § | Civil Action No. 3:16-CV-03089-N | |
| v. § | | |
| DUSTIN DILLARD, DANNY VASQUEZ, RAYMOND DOMINGUEZ, DOMINGO RIVERA, KEVIN MANSELL, GLENN JOHNSON, CRIMINAL INVESTIGATIVE UNIT, LLC, § § § § § § § | | |
| Defendants. § | | |

**BRIEF OF AMICUS CURIAE THE DALLAS MORNING NEWS, INC. REGARDING PLAINTIFFS' CHALLENGE TO PROTECTIVE ORDER DESIGNATIONS**

Pursuant to Local Rule 7.2(b), The Dallas Morning News, Inc. ("TDMN") submits this Amicus Brief in support of the Motion to Challenge Protective Order Designations (the "Motion"), ECF No. 89, filed by Plaintiffs Vicki Timpa, individually and as representative of the Estate of Anthony "Tony" Timpa, and Cheryll Timpa, individually as next friend of K.T., a minor child (the "Timpas").

**INTRODUCTION**

The challenged designations shield from public scrutiny materials that record the death of an unarmed civilian while handcuffed and in police custody. When, as here, confidential designations are not supported by good cause and relate to matters of public concern, the designations should be struck and the materials filed unsealed when presented to the Court. *See*

*Harmon v. City of Santa Clara*, 323 F.R.D. 617 (N.D. Cal. 2018); *Carnaby v. City of Hous.*, No. 4:08-cv-1366, 2008 WL 4546606, at *2 (S.D. Tex. Oct. 10, 2008); *see also Vantage Health Plan, Inc. v. Willis-Kighton Med. Ctr.*, 913 F.3d 443, 451 (5th Cir. 2019). TDMN therefore respectfully submits that the Timpas' Motion should be granted, and the designations removed.

The dispute originates from the City of Dallas' (the "City") confidential designation under an agreed Protective Order (ECF No. 33) the following information: (i) body camera footage from three police officers at the scene of Mr. Timpa's death, (ii) 911 recordings, reports and written statements of the responding police officers and EMS workers, (iii) scene photographs, and (iv) reports and written / electronically recorded statements from the Internal Affairs Division and Special Investigation Unit regarding this incident (hereafter the "Police/EMS Materials").

No good cause exists to support these designations or to deviate from the presumption of openness in federal court. The City and Defendants Dustin Dillard, Danny Vasquez, Raymond Dominguez, Domingo Rivera, Kevin Mansell, Glenn Johnson and Criminal Investigative Unit, LLC (collectively the "Defendants"), attempted to support confidential status based on parallel criminal prosecutions of the individual police officers. On March 18, 2019 the specter of criminal liability was removed when Dallas County District Attorney John Creuzot voluntarily dismissed all three indictments. *See* Am. Mot. to Lift Stay at 2, ECF No. 114. Accordingly, the sole theory relied upon by Defendants for maintaining confidentiality no longer exists.

The need for the relief requested by the Motion is particularly acute. For public trust and accountability, the citizens of Dallas must finally learn what happened when Tony Timpa died in police custody after he made a 911 call seeking help. It is well-settled that the public has a compelling interest not only in understanding what took place during fatal exchanges between a citizen and law enforcement, but also any rulings to be made on those facts by the court. *See United*

*States v. Holy Land Found. for Relieve and Dev.*, 624 F.3d 685, 690 (5th Cir. 2010). As the Fifth Circuit has noted, "[t]he principle of public access to judicial records furthers not only the interests of the outside public, but also the integrity of the judicial system itself." *Id.* "Public confidence" in the judicial system "cannot be long maintained where important judicial decisions are made behind closed doors and then announced in conclusive terms to the public, with the record supporting the court's decision sealed from public view." *Id.* Public availability of the challenged documents is thus vital to maintain an informed public and stemming the flow of misinformation on this matter of clear public concern. *See id.*

Consistent with these principles and the Federal Rules, the parties to this action should be free to disclose and share the Police/EMS Materials. *See Total Rx Care, LLC v. Great Northern Ins. Co.*, No. 3:16-cv-2965-B, 2016 WL 9559917, at *1 (N.D. Tex. Dec. 30, 2016) (parties free to do as they will "as long as it [is] something legal") (quoting *Harris v. Aomoco Prod. Co.*, 768 F.2d 669, 683–84 (5th Cir. 1985)). Importantly, when and if those materials are filed of record in this Court, they should also be open for all to inspect. *See Vantage Health Plan, Inc.*, 913 F.3d at 451; *United States v. McCraney*, 99 F. Supp. 3d 651, 654 (E.D. Tex. 2015) ("The public has a common-law and First Amendment right to inspect and copy judicial records").

## STATEMENT OF INTEREST

*The Dallas Morning News* is a daily newspaper that covers events from across the globe, with a particular focus on events in North Texas. As part of this coverage, TDMN routinely reports on stories involving the Dallas Police Department. This includes the events leading to Mr. Timpa's death in police custody, as well as the Timpa family's civil claims in this lawsuit. Beyond covering local law enforcement, TDMN also regularly reports on Dallas' state and federal courts.

TDMN maintains no interest or bias as to which party prevails on the merits. TDMN does have a significant interest in the accurate and timely presentation of facts regarding interactions between law enforcement and the public. TDMN also has an interest in defending the continued public access to judicial proceedings and underlying materials. TDMN thus submits this brief to support the Timpas' Motion and to safeguard the public's right to access information of vital public concern.

## ARGUMENT

Defendants[1] must establish good cause supported by concrete evidence in order to sustain the confidentiality designations after the Timpas' challenge. As demonstrated below, no good cause exists to support continued confidentiality.

**I.   Defendants must show "good cause" to maintain confidential treatment.**

The present dispute concerns the continued viability of confidentiality designations made by the City under the agreed Protective Order governing this case. *See* Motion at 3–4, ECF No. 89; Mot. for Prot. Order, ECF No. 32; Prot. Order, ECF No. 33. In the Fifth Circuit, "rules of contract interpretation are applied to agreed orders." *Moore v. Ford Motor Co.*, 755 F.3d 802, 807 n.10 (5th Cir. 2014). Regarding confidentiality designations, when parties agree to a protective order, "signed by a judge without an initial showing of good cause and a party later challenges the protections accorded documents . . . the burden of showing good cause is on the party seeking continued confidentiality protection." *Oncology Tech, L.L.C. v. Elekta, Inc.*, No. SA-12-CA-314-H, 2013 WL 12169359, at *5 (W.D. Tex. Feb. 5, 2013) (quotations omitted).

---

[1] The officers joined the City in the Response to the Motion (the "Response"), ECF No. 105.

The burden of good cause thus rests with Defendants following the Timpas' challenge. *See Oncology Tech*, 2013 WL 12169359, at *5. Defendants' attempt to flip the burden ignores this governing standard and misapplies the language of the Protective Order. *See* Response at 8, ECF No. 105.

The Timpas are not seeking "relief from a term or condition" of the order under Paragraph 18. If they were, then they might well be subject to good cause shown. *See United States ex rel Long v. GSD&M Idea City LLC*, No. 3:11-cv-1154, 2014 WL 12648520, at *2 (N.D. Tex. Jan. 3, 2014) ("a party seeking to <u>modify</u> an agreed protective order bears the burden of demonstrating good cause exists") (emphasis added). But the Timpas have instead invoked Paragraph 5 of the Protective Order, which provides for challenges to another parties' designations—designations that were made by a party, not the Court. The "well-established" principle in such instances is "that the fruits of pretrial discovery are, **in the absence of a court order to the contrary**, presumptively public." *In re Enron Corp. Secs., Derivative & ERISA Litig.*, 229 F.R.D. 126, 130 n.8 (S.D. Tex. 2005) (emphasis in original). It is accordingly incumbent upon the Defendants to establish good cause to continue confidentiality—not upon the Timpas to establish good cause for de-designation.

II.     **No good cause exists to support the designations.**

Good cause under Rule 26 "contemplates a particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements." *Turner v. Nationstar Mortg. LLC*, No. 3:14-cv-1704-L-BN, 2015 WL 12765513, at *2 (N.D. Tex. May 14, 2015) (quotations omitted). Defendants' primary contention in support of continued confidentiality was the related criminal indictments pending against the officers. *See* Response at 7, ECF No. 105.

Any concern that may have existed on that account is now removed. *See* Mot. to Lift Stay at 2, ECF No. 114. With the criminal prosecutions dismissed, the record is bereft of any evidence

that could support good cause to preserve the challenged designations. *See, e.g., Morrow v. City of Tenaha*, No. 208CV288, 2010 WL 3927969, at *4 (E.D. Tex. Oct. 5, 2010) (finding "unsubstantiated allegations" insufficient "to demonstrate good cause for a protective order, especially in light of the strong public interest in the conduct of public officials"). The designations should accordingly be struck for lack of evidence establishing good cause.

**III.  The public interest in the circumstances surrounding Mr. Timpa's death compels de-designation.**

Notwithstanding a lack of evidence, the public interest in understanding the death of Mr. Timpa while handcuffed in police custody further compels de-designation. "As a general proposition, pre-trial discovery must take place in the (sic) public unless compelling reasons exist for denying the public access to the proceedings." *In re U.S Motion to Modify Sealing Orders*, No. 5:03-MC-2, 2004 WL 5584146, at *4 (E.D. Tex. June 8, 2004). The animating theory is one of "sunlight as a disinfectant." *Id.*

As recognized by this Court, this is particularly true "when the subject matter of the litigation is of special public interest." *Ironclad, L.P. v. Poly-Am., Inc.*, No. 3:98-CV-2600, 2000 WL 1400762, at *15 (N.D. Tex. July 28, 2000) (Solis, J.) (citing *In re "Agent Orange" Prod. Liab. Litig.*, 821 F.2d 139, 145 (2d Cir. 1987), *cert. denied*, 484 U.S. 953 (1987) (allowing Vietnam Veterans of America access to discover materials produced under a protective order in product liability litigation)). Special public interest exists when a case "involves matters of public safety and the deadly force policies of the local police department." *Carnaby*, 2008 WL 4546606, at *2.

The decision in *Carnaby* is strikingly similar to this matter and was detailed at length in Plaintiffs' Motion. There, in connection with a fatal shooting by two Houston police officers, the court granted the plaintiff's motion to compel production of tapes of dispatch calls, tapes of 911 calls, police investigation records and Internal Affairs Division files. *Id.* at *3. The court further

determined that attorneys and parties would not be "restricted from using discovery outside the lawsuit." *Id.*

In the ten years following *Carnaby*, courts have repeatedly recognized this "particular interest" of the public in connection with excessive or deadly force police cases. The decision in *Harmon* is particularly instructive. *See* 323 F.R.D. at 617. The plaintiff in *Harmon* suffered a broken leg when City of Santa Clara police officers stormed her home. *Id.* at 619. The incident, which took place in the plaintiff's driveway, was captured on video by an officer's body camera. *Id.* During discovery, the parties entered an agreed protective order providing for confidentiality protections, and for challenges to a producing party's confidentiality designations, including the right to "petition the Court to resolve the confidentiality dispute." *Id.* The City of Santa Clara produced the body camera video with a confidential designation, which the plaintiff challenged. *Id.* In concluding that the body camera video did not merit confidential status, the court found that "the public interest in disclosure outweighs the harm the defendants may suffer without confidentiality protection." *Id.* at 622. The case was high profile and public, and as the court noted, "the public unquestionably holds a hefty interest in police force transparency." *Id.* at 624. In balancing this public interest against officers' individual interests in anonymity, the court also noted that "the events took place in Harmon's driveway, clearly visible form the public street or sidewalk where any casual passerby could have witnessed or filmed the incident." *Id.* at 625. In the end, "with only minimal showings of particularized harm going forward and a strong public interest in the video's disclosure," the court granted the plaintiff's motion to "remove the video's confidential status." *Id.* at 626.

This Court, like *Harmon*, finds itself confronted by a high-profile case implicating the use of force by law enforcement outside, in public view. *See id.* at 624–26; Motion at 6. This, combined

with the heightened public interest in matters involving use of force by authorities, supports de-designation. *See id.*; *see also Lee v. City of San Diego*, No. 18cv0159, 2019 WL 117775, at *3 (S.D. Cal. Jan. 7, 2019) (refusing to seal body camera videos of the plaintiff's arrest, and noting the movants' failure "to provide any support as to how videos of an arrest made on a crowded sidewalk containing information that if disclosed to the public could cause harm or violate anyone's rights").

Moreover, no state statutory privilege shielding law enforcement or investigative files overrides the presumption of openness here. Once again, the decision in *Carnaby* is instructive. The court in *Carnaby* correctly applied federal common law to determine the existence of any privilege, and found none. *See* 2008 WL 4546606, at *3 (considering and rejecting application of Texas Public Information Act, Tex. Gov't Code § 552.108); *see also Steele v. City of Burlington*, 334 F. Supp. 3d 972, 975-82 (S.D. Iowa 2018) (unsealing police body camera footage relating to shooting death of the plaintiff's wife by police officers after such footage was marked confidential pursuant to an agreed protective order; court expressly rejected application of Iowa's state open records law that deemed such material confidential). Stated simply, if a state's open records statute "plainly conflicts with the federal common-law right of access to judicial records. . . it is the state statute that must give way." *Steele*, 334 F. Supp. 3d at 982.

Finally, the Fifth Circuit recently reaffirmed the principles of access outlined above, and endorsed a district court's authority to prospectively limit sealing of documents not yet filed of record. *See Vantage Health Plan*, 913 F.3d at 451–52. The access dispute in *Vantage* arose when, "[i]n the midst of a complex antitrust case, the district court ordered that certain confidential business documents . . . should be unsealed (but redacted) if and when they are filed on the public docket." *Id.* at 446. On interlocutory appeal, the panel affirmed, and found no abuse of discretion

for determining "in advance whether documents would be filed sealed or unsealed *once placed into the record.*" *Id.* at 451 (emphasis in original). As in *Vantage*, there is a presumption of openness here. This Court should exercise its authority to prospectively order that the Police/EMS Materials be filed unsealed. *See id.*

## CONCLUSION

> A responsible press has always been regarded as the handmaiden of effective judicial administration . . . The press does not simply publish information about trials but guards against the miscarriage of justice by subjecting the police, prosecutors, and judicial processes to extensive public scrutiny and criticism.

*Sheppard v. Maxwell*, 384 U.S. 333, 350 (1966).

Public access is not the enemy of justice. To the contrary, the two reinforce each other to society's benefit. *See id.* TDMN respectfully submits that the challenged designations should be struck. The facts of this case involve a public and fatal confrontation between a citizen and the police. There can hardly be a more compelling circumstance to safeguard public access. No good cause exists to shield the disputed materials from public scrutiny.

Respectfully submitted,

*/s/ Shannon Zmud Teicher*
Paul C. Watler
State Bar No. 20931600
pwatler@jw.com
Shannon Zmud Teicher
State Bar No. 24047169
steicher@jw.com
Eric D. Wong
State Bar No. 24102659
ewong@jw.com
JACKSON WALKER L.L.P.
2323 Ross Avenue, Suite 600
Dallas, Texas 75201
(214) 953-6000 – Telephone
(214) 953-5822 – Fax

**ATTORNEYS FOR AMICUS CURIAE
THE DALLAS MORNING NEWS INC.**

### CERTIFICATE OF SERVICE

  This certifies that on March 25, 2019, a true and correct copy of the foregoing document was served via the Court's ECF system upon all counsel of record who are registered ECF users pursuant to Local Civil Rule 5.1(d), or by another manner authorized by Rule 5(b)(2) of the Federal Rules of Civil Procedure.

                */s/ Shannon Zmud Teicher*
                Shannon Zmud Teicher