IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| VICKI TIMPA, *et al.*, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | Civil Action No. 3:16-CV-3089-N |
| | § | |
| DUSTIN DILLARD, *et al.*, | § | |
| | § | |
| Defendants. | § | |

## DEFENDANTS' RULE 26(a)(2) EXPERT DISCLOSURES

To:   Plaintiffs, through their attorneys of record, Geoff J. Henley and Lane R. Addison, Henley & Henley, P.C., 2520 Fairmount, Suite 200, Dallas, Texas 75201.

Intervenor, through his attorneys of record, Susan Hutchison and James Robert Hudson, Jr., Hutchison & Stoy, PLLC, 505 Pecan Street, Suite 101, Fort Worth, Texas 76102.

Defendants Dustin Dillard, Danny Vasquez, Raymond Dominguez, Domingo Rivera and Kevin Mansell (collectively, "Defendant Officers"), pursuant to Rule 26(a)(2) of the Federal Rules of Civil Procedure and the Court's Second Amended Scheduling Order entered on May 20, 2019 (ECF No. 123), disclose the following individuals as witnesses who may be used at trial to present evidence under Rules 702, 703, or 705 of the Federal Rules of Evidence:[1]

1.   **Sergeant Michael Bables**
     **Dallas Police Basic Training Academy**
     **5310 Redbird Center Drive**
     **Dallas, Texas 75237**
     **Telephone:  214-670-7448**

     Sergeant Michael Bables will provide testimony concerning his training and experience as a certified peace officer for the State of Texas and as a uniformed Dallas police officer; the standards and requirements under the Fourth Amendment for detention, arrest, and use of force; use of force training taught by the Dallas Police Department; whether the uses of force applied by Defendant Officers in this case consistent with the training

---

[1] The Defendants do not understand Rule 26(a)(2) to require the designation of a party as an expert witness, particularly given the subject matter of the police officer defendants' testimony.  However, in an abundance of caution, the Defendants designate themselves as expert witnesses.

provided by the Dallas Police Department; and whether the prone restraint of Anthony Timpa consistent with the training taught by the Dallas Police Department. Under Rule 26(a)(2), no written report is required because the witness has neither been retained nor specially employed to provide expert testimony and his duties do not regularly involve giving expert testimony.

As required by Rule 26(a)(2)(C) of the Federal Rules of Civil Procedure, here is a summary of the facts and opinions to which Sgt. Bables is expected to testify:

> Sgt. Bables has been a Texas Commission on Law Enforcement (TCOLE) certified peace officer since 1991, and has been employed by the City of Dallas as a Dallas Police Department officer since 1991. He was promoted to senior corporal in 1999, and provided field training to new officers for two years. He was promoted to sergeant in 2004. In 2015, Sgt. Bables became the defensive tactics supervisor at the Dallas Police Training Academy, where he teaches courses such as Defensive Tactics and Intermediate Use of Force. He is a certified instructor of Krav Maga, Firehorse, defensive tactics, and physical fitness for police and fire personnel.

> The substance of Sgt. Bables' testimony providing the factual bases for his expert opinions is set forth in the following materials: video footage from the body cameras worn by Officers Dillard, Vasquez, and Rivera; Police Incident Detail Report; Defendant Officers' Affidavits in Any Fact (attached as Exhibits A-E); Dallas Police Department General Orders 332 and 900 series; Dallas Police Department training materials; Defendant Officers' depositions; and reports and depositions from the parties' experts.

2. **Dr. Jeffrey J. Barnard, M.D.**
   **Dallas County Medical Examiner's Office**
   **Southwestern Institute of Forensic Sciences at Dallas**
   **2335 North Stemmons Freeway**
   **Dallas, Texas 75207**
   **Telephone: 214.920.5900**

Dr. Jeffrey Barnard, M.D. is a clinical pathologist who serves as director and Chief Medical Examiner of the Office of the Dallas County Medical Examiner. Dr. Barnard will provide testimony regarding his and his staff's review of the autopsy Dr. Emily Ogden performed on the body of Mr. Timpa, and of their review of her methodology, findings and conclusions. Dr. Barnard will provide testimony regarding the nature of Mr. Timpa's physical injuries and the causes of Mr. Timpa's death.

Under Rule 26(a)(2), no written report is required because the witness has neither been retained nor specially employed to provide expert testimony and his duties do not regularly involve giving expert testimony for the City of Dallas.

As required by Rule 26(a)(2)(C) of the Federal Rules of Civil Procedure, the following is a summary of the facts and opinions to which Dr. Barnard is expected to testify:

> That at all relevant times, Dr. Barnard was a clinical pathologist licensed in the State of Texas, and employed as director and Chief Medical Examiner by the Dallas County Medical Examiner's Office in Dallas, Texas.
>
> That at all relevant times, Dr. Emily Ogden was a clinical pathologist licensed in the State of Texas, and employed as a medical examiner under Dr. Barnard's supervision by the Dallas County Medical Examiner's Office in Dallas, Texas.
>
> That Dr. Barnard and his staff reviewed the autopsy Dr. Emily Ogden performed on the body of Mr. Timpa, and found her methodology scientifically sound and generally accepted in the field.
>
> That Dr. Barnard and his staff reviewed and concurred with Dr. Ogden's observations, findings and conclusions set forth in Dr. Ogden's Autopsy Report and in her deposition.
>
> That she found no evidence indicating that Mr. Timpa's death was caused by mechanical asphyxia, or that he was unable to sufficiently breathe while being restrained by the Defendant Officers.
>
> Dr. Barnard's expert opinions and the factual bases for them are further set forth in the materials contained in the Office of the Medical Examiner Case File; the video footage from the body cameras worn by Defendant Officers Dillard, Vasquez and Rivera; video footage from security cameras outside the New Fine Arts Theater; and the expert report of Dr. Kim Collins.

3.  **Curtis Burnley**
    **Dallas Fire-Rescue Department**
    **1500 Marilla Street, Suite 7AS**
    **Dallas, TX 75201**
    **214-670-5466**

    Curtis Burnley will provide testimony concerning his training and experience as a paramedic licensed in the State of Texas and as a uniformed member of the Dallas Fire-Rescue Department; the on-scene division of responsibilities and authority between Dallas Police and Dallas Fire-Rescue personnel; his observations of Mr. Timpa's behavior and physical and mental health; the conclusions he drew from his observations of Mr. Timpa's behavior and physical and mental health; and whether it was reasonable and necessary for the Defendant Officers to restrain Anthony Timpa to allow the paramedics to perform a medical assessment of Mr. Timpa. Under Rule 26(a)(2), no written report is required because the witness has neither been retained nor specially employed to provide expert testimony and his duties do not regularly involve giving expert testimony.

As required by Rule 26(a)(2)(C) of the Federal Rules of Civil Procedure, the following is a summary of the facts and opinions to which Mr. Burnley is expected to testify:

That on August 10, 2016, and at all relevant times, Mr. Burnley was a paramedic licensed in the State of Texas, employed by the City of Dallas as a Dallas Fire-Rescue Department officer.

That it was objectively reasonable for Defendant Officers and anyone else who observed Mr. Timpa's conduct to conclude that Mr. Timpa presented a danger to himself and others.

That the force Defendant Officers used to restrain Mr. Timpa was objectively reasonable in light of the facts and circumstances known to them at the time the force was used.

Mr. Burnley's expert opinions and the factual bases for them are further set forth in his deposition testimony; the video footage from the body cameras worn by Defendant Officers Dillard, Vasquez and Rivera; the Prehospital Care Report Summary (attached as Exhibit F); and Mr. Burnley's August 31, 2016 Affidavit in Any Fact (attached as Exhibit H).

4. **James Flores**
   **Dallas Fire-Rescue Department**
   **1500 Marilla Street, Suite 7AS**
   **Dallas, TX 75201**
   **214-670-5466**

   James Flores will provide testimony concerning his training and experience as a paramedic licensed in the State of Texas and as a uniformed member of the Dallas Fire-Rescue Department; the on-scene division of responsibilities and authority between Dallas Police Department and Dallas Fire-Rescue personnel; his observations of Mr. Timpa's behavior and physical and mental health; the conclusions he drew from his observations of Mr. Timpa's behavior and physical and mental health; and whether it was reasonable and necessary for the Defendant Officers to restrain Anthony Timpa to allow the paramedics to perform a medical assessment of Mr. Timpa. Under Rule 26(a)(2), no written report is required because the witness has neither been retained nor specially employed to provide expert testimony and his duties do not regularly involve giving expert testimony.

   As required by Rule 26(a)(2)(C) of the Federal Rules of Civil Procedure, the following is a summary of the facts and opinions to which Mr. Flores is expected to testify:

   That on August 10, 2016, and at all relevant times, Mr. Flores was a paramedic licensed in the State of Texas, employed by the City of Dallas as a Dallas Fire-Rescue Department officer.

That it was objectively reasonable for Defendant Officers and anyone else who observed Mr. Timpa's conduct to conclude that Mr. Timpa presented a danger to himself and others.

That the force Defendant Officers used to restrain Mr. Timpa was objectively reasonable in light of the facts and circumstances known to them at the time the force was used.

Mr. Flores's expert opinions and the factual bases for them are further set forth in his deposition testimony; the video footage from the body cameras worn by Defendant Officers Dillard, Vasquez and Rivera; the Prehospital Care Report Summary (attached as Exhibit F); and Mr. Flores's August 31, 2016 Affidavit in Any Fact (attached as Exhibit G).

5. **Officer Dustin Dillard**
   **c/o Assistant City Attorneys Lindsay Gowin, Tatia R. Wilson, and Amy Messer**
   **7DN Dallas City Hall**
   **1500 Marilla Street**
   **Dallas, Texas 75201**
   **Telephone: 214-670-3519**

   Dustin Dillard is a Dallas Police Department officer. He will provide testimony concerning his training and experience as a certified peace officer for the State of Texas and as a Dallas police officer; the standards and requirements under the Fourth Amendment for detention, arrest, and use of force; use of force training taught by the Dallas Police Department; whether his actions and the force he and his fellow officers used in this case were consistent with the training provided by the Dallas Police Department; and whether the force that he and his fellow officers used to restrain Anthony Timpa under the facts and circumstances known to them was objectively unreasonable.

   Under Rule 26(a)(2), no written report is required because the witness has neither been retained nor specially employed to provide expert testimony and his duties do not regularly involve giving expert testimony.

   As required by Rule 26(a)(2)(C) of the Federal Rules of Civil Procedure, here is a summary of the facts and opinions to which Officer Dillard is expected to testify:

   On August 10, 2016, and at all times relevant to his encounter with Anthony Timpa, Officer Dillard was a Texas Commission on Law Enforcement (TCOLE) certified peace officer, employed by the City of Dallas as a police officer.

   At all times relevant to Officer Dillard's encounter with Anthony Timpa, Officer Dillard was acting within the course and scope of his duties as a Dallas police officer, and was discharging his discretionary authority as a peace officer.

On the evening of August 10, 2016, at around 10:30 p.m., Officer Dillard and his partner, Dallas Police Department Officer Danny Vasquez, responded to a call regarding a potentially mentally disturbed person at 1720 West Mockingbird Lane.  The call comments stated that the person was schizophrenic and off his medication.  Officer Dillard and Officer Vasquez arrived at the scene and observed a handcuffed male, Anthony Timpa, on the ground yelling and screaming.  Mr. Timpa was close to the edge of the roadway near a bus stop that was a few feet from Mockingbird Lane and oncoming traffic.  Sgt. Kevin Mansell was already there at the location, and two Dallas Fire-Rescue paramedics arrived on the scene around the same time as Officers Dillard and Vasquez.

Officer Dillard walked over to Mr. Timpa and stood within a few feet to give him space and establish a safe perimeter.  Mr. Timpa immediately began kicking, trying to roll over and get up.  To keep Mr. Timpa from rolling into the roadway, Officer Dillard restrained Mr. Timpa in a prone position by placing one knee on Mr. Timpa's back and two hands on Mr. Timpa's shoulder, applying only the amount of pressure necessary to keep Mr. Timpa from rolling over and getting up.  Officer Dillard used his left knee as leverage while placing the bulk of his weight on his right knee and leg, which remained on the ground.  At no time did Officer Dillard apply his full body weight to Mr. Timpa's back, or press down onto his back using his full body weight.  As Officer Dillard restrained Mr. Timpa, he spoke reassuringly to him and attempted to get Mr. Timpa to relax so that the paramedics could medically assess and treat Mr. Timpa.

Mr. Timpa continued to scream, yell, and struggle to get up for several minutes.  During this time Officer Dillard attempted to gather information to assist the paramedics in their assessment.  Officer Dillard repeatedly asked Mr. Timpa whether he had taken anything, including any controlled substances.  However, Mr. Timpa failed to provide a coherent answer and Officer Dillard was unable to ascertain at the scene whether Mr. Timpa had taken any drugs.  During this time, Officer Dillard also continued to restrain Mr. Timpa because (1) he was concerned for Mr. Timpa's safety and specifically concerned that without restraint, Mr. Timpa would attempt to roll or move into an active traffic lane of nearby Mockingbird Lane, and (2) it was necessary for the paramedics to perform their medical assessment of Mr. Timpa and provide him provide him proper medical treatment. Officer Dillard applied only the amount of pressure necessary to allow the paramedics to perform their medical assessment and treatment of Mr. Timpa, while also preventing him from entering the roadway and oncoming traffic.

At one point, Mr. Timpa finally stopped screaming and appeared to relax.  Mr. Timpa also made what appeared to be a snoring sound, at which time one of the paramedics administered an injection in Mr. Timpa's left shoulder. Mr. Timpa appeared to respond to the injection, but he remained calm and still. Officer Dillard attempted to awaken Mr. Timpa, but he was unresponsive.  Officer Dillard then removed his knee and hands from Mr. Timpa's back and assisted the

    paramedics in placing Mr. Timpa on a gurney and into the ambulance. Once in the ambulance, Officer Dillard assisted in performing CPR chest compressions on Mr. Timpa.

    At all times during his restraint of Mr. Timpa, Officer Dillard monitored Mr. Timpa's breathing. Mr. Timpa continued to yell and scream. At no time did Mr. Timpa say that he could not breath or did Officer Dillard perceive that Mr. Timpa could not breath, that he was struggling to breathe, or that he was in medical distress.

    A reasonable officer, possessing the information known to Officer Dillard at the time, could have believed that it was lawful to restrain Anthony Timpa by applying necessary pressure on Mr. Timpa's upper back and shoulder area to keep Mr. Timpa from entering active traffic lanes of Mockingbird Lane, and to allow the paramedics to perform their medical assessment and treatment of Mr. Timpa.

    Officer Dillard's expert opinions and the factual bases for them are further set forth in his deposition testimony; the video footage from the body cameras worn by Defendant Officers Dillard, Vasquez and Rivera; and Officer Dillard's Affidavit in Any Fact executed on August 17, 2016, attached hereto as Exhibit A.

In sum, Officer Dillard will testify that his actions were lawful and justified by the facts known to him and the applicable law relating to the Fourth Amendment. Officer Dillard will further testify that it was objectively reasonable for him, his fellow officers, and anyone else who observed Mr. Timpa's conduct to conclude that Mr. Timpa presented a danger to himself and to others. Officer Dillard will further testify that he only applied the amount of pressure necessary to restrain Mr. Timpa to keep him from entering active traffic lanes of Mockingbird Lane, and to allow the paramedics to perform their medical assessment and treatment of Mr. Timpa, and, therefore, the force used was objectively reasonable and lawful in light of the facts and circumstances known to them at the time the force was used.

6. **Senior Corporal Raymond Dominguez**
   **c/o Assistant City Attorneys Lindsay Gowin, Tatia R. Wilson, and Amy Messer**
   **7DN Dallas City Hall**
   **1500 Marilla Street**
   **Dallas, Texas 75201**
   **Telephone: 214-670-3519**

   Raymond Dominguez is a Dallas Police Department officer. He will provide testimony concerning his training and experience as a certified peace officer for the State of Texas and as a Dallas police officer; the standards and requirements under the Fourth Amendment for detention, arrest, and use of force; use of force training taught by the Dallas Police Department; whether his actions and the force he and his fellow officers used in this case were consistent with the training provided by the Dallas Police Department; and whether the force that he and his fellow officers used to restrain

Anthony Timpa under the facts and circumstances known to them was objectively unreasonable.

Under Rule 26(a)(2), no written report is required because the witness has neither been retained nor specially employed to provide expert testimony and his duties do not regularly involve giving expert testimony.

As required by Rule 26(a)(2)(C) of the Federal Rules of Civil Procedure, here is a summary of the facts and opinions to which Senior Corporal Dominguez is expected to testify:

On August 10, 2016, and at all relevant times, Senior Corporal Dominguez was a Texas Commission on Law Enforcement (TCOLE) certified peace officer, employed by the City of Dallas as a police officer.

At all times relevant to Senior Corporal Dominguez's encounter with Anthony Timpa on August 10, 2016, Senior Corporal Dominguez was acting within the course and scope of his duties as a Dallas police officer, and was discharging his discretionary authority as a peace officer.

On the evening of August 10, 2016, at around 10:30 p.m., Senior Corporal Dominguez responded to a call regarding a potentially mentally disturbed person at 1720 West Mockingbird Lane. The dispatcher related that the person was off his medication. When Senior Corporal Dominguez arrived, he saw Officer Dillard and Officer Vasquez restraining a handcuffed male, Anthony Timpa, on the ground. Mr. Timpa was yelling and screaming and trying to roll around. Mr. Timpa was close to the edge of the roadway near a bus stop that was a few feet from Mockingbird Lane and oncoming traffic. Sgt. Kevin Mansell was already at the location. Officer Domingo Rivera and two Dallas Fire-Rescue paramedics also responded to the scene.

Senior Corporal Dominguez retrieved flex cuffs from Officer Vasquez's squad car and placed them on Mr. Timpa's ankles to prevent him from kicking. Mr. Timpa continued to scream, yell, and struggle to get up for several minutes. Officer Dillard continued to restrain Mr. Timpa because (1) he was concerned for Mr. Timpa's safety and specifically concerned that without restraint, Mr. Timpa would attempt to roll or move into an active traffic lane of nearby Mockingbird Lane, and (2) it was necessary for the paramedics to perform their medical assessment of Mr. Timpa and provide him provide him proper medical treatment. Officer Dillard applied only the amount of pressure necessary to allow the paramedics to perform their medical assessment and treatment of Mr. Timpa, while also preventing him from entering the roadway and oncoming traffic.

After several minutes, a paramedic succeeded in taking Mr. Timpa's vital signs, although he continued to yell and thrash. While the paramedic retrieved a sedative injection from the ambulance, Mr. Timpa finally stopped screaming and appeared to relax. Mr. Timpa also made what appeared to be a snoring sound, at

> which time one of the paramedics administered an injection in Mr. Timpa's left shoulder. Mr. Timpa appeared to respond to the injection, but he remained calm and still. The officers attempted to awaken Mr. Timpa, but he was unresponsive. The officers then assisted the paramedics in placing Mr. Timpa on a gurney and into the ambulance. Once in the ambulance, Senior Corporal Dominguez assisted in performing CPR chest compressions on Mr. Timpa.
>
> At no time did Mr. Timpa say that he could not breath or did Senior Corporal Dominguez perceive that Mr. Timpa could not breathe, that he was struggling to breath, or that he was in medical distress.
>
> A reasonable officer, possessing the information known to Defendant Officers at the time, could have believed that it was lawful to restrain Anthony Timpa by applying necessary pressure on Mr. Timpa's upper back and shoulder area to keep Mr. Timpa from entering active traffic lanes of Mockingbird Lane, and to allow the paramedics to perform their medical assessment and treatment of Mr. Timpa.
>
> Senior Corporal Dominguez's expert opinions and the factual bases for them are further set forth in his deposition testimony; the video footage from the body cameras worn by Defendant Officers Dillard, Vasquez and Rivera; and in Senior Corporal Dominguez's his August 15, 2016 Affidavit in Any Fact (attached hereto as Exhibit B).

Officer Dominguez will testify that his actions were lawful and justified by the facts known to him and the applicable law relating to the Fourth Amendment. Officer Dominguez will further testify that it was objectively reasonable for him, his fellow officers, and anyone else who observed Mr. Timpa's conduct to conclude that Mr. Timpa presented a danger to himself and others. Officer Dominguez will further testify that the force he and his fellow officers used to restrain Mr. Timpa was objectively reasonable and lawful in light of the facts and circumstances known to them at the time the force was used.

7. **Kevin Mansell**
   **c/o Assistant City Attorneys Lindsay Gowin, Tatia R. Wilson, and Amy Messer**
   **7DN Dallas City Hall**
   **1500 Marilla Street**
   **Dallas, Texas 75201**
   **Telephone: 214-670-3519**

   Kevin Mansell is a retired Dallas Police Department Sergeant of Police. He will provide testimony concerning his training and experience as a certified peace officer for the State of Texas and as a uniformed Dallas police officer; the standards and requirements under the Fourth Amendment for detention, arrest, and use of force; use of force training taught by the Dallas Police Department; whether the force his fellow officers used in this case was consistent with the training provided by the Dallas Police Department; and whether the force that his fellow officers used to restrain Anthony Timpa was objectively unreasonable.

> Under Rule 26(a)(2), no written report is required because the witness has neither been retained nor specially employed to provide expert testimony and his duties do not regularly involve giving expert testimony.

As required by Rule 26(a)(2)(C) of the Federal Rules of Civil Procedure, here is a summary of the facts and opinions to which Sgt. Mansell is expected to testify:

> On August 10, 2016, and at all relevant times, Sgt. Mansell was a Texas Commission on Law Enforcement (TCOLE) certified peace officer, employed by the City of Dallas as a Dallas Police Department officer.
>
> At all times relevant to Sgt. Mansell's encounter with Anthony Timpa on August 10, 2016, Sgt. Mansell was acting within the course and scope of his duties as a Dallas police officer, and was discharging his discretionary authority as a peace officer.
>
> On the evening of August 10, 2016, at around 10:30 p.m., Sgt. Mansell responded to a call regarding a potentially mentally disturbed person at 1720 West Mockingbird Lane. The call comments stated that the person was schizophrenic and off his medication. When Sgt. Mansell arrived, he saw the handcuffed Mr. Timpa on the ground in the grassy area between Mockingbird and a bus stop bench. Two security guards were standing near him. Mr. Timpa was yelling, rolling around and kicking his feet in the air. Mr. Timpa rolled toward the street; Sgt. Mansell and the two security guards moved him back from the roadway.
>
> Officer Dillard, Officer Vasquez, Senior Corporal Dominguez, Officer Rivera and two DFR paramedics soon arrived at the scene. Mr. Timpa again rolled toward Mockingbird, so Officers Dillard and Vasquez restrained him to keep him out of the roadway and facilitate the paramedics' medical assessment of Mr. Timpa. Senior Corporal Dominguez and Officer Rivera put flex cuffs on Mr. Timpa's ankles to prevent him from kicking.
>
> Officer Rivera then located Mr. Timpa's car and searched it for anything that might provide relevant information for Mr. Timpa's medical treatment. Sgt. Mansell called Mr. Timpa's family and obtained information about Mr. Timpa's medical conditions and medications.
>
> Defendant Officers applied only the amount of pressure necessary to allow the paramedics to perform their medical assessment and treatment of Mr. Timpa, while also preventing him from entering the roadway and oncoming traffic.
>
> At no time did Mr. Timpa say that he could not breathe or did Sgt. Mansell perceive that Mr. Timpa could not breath, that he was struggling to breathe, or that he was in medical distress. At the time, Defendant Officers could have believed that it was lawful to restrain Anthony Timpa by applying necessary pressure on Mr. Timpa's upper back and shoulder area to keep Mr. Timpa from entering active traffic lanes of Mockingbird Lane, and to allow the paramedics to

>perform their medical assessment and treatment of Mr. Timpa.

>Sgt. Mansell's expert opinions and the factual bases for them are further set forth in his deposition testimony; the video footage from the body cameras worn by Defendant Officers Dillard, Vasquez and Rivera; and Sgt. Mansell's August 15, 2016 Affidavit in Any Fact (attached hereto as Exhibit C).

Sgt. Mansell will testify that his actions were lawful and justified by the facts known to him and the applicable law relating to the Fourth Amendment. Sgt. Mansell will further testify that it was objectively reasonable for him, his fellow officers, and anyone else who observed Mr. Timpa's conduct to conclude that Mr. Timpa presented a danger to himself and others. Sgt. Mansell will further testify that the force his fellow officers used to restrain Mr. Timpa was objectively reasonable and lawful in light of the facts and circumstances known to them at the time the force was used.

8. **Officer Domingo Rivera**
   **c/o Assistant City Attorneys Lindsay Gowin, Tatia R. Wilson, and Amy Messer**
   **7DN Dallas City Hall**
   **1500 Marilla Street**
   **Dallas, Texas 75201**
   **Telephone: 214-670-3519**

   Dallas police officer Domingo Rivera will provide testimony concerning his training and experience as a certified peace officer for the State of Texas and as a uniformed Dallas police officer; the standards and requirements under the Fourth Amendment for detention, arrest, and use of force; use of force training taught by the Dallas Police Department; whether the force he and his fellow officers used in this case was consistent with the training provided by the Dallas Police Department; and whether the force that he and his fellow officers used to restrain Anthony Timpa was objectively unreasonable.

   Under Rule 26(a)(2), no written report is required because the witness has neither been retained nor specially employed to provide expert testimony and his duties do not regularly involve giving expert testimony.

   As required by Rule 26(a)(2)(C) of the Federal Rules of Civil Procedure, here is a summary of the facts and opinions to which Officer Rivera is expected to testify:

   >On August 10, 2016, and at all relevant times, Officer Rivera was a Texas Commission on Law Enforcement (TCOLE) certified peace officer, employed by the City of Dallas as a Dallas Police Department officer.

   >At all times relevant to Officer Rivera's encounter with Anthony Timpa on August 10, 2016, Officer Rivera was acting within the course and scope of his duties as a Dallas police officer, and was discharging his discretionary authority as a peace officer.

> On the evening of August 10, 2016, at around 10:30 p.m., Officer Rivera responded to a call regarding a potentially mentally disturbed person at 1720 West Mockingbird Lane. The call comments stated that the person was off his medication. When Officer Rivera arrived, he saw Officers Dillard and Vasquez restraining Mr. Timpa, who was on the ground yelling and thrashing. Mr. Timpa kicked Officer Rivera in the shin and hand before Senior Corporal Dominguez and Officer Rivera managed to put flex cuffs on Mr. Timpa's ankles to prevent him from kicking.
>
> Officer Rivera then located Mr. Timpa's car and searched it for anything that might provide relevant information for Mr. Timpa's medical treatment. Sgt. Mansell called Mr. Timpa's family and obtained information about Mr. Timpa's medical conditions and medications.
>
> At all times while Officer Rivera was in Mr. Timpa's presence, Mr. Timpa continued to yell and scream. At no time did Mr. Timpa say that he could not breath or did Officer Rivera perceive that Mr. Timpa could not breath, that he was struggling to breathe, or that he was in medical distress.
>
> A reasonable officer, possessing the information known to Defendant Officers at the time, could have believed that it was lawful to restrain Anthony Timpa by applying necessary pressure on Mr. Timpa's upper back and shoulder area to keep Mr. Timpa from entering active traffic lanes of Mockingbird Lane, and to allow the paramedics to perform their medical assessment and treatment of Mr. Timpa.
>
> Officer Rivera's expert opinions and the factual bases for them are further set forth in his deposition testimony; the video footage from the body cameras worn by Defendant Officers Dillard, Vasquez and Rivera; and in Officer Rivera's August 15, 2016 Affidavit in Any Fact (attached hereto as Exhibit D).

Officer Rivera will testify that his actions were lawful and justified by the facts known to him and the applicable law relating to the Fourth Amendment. Officer Rivera will further testify that it was objectively reasonable for him, his fellow officers, and anyone else who observed Mr. Timpa's conduct to conclude that Mr. Timpa presented a danger to himself and others. Officer Rivera will further testify that the force he and his fellow officers used to restrain Mr. Timpa was objectively reasonable and lawful in light of the facts and circumstances known to them at the time the force was used.

9.  **Officer Danny Vasquez**
    **c/o Assistant City Attorneys Lindsay Gowin, Tatia R. Wilson, and Amy Messer**
    **7DN Dallas City Hall**
    **1500 Marilla Street**
    **Dallas, Texas 75201**
    **Telephone: 214-670-3519**

Danny Vasquez is a Dallas Police Department officer. He will provide testimony concerning his training and experience as a certified peace officer for the State of Texas and as a Dallas police officer; the standards and requirements under the Fourth Amendment for detention, arrest, and use of force; use of force training taught by the Dallas Police Department; whether his actions and the force he and his fellow officers used in this case were consistent with the training provided by the Dallas Police Department; and whether the force that he and his fellow officers used to restrain Anthony Timpa under the facts and circumstances known to them was objectively unreasonable.

Under Rule 26(a)(2), no written report is required because the witness has neither been retained nor specially employed to provide expert testimony and his duties do not regularly involve giving expert testimony.

As required by Rule 26(a)(2)(C) of the Federal Rules of Civil Procedure, here is a summary of the facts and opinions to which Officer Vasquez is expected to testify:

> On August 10, 2016, and at all relevant times, Officer Vasquez was a Texas Commission on Law Enforcement (TCOLE) certified peace officer, employed by the City of Dallas as a Dallas Police Department officer.
>
> At all times relevant to Officer Vasquez's encounter with Anthony Timpa on August 10, 2016, Officer Vasquez was acting within the course and scope of his duties as a Dallas police officer, and was discharging his discretionary authority as a peace officer.
>
> On the evening of August 10, 2016, at around 10:30 p.m., Officer Vasquez and his partner, Dallas Police Department Officer Dustin Dillard, responded to a call regarding a potentially mentally disturbed person at 1720 West Mockingbird Lane. The call comments stated that the person was schizophrenic and off his medication. Officer Dillard and Officer Vasquez arrived at the scene and observed a handcuffed male, Anthony Timpa, on the ground yelling and screaming. Mr. Timpa was close to the edge of the roadway near a bus stop that was a few feet from Mockingbird Lane and oncoming traffic. Sgt. Kevin Mansell was already there at the location, and two Dallas Fire-Rescue paramedics arrived on the scene around the same time as Officers Dillard and Vasquez.
>
> Officers Vasquez and Dillard walked over to Mr. Timpa and stood within a few feet to give him space and establish a safe perimeter. Mr. Timpa immediately began kicking, trying to roll over and get up. To keep Mr. Timpa from rolling

into the roadway, Officers Dillard and Vasquez restrained Mr. Timpa in a prone position, applying only the amount of pressure necessary to keep Mr. Timpa from rolling over and getting up. At no time did either officer apply his full body weight to Mr. Timpa's back, or press down onto his back using his full body weight.

Mr. Timpa continued to scream, yell, and struggle to get up for several minutes. Senior Corporal Dominguez and Officer Rivera put flex cuffs on Mr. Timpa's ankles to prevent him from kicking. The officers continued to restrain Mr. Timpa because (1) he was concerned for Mr. Timpa's safety and specifically concerned that without restraint, Mr. Timpa would attempt to roll or move into an active traffic lane of nearby Mockingbird Lane, and (2) it was necessary for the paramedics to perform their medical assessment of Mr. Timpa and provide him provide him proper medical treatment. Defendant Officers applied only the amount of pressure necessary to allow the paramedics to perform their medical assessment and treatment of Mr. Timpa, while also preventing him from entering the roadway and oncoming traffic.

At one point, Mr. Timpa finally stopped screaming and appeared to relax. Mr. Timpa also made what appeared to be a snoring sound, at which time one of the paramedics administered an injection in Mr. Timpa's left shoulder. Mr. Timpa appeared to respond to the injection, but he remained calm and still. Officer Dillard attempted to awaken Mr. Timpa, but he was unresponsive. Defendant Officers then assisted the paramedics in placing Mr. Timpa on a gurney and into the ambulance. Once in the ambulance, Officer Vasquez removed the handcuffs and Officer Dillard and Senior Corporal Dominguez assisted in performing CPR chest compressions on Mr. Timpa.

At no time did Mr. Timpa say that he could not breath or did Officer Vasquez perceive that Mr. Timpa could not breathe, that he was struggling to breathe, or that he was in medical distress.

A reasonable officer, possessing the information known to Defendant Officers at the time, could have believed that it was lawful to restrain Anthony Timpa by applying necessary pressure on Mr. Timpa's upper back and shoulder area to keep Mr. Timpa from entering active traffic lanes of Mockingbird Lane, and to allow the paramedics to perform their medical assessment and treatment of Mr. Timpa.

Officer Vasquez's expert opinions and the factual bases for them are further set forth in his deposition testimony; the video footage from the body cameras worn by Defendant Officers Dillard, Vasquez and Rivera; and in Officer Vasquez's August 15, 2016 Affidavit in Any Fact (attached hereto as Exhibit E).

Officer Vasquez will testify that his actions were lawful and justified by the facts known to him and the applicable law relating to the Fourth Amendment. Officer Vasquez will further testify that it was objectively reasonable for him, his fellow officers, and anyone else who observed Mr. Timpa's conduct to conclude that Mr. Timpa presented a danger

to himself and others. Officer Vasquez will further testify that the force he and his fellow officers used to restrain Mr. Timpa was objectively reasonable and lawful in light of the facts and circumstances known to them at the time the force was used.

10. **Dr. Emily Ogden, M.D.**
    **Dallas County Medical Examiner's Office**
    **Southwestern Institute of Forensic Sciences at Dallas**
    **2335 North Stemmons Freeway**
    **Dallas, Texas 75207**
    **Telephone: 214-920-5900**

    Dr. Emily Ogden, M.D. is a clinical pathologist who serves on the staff of the Office of the Dallas County Medical Examiner. Dr. Ogden will provide testimony regarding the autopsy she performed on Anthony Timpa; the scientific methodology she used and its general acceptance in the field; the nature of Mr. Timpa's physical injuries; and her conclusions regarding the causes of Mr. Timpa's death.

    Under Rule 26(a)(2), no written report is required because the witness has neither been retained nor specially employed to provide expert testimony and her duties do not regularly involve giving expert testimony for the City of Dallas.

    As required by Rule 26(a)(2)(C) of the Federal Rules of Civil Procedure, the following is a summary of the facts and opinions to which Dr. Ogden is expected to testify:

      That at all relevant times, Dr. Ogden was a clinical pathologist licensed in the State of Texas, and employed as a medical examiner by the Dallas County Medical Examiner's Office in Dallas, Texas.

      That she found no evidence indicating that Mr. Timpa's death was caused by mechanical asphyxia, or that he was unable to sufficiently breathe while being restrained by the Defendant Officers.

      That it was objectively reasonable for the Defendant Officers and anyone else who observed Mr. Timpa's conduct to conclude that Mr. Timpa presented a danger to himself and others.

      That she found no evidence indicating that the Defendant Officers used significant or substantial weight to restrain Mr. Timpa.

      That a diagnosis of excited delirium is typically determined after death.

      That a reasonable police officer would not have known that Mr. Timpa was in a state of excited delirium based on his behavior at the scene.

      Dr. Ogden's expert opinions and the factual bases for them are further set forth in the materials contained in the Office of the Medical Examiner Case File; the video footage from the body cameras worn by Defendant Officers Dillard,

Vasquez and Rivera; video footage from security cameras outside the New Fine Arts Theater; and the expert report of Dr. Kim Collins.

## Retained Experts

11.  **Dr. Steven B. Bird, M.D.**
     **Department of Emergency Medicine**
     **University of Massachusetts Medical School**
     **55 Lake Avenue North, LA-167**
     **Worcester, MA 01655**
     **Telephone: 508-421-1422**

     Dr. Steven Bird is a retained expert witness who will provide testimony concerning his training and experience as a physician who is board certified in emergency medicine and medical toxicology. Dr. Bird will provide expert opinion testimony on current knowledge and research regarding excited delirium, cocaine toxicity, symptoms associated with schizophrenia, the cause(s) of Mr. Timpa's death, the findings and conclusions of Dr. Emily Ogden, and the findings and conclusions of Dr. Kim Collins. Dr. Bird's written report and other materials required by Rule 26(a)(2) will be provided to the Plaintiffs and the Intervenor separately from this filing.

13.  **Dr. Mark W. Kroll, Ph.D.**
     **University of Minnesota Department of Biomedical Engineering**
     **312 Church Street SE, 7-105 Nils Hasselmo Hall**
     **Minneapolis, Minnesota 55323**
     Kroll051@umn.edu

     Dr. Mark Kroll is a retained expert witness who will provide testimony concerning his training and experience as a biomedical engineer. Dr. Kroll will provide expert opinion testimony on current knowledge and research regarding positional and mechanical asphyxia, the effects of restraint in a prone position, the cause of Mr. Timpa's death, the findings and conclusions of Dr. Emily Ogden, and the findings and conclusions of Dr. Kim Collins. Dr. Kroll's written report and other materials required by Rule 26(a)(2) will be provided to the Plaintiffs and the Intervenor separately from this filing.

14.  **Craig R. Miller**
     **Lt4653@yahoo.com**
     **www.chiefcraigmiller.com**
     **Telephone:  517.548.2275**
     **Telecopier:  517.947.6018**

     Craig Miller is a retained expert witness who will provide testimony concerning his training and experience as a peace officer. He will opine on the following issues: the standards and requirements under the Fourth Amendment for detention, arrest, and use of force; whether it was reasonable for the Defendant Officers to conclude that Mr. Timpa was a danger to himself and others; whether it was reasonable for the Defendant Officers to believe that restraint of Mr. Timpa was necessary for him to be medically assessed and

treated by the paramedics; whether the force used by the Defendant Officers to restrain Mr. Timpa was reasonable under the facts and circumstances known to them; whether the Defendant Officers' use of force to restrain Mr. Timpa constituted deadly force; whether other officers faced with the same or similar circumstances would have acted in the same or similar manner as did the Defendant Officers in their restraint of Mr. Timpa; and whether other officers faced with the same or similar circumstances could have believed that the actions of the Defendant Officers were lawful. Mr. Miller's written report and other materials required by Rule 26(a)(2) will be provided to the Plaintiffs and the Intervenor separately from this filing.

15. **Helen Reynolds, Ph.D.**
    **Ruhter & Reynolds**
    **3625 Hall Street, Suite 750**
    **Dallas, Texas 75219**
    **Telephone: 214- 219-8100**

    Dr. Helen Reynolds is a retained expert witness who is an economic consultant. She will offer expert opinion testimony concerning the conclusions presented in the report authored by Plaintiffs' economic damages expert; all categories and amounts of economic damages alleged by the Plaintiffs, including actual damages, medical damages, loss of wages, economic damages based on pain and suffering and mental anguish, and economic damages based on an alleged loss of quality of life; and the value and computation of damages based on household services. Ms. Reynolds's preliminary report and list of materials reviewed is attached as Exhibit I. However, her final analysis requires consideration of additional information and materials that under Plaintiffs' and the Intervenor's control, but which are not discoverable in the qualified immunity phase of discovery. Therefore, Ms. Reynolds' final report and other materials required by Rule 26(a)(2) will be provided to the Plaintiffs and the Intervenor at a later date.

16. **Amy I. Messer**
    **Lindsay Wilson Gowin**
    **Tatia R. Wilson**
    **Senior Assistant City Attorneys**
    **7DN Dallas City Hall**
    **1500 Marilla Street**
    **Dallas, Texas 75201**
    **214-671-9553**

    Amy I. Messer, Lindsay Wilson Gowin, and Tatia R. Wilson are Assistant City Attorneys for the City of Dallas and counsel for the Defendant Officers. Ms. Messer, Ms. Gowin, and Ms. Wilson may provide testimony, as necessary, regarding work they performed as counsel for the Defendant Officers and the reasonableness of attorney fees to be requested in this case. Under Rule 26(a)(2), no written report is required because the witnesses have neither been retained nor specially employed to provide expert testimony and their duties do not regularly involve giving expert testimony.

Respectfully submitted,

CITY ATTORNEY OF THE CITY OF DALLAS

Christopher Caso
Interim City Attorney

*s/ Lindsay Wilson Gowin*
Senior Assistant City Attorney
Texas State Bar No. 24111401
lindsay.gowin@dallascityhall.com

Tatia R. Wilson
Senior Assistant City Attorney
Texas State Bar No. 00795793
tatia.wilson@dallascityhall.com

Amy I. Messer
Senior Assistant City Attorney
Texas State Bar No. 007
amy.messer@dallascityhall.com

7DN Dallas City Hall
1500 Marilla Street
Dallas, Texas  75201
Telephone:   214-670-3519
Facsimile:    214-670-0622

*Attorneys for the Defendants Dustin Dillard, Raymond Dominguez, Kevin Mansell, Domingo Rivera, and Danny Vasquez*

**CERTIFICATE OF SERVICE**

      I hereby certify that on November 1, 2019, I electronically filed the foregoing document with the clerk of court for the U.S. District Court, Northern District of Texas, using the CM/ECF system which will send notification to case participants registered for electronic notice, including the attorneys of record listed below. I further certify that to the extent applicable I have served all case participants not registered for electronic notice by another manner authorized by Federal Rule of Civil Procedure 5(b)(2):

| | |
|---|---|
| Geoff J. Henley | Susan Hutchison |
| Lane R. Addison | James Robert Hudson, Jr. |
| Henley & Henley, P.C. | Hutchison & Stoy, PLLC |
| 2520 Fairmount, Suite 200 | 505 Pecan Street, Suite 101 |
| Dallas, Texas 75201 | Fort Worth, Texas 76102 |

                                              *s/ Lindsay Wilson Gowin*
                                              Senior Assistant City Attorney