## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| VICKI TIMPA, et al., | § | |
| | § | |
| Plaintiffs, | § | Civil Action No. 3:16-CV-03089-N |
| | § | |
| vs. | § | |
| | § | |
| DUSTIN DILLARD, et al., | § | |
| | § | |
| Defendants, | § | |
| | § | |
| v. | § | |
| | § | |
| JOE TIMPA | § | |
| | § | |
| Intervenor. | § | |

## DEFENDANTS' ANSWER TO PLAINTIFFS' FOURTH AMENDED COMPLAINT

Defendants Dustin Dillard, Danny Vasquez, Kevin Mansell, and Raymond Dominguez[1] submit the following answer, affirmative defenses and jury demand in response to Plaintiffs' Fourth Amended Complaint (Dkt. No. 202).[2]  Any allegation to which a response is not specifically directed is denied.

## PARTIES AND SERVICE

1.      Plaintiff Vicki Timpa is a citizen of the United States, the State of Texas, and a resident of Dallas County, Texas.

**ANSWER:**    Admitted.

---

[1] All claims against former defendant Domingo Rivera have been adjudicated in his favor and dismissed, and therefore he is no longer a party to this litigation and is not required to respond to Plaintiffs' Fourth Amended Complaint.

[2] For ease of reference, Defendants restate verbatim the allegations in each numbered paragraph of the Fourth Amended Complaint (except where noted with "[*sic*]") in the main body of their answer. Following each numbered paragraph of allegations, Defendants set forth their admissions or denials in response to those allegations.

2.      Plaintiffs Cheryll Timpa and K.T. are citizens of the United States, the State of Texas, and residents of Collin County, Texas.

**ANSWER:**   Admitted.

3.      Dustin Dillard is a Dallas Police Officer. The Defendant has answered, and appeared in this litigation.

**ANSWER:**   Admitted.

4.      Danny Vasquez is a Dallas Police Officer. The Defendant has answered, and appeared in this litigation.

**ANSWER:**   Admitted.

5.      Domingo Rivera is a Dallas Police Officer. The Defendant has answered, and appeared in this litigation.

**ANSWER:**   All claims against Domingo Rivera have been dismissed or adjudicated in his favor. He is no longer a party to this litigation, and thus no answer is required.

6.      Raymond Dominguez is a Dallas Police Officer. The Defendant has answered, and appeared in this litigation.

**ANSWER:**   Admitted.

7.      Kevin Mansell is a Dallas Police Officer. The Defendant has answered, and appeared in this litigation.

**ANSWER:**   Denied that Defendant Mansell is a Dallas Police Officer. The remaining allegations are admitted.

8.      Glenn Johnson, owner of Crime Investigative Unit, is a security guard that was allegedly involved in the initial apprehension of Anthony Timpa. Defendant has been served with suit in this litigation, but has not answered.

**ANSWER:**   Admitted.

9.     Crime Investigative Unit, LLC ("CIU"), a Texas limited liability company. Defendant has its principal place of business at 1555 W. Mockingbird Lane, Dallas, Texas 75235. Defendant has been served with suit in this litigation, but has not answered.

**ANSWER:**   Admitted.

## JURISDICTION

10.     The action arises under the Fourth and Fourteenth Amendments to the United States Constitution, and Title 42 U.S.C. §§ 1983 and 1988.

**ANSWER:**   Admitted.

11.     This Court has jurisdiction over these claims pursuant to Title 28 U.S.C. §§ 1331 and 1343.

**ANSWER:**   Admitted.

12.     This Court also has supplemental jurisdiction of the State law claims alleged in this petition pursuant to Title 28 U.S.C. § 1367.

**ANSWER:**   Admitted.

## VENUE

13.     Venue is proper pursuant to Title 28 U.S.C. §1391(b)(1) in that the Defendants resides in Dallas, and the cause of action arises in the Northern District of Texas, Dallas Division.

**ANSWER:**   Admitted.

## CONDITIONS PRECEDENT

14.     All conditions precedent have been performed or have occurred.

**ANSWER:**   Denied.

## FACTS

15.     On August 10, 2016, Anthony "Tony" Timpa was at New Fine Arts located at 1720 W. Mockingbird Lane. Dallas, TX 75235.

**ANSWER:**   Admitted.

16.     While at that location, he contacted 9-1-1 telling the dispatcher that he feared for his safety. He further told the dispatcher that he suffered from anxiety, schizophrenia, had been off of his medication, and was unarmed. The call gets disrupted for some reason, and the dispatcher calls him back. Throughout both calls, Timpa states he is anxious, and afraid. At times, his statements are incoherent, and it is more than apparent that he is disoriented.

**ANSWER:**   Admitted.

17.     While outside of the store, Tony suddenly and inexplicably to onlookers runs into the parking lot, as depicted on a surveillance camera.

**ANSWER:**   Admitted.

18.     Upon leaving the store, Tony was pursued by Sammie Washington, who was working in the course and scope of his employment for Terron Security Services, Inc., a Security Company employed by, or contracted by, New Fine Arts.

**ANSWER:**   Admitted.

19.     Timpa crosses near the 1700 block of Mockingbird Lane multiple time in a disoriented panic. Concerned for his own safety, he flags down a security guard.

**ANSWER:**   Admitted.

20.     Tony's behavior remains erratic, as other 9-1-1 callers indicate.

**ANSWER:**   Admitted.

21.     Seeing Tony, the two security guards handcuff him on the ground.

**ANSWER:**   Admitted.

22.     Officers from the Dallas Police Department begin arriving on the scene. First on the scene is Sgt. Kevin Mansell who arrives near 10:30:36 PM. Some seven minutes minutes [*sic*] later at 10:37:46 PM, Officers Dustin Dillard, and Danny Vasquez arrive. Next come Officers Domingo Rivera and Raymond Dominguez, three minutes later at 10:40:13 and 10:40:41, respectively.

**ANSWER:**     Admitted.

23.      All of the DPD patrolmen were in uniform, and acting under color of law.

**ANSWER:**     Admitted.

24.     Defendants Dillard, Vasquez, and Rivera wore body cameras that recorded the events before them.

**ANSWER:**     Admitted.

25.     Officers Dillard and Vasquez approach Timpa, who is handcuffed, and laying on the ground.

**ANSWER:**     Admitted.

26.     Their body cameras record Timpa telling the officers that, "You're going to kill me." (Vasquez 0:50-0:60).

**ANSWER:**     Admitted.

27.     Dillard tells them that he is not going to do so, but then he and other officers proceed to roll Timpa onto his chest face down in the grass. Once face down, Vasquez puts his knee on Timpa's left shoulder, and pins it to the ground for approximately 160 seconds. (Dillard 0:50-3:30).

**ANSWER:**     Admitted.

28.     Dillard puts his knee into the back of Anthony Timpa, and pins him with his bodyweight. Dillard likewise puts hands on Timpa's shoulders, and presses them into the ground. As Vasquez and his own bodycam depicts, Dillard maintains this position for approximately 14

minutes and 7 seconds. (Vasquez 1:30-15:37). Periodically, Dillard applied additional force into Timpa's back. (Vasquez 2:03, 4:28, 8:40).

**ANSWER:**   Denied that Defendant Dillard put his knee "into the back" of Anthony Timpa. Admitted that Defendant Dillard used his body weight to keep Timpa stationary so the paramedics could assess his vital signs. The remaining allegations are denied as stated.

29.   While Dillard and Vasquez pin down Timpa's torso, Defendant Johnson puts his bodyweight on Timpa's thighs, and pulls and holds Timpa's feet and ankles forward at an angle. (Vasquez 1:31-3:47).

**ANSWER:**   Denied as stated.

30.   Vasquez too would continuously push down on Timpa's back with one of his hands. (Vasquez 9:29-12:15).

**ANSWER:**   Denied as stated.

31.   At or near this time, Defendant Rivera restrains Timpa's foot or leg and aids the others in zip-tying Tony.

**ANSWER:**   Admitted.

32.   In sum, Defendants Vasquez, Johnson, and Rivera help Dillard smother Timpa for more than 14 minutes.

**ANSWER:**   Denied.

33.   The body cameras vividly depict the horror that unfolds during these minutes.

**ANSWER:**   Denied.

34.   Anthony Timpa repeatedly tells the officers that they are going to "kill me," and "don't hurt me." (*e.g.* Vasquez 2:30-2:35). Likewise, he makes repeated cries for help. (Vasquez 3:10, 3:40-3:45).

**ANSWER:**   Admitted.

35.     Early on, Dillard asks Timpa, "Tony, what did you take today?" (Dillard 1:03- 1:20; Vasquez 1:42-1:55).

**ANSWER:**   Admitted.

36.     With the officers on top of him, and with his face in the grass, Timpa replies, "Coke." (Dillard 1:07; Vasquez 1:45). Timpa follows that up with "I know it's illegal, but I only took a little bit." (Dillard 1:15-1:20; Vasquez 1:50-2:00).

**ANSWER:**   Admitted that Timpa replied "coke." The remaining allegations are denied as stated.

37.     The trauma of Tony's disorientation becomes more apparent on the tapes as Timpa mumbles, and gasps on the ground.

**ANSWER:**   Denied as stated.

38.     In multiple places, the audio, and video makes plain that the Defendants recklessly, and knowingly were killing Tony Timpa.

**ANSWER:**   Denied.

39.     Dillard does more than crush Tony's lungs with his body weight. He drives his neck, head, and face into the grass and dirt.

**ANSWER:**   Denied.

40.     This fact is evident from the videotapes, and from still photographs derived from those videos.

**ANSWER:**   Denied.

41.     No less important, the officers knew these facts. The audio makes it plain. One officer expressed doubt that Tony "could be breathing," saying "His nose is buried." (Vasquez 13:19-13:23).

**ANSWER:**   Admitted that an officer said "his nose is buried." The remaining allegations are denied.

42.     The envelope of dirt, and grass that surrounded, and covered his mouth, and nose thus further obstructed Tony's breathing.

**ANSWER:**   Denied.

43.     Furthermore, the officers needlessly prolong Timpa's restraint on the ground in several ways.

**ANSWER:**   Denied.

44.     One way, they did so was by switching the security guard's handcuffs with one of the officer's. This was done for the stated reason of "not having to worry" about making the change once Timpa was standing. To facilitate this change, though, the officers spent yet more time on top of Timpa.

**ANSWER:**   Admitted.

45.     Tony continues to gasp, gag, and groan. (Vasquez 9:15-9:35). Meanwhile, the officers surrounding him laugh, and jeer.

**ANSWER:**   Admitted that Tony gasped and groaned at various points. The remaining allegations are denied.

46.     As time progresses, the officers, though, increase their ridicule of Timpa, and some of his incoherent remarks.

**ANSWER:**   Denied as stated.

47.     After approximately 11 and half [*sic*] minutes with Dillard's knee square in his back, Timpa goes completely unresponsive. (Vasquez 11:50). He is no longer gasping, or mumbling. He is completely silent.

**ANSWER:**   Denied that Defendant Dillard's knee was "square in his back" for approximately 11.5 minutes. The remaining allegations are admitted.

48.     It is not until more than a minute later, Dillard inquires if Tony is conscious. He does not dislodge his knee, or move off of the unresponsive Timpa. Even after realizing that Tony is unresponsive, Dillard continues to keep his bodyweight on top of Tony for an additional two and a half minutes. (Vasquez 13:02-15:37).

**ANSWER:**   Denied.

49.     The officers begin suggesting that Tony has fallen asleep, asserting even that he might have been snoring. (Vasquez 13:33-13:50).  During this time, they then begin making jokes about waking Tony up for school and having different food, including "rooty-tooty fruity waffles," for breakfast.  One mimics Tony's incoherent speech, while Tony lays silently on the grass.

**ANSWER:**   Denied that an officer mimicked Timpa's speech. The remaining allegations are admitted.

50.     The officers then discuss with EMS workers what to do with Tony.  It is decided then that they will place him on a gurney, and arrange transportation.

**ANSWER:**   Denied that the officers and paramedics discussed transportation at this ppoint. The remaining allegations are admitted.

51.     As they heave Tony onto the gurney, the officers finally acknowledge Tony's true condition, as he has now been unresponsive for more than three minutes and 30 seconds.

**ANSWER:**   Admitted that the officers lifted Timpa onto the gurney. The remaining allegations are denied.

52.     "I hope I didn't kill him," Dillard begins. (Dillard 15:55).

**ANSWER:**   Admitted.

53.     Some of the officers begin to laugh. (Dillard 16:00-16:05).

**ANSWER:**   Admitted that some of the officers laughed; denied that the officers were laughing at Timpa or the situation.

54.     One says off camera in a mock effort to distance himself from Tony's death, "What's this 'we' you are talking about?" (Dillard 16:00-16:05).

**ANSWER:**   Denied.

55.     The officers load Tony into the ambulance. Shortly thereafter, one of the EMS workers tells Sgt. Kevin Mansell, "He's dead." (Dillard 17:00).

**ANSWER:**   Admitted.

56.     Mansell, who had been away from the group for the previous several minutes while speaking with Tony's stepmother, Kim Timpa, on the phone, abruptly ended the phone call. He later apprised Officer Rivera that he ended the call, knowing that Tony was, in fact, dead.

**ANSWER:**   Admitted.

57.     He then walked over to Vasquez, and angrily says, "What the fuck?" (Vasquez 17:55).

**ANSWER:**   Admitted.

58.     Hearing the visibly agitated sergeant, Vasquez shuts off his body camera.

**ANSWER:**   Admitted.

59.     While Mansell and Vasquez are discussing what they did. Defendants Dillard and Dominguez are inside the ambulance preparing to administer cardiopulmonary resuscitation on Tony. CPR begins at 17:15 on Dillard's camera, more than five minutes and twenty seconds after Tony became silent. For the next several minutes, the officers take turns administering pumping Tony's chest with their hands. Officers emerge late emerge [*sic*] from the ambulance, and someone says announces his death to a small group outside.

**ANSWER:**   The allegation that "Mansell and Vasquez [were] discussing what they did" is denied as stated. Denied that CPR was necessary or advisable throughout the time Timpa was silent. The remaining allegations are admitted.

60.     Because Mr. Timpa died in police custody, the Dallas Police Department was required to complete a Custodial Death Report, and submit it to the Texas Attorney General.

**ANSWER:**     Admitted.

61.     Sergeant E. Merritt, while in the course and scope of his/her duties for and under color of law, completed the Custodial Death Report.

**ANSWER:**     Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.

62.     The Dallas Police Department's Custodial Death Report ("CDR") states that Mr. Timpa appeared intoxicated.

**ANSWER:**     Admitted that the CDR states that Timpa appeared intoxicated. Defendants affirmatively state that the CDR is not based on first-hand knowledge of the incident, is contradicted by objective evidence including video footage from the officers' body-worn cameras, and does not include all information ascertained during the course of investigations conducted by multiple agencies.

63.     The CDR states that Mr. Timpa never threatened the officers involved.

**ANSWER:**     Admitted that the CDR states that Timpa did not threaten the involved officers at any time during the incident. Defendants affirmatively state that the CDR is not based on first-hand knowledge of the incident, is contradicted by objective evidence including video footage from the officers' body-worn cameras, and does not include all information ascertained during the course of investigations conducted by multiple agencies.

64.     The CDR states that Mr. Timpa never resisted being handcuffed or arrested by the officers involved.

**ANSWER:**     Admitted that the CDR states that Timpa did not resist being handcuffed or arrest at any time during the incident. Defendants affirmatively state that the CDR is not based on first-hand

knowledge of the incident, is contradicted by objective evidence including video footage from the officers' body-worn cameras, and does not include all information ascertained during the course of investigations conducted by multiple agencies.

65.     The CDR states that Mr. Timpa never attempted to escape or flee from the officers involved.

**ANSWER:**   Admitted that the CDR states that Timpa did not try to escape or flee from custody at any time during the incident. Defendants affirmatively state that the CDR is not based on first-hand knowledge of the incident, is contradicted by objective evidence including video footage from the officers' body-worn cameras, and does not include all information ascertained during the course of investigations conducted by multiple agencies.

66.     The CDR states that Mr. Timpa never attempted to hit or fight with the officers involved.

**ANSWER:**   Admitted that the CDR states that Timpa did not hit or fight with the involved officers at any time during the incident. Defendants affirmatively state that the CDR is not based on first-hand knowledge of the incident, is contradicted by objective evidence including video footage from the officers' body-worn cameras, and does not include all information ascertained during the course of investigations conducted by multiple agencies.

67.     The CDR states that Mr. Timpa never used a weapon to threaten or assault the officers involved.

**ANSWER:**   Admitted that the CDR states that Timpa did not use a weapon to threaten or assault the involved officers at any time during the incident. Defendants affirmatively state that the CDR is not based on first-hand knowledge of the incident, is contradicted by objective evidence including video footage from the officers' body-worn cameras, and does not include all information ascertained during the course of investigations conducted by multiple agencies.

68.    The CDR states that Mr. Timpa was securely handcuffed when the Dallas Police officers arrived.

**ANSWER:**    Denied. Defendants affirmatively state that the CDR is not based on first-hand knowledge of the incident, nor does it include all information ascertained during the course of investigations conducted by multiple agencies.

69.    Dallas County Medical Examiner Dr. Emily Ogden shows that Mr. Timpa's death was the result of excessive physical restraint.

**ANSWER:**    Denied.

70.    Dr. Ogden concluded the manner of Tony's death was a "Homicide."

**ANSWER:**    Admitted.

71.    Dr. Ogden concluded that suffered [*sic*] "SUDDEN CARDIAC DEATH," as a result of the "TOXIC EFFECTS OF COCAINE AND PHYSIOLOGIC STRESS AND PHYSICAL RESTRAINT."

**ANSWER:**    Admitted that Dr. Ogden concluded that Timpa's cause of death was "sudden cardiac death." The remaining allegations are denied as stated.

72.    Dr. Emily Ogden likewise told Vicki Timpa that an officer restrained by placing a knee on Mr. Timpa's back for some thirteen minutes while Mr. Timpa lay face-down restrained in handcuffs.

**ANSWER:**    Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.

73.    At all times relevant to this incident, Defendants knew that Tony was in severe mental distress.

**ANSWER:**    Admitted.

74.    At all times relevant to this incident, Defendants knew that Tony was intoxicated, and under the influence of some narcotic, specifically cocaine.

**ANSWER:**    Denied.

75.    At all times relevant to this incident, Tony Timpa was unarmed.

**ANSWER:**    Admitted.

76.    At all times relevant to this incident, Defendants knew Tony Timpa was unarmed.

**ANSWER:**    Denied.

77.    At all times relevant to this incident, Defendants had no reasonable belief that Tony Timpa was armed.

**ANSWER:**    Admitted.

78.    At no time relevant to this incident did Tony threaten any officer with a weapon.

**ANSWER:**    Admitted.

79.    At no time relevant to this incident did Tony use a weapon against any Defendant.

**ANSWER:**    Admitted.

80.    DPD officers did not remove or recover any weapons from Mr. Timpa.

**ANSWER:**    Admitted.

81.    At all times relevant to this incident, Tony was in handcuffs.

**ANSWER:**    Denied.

82.    At all times relevant to this incident, Tony did not resist arrest.

**ANSWER:**    Denied.

83.    At all times relevant to this incident, Tony did not evade arrest or detention.

**ANSWER:**    Denied.

84.    Mr. Timpa had not physically attacked the police officers at the scene.

**ANSWER:**    Denied.

85.     Defendants employed deadly force against Mr. Timpa.

**ANSWER:**   Denied.

86.     The DPD officers acted under color of law when they used force against Mr. Timpa.

**ANSWER:**   Admitted.

87.     Defendants knew that Mr. Timpa was unarmed and not resisting.

**ANSWER:**   Denied.

88.     Defendants' actions of restraining Mr. Timpa were done intentionally, knowingly, and with reckless disregard for Mr. Timpa's constitutional rights.

**ANSWER:**   Denied as stated.

89.     Since at least 1994, the Fifth Circuit has held that certain forms of restraint, like the one used in this case, fall under the deadly force prohibition of the Fourth Amendment under certain circumstances. *See Guttierez v. City of San* Antonio, 139 F.3d 441, 447-49 (5th Cir. 1998). Sister circuits have likewise concluded the same. *See McCue v. City of Bangor, Maine*, 838 F.3d 55, 64 (1st Cir. 2016); *Champion v. Outlook Nashville, Inc.* 380 F.3d 893, 903 (6th Cir. 2004) (holding placing pressure on an arrestee's back while the arrestee is in a face down position and subdued is excessive force and clearly established); *Adbullahi v. City of Madison*, 423 F.3d 763, 765 (7th Cir. 2005); and *Drummond ex rel. Drummond v. City of Anaheim*, 343 F.3d 1052, 1057 (9th Cir. 2003); and *Weigel v. Broad*, 544 F.3d 1143, 1154 (10th Cir. 2008).

**ANSWER:** This paragraph exclusively contains legal (rather than factual) assertions to which no answer is required.

90.     Fourth and Fourteenth Amendment jurisprudence has clearly established that police officers cannot use excessive force upon an unarmed suspect who is not showing signs of active restraint.

**ANSWER:** This paragraph exclusively contains legal (rather than factual) assertions to which no answer is required.

91.    Furthermore, for more than two decades it has been established within the law enforcement community through studies, policy papers, seminars, training materials, and continuing education materials provided by organizations like the Federal Bureau of Investigation, the International Police Chiefs Association, the U.S. military, and countless state and local enforcement agencies that the acts Defendants committed are lethal, and thus prohibited because they restrict breathing, and other cardiopulmonary functions. Among other things, such actions stress to the respiratory muscles and inhibits movement of the diaphragm and rib cage. Those acts include:

    a. prolonged placement of any handcuffed subject face down on the ground;

    b. placing a knee, leg or other part in a subject's back while the person is face down on the ground;

    c. putting weight on a subjects back while handcuffed;

    d. obstructing his breathing passages;

    e. elevating a person's legs while a person is handcuffed;

    f. employing leg and hand restraints together; and

    g. failing to actively monitor breathing, and obstructions;

These same authorities further stress that these acts are additionally dangerous when employed on subjects in mental crisis, intoxicated subjects, particularly on cocaine, and other stimulants, and certain overweight subjects. The Defendants in this particular instance knew and had ample reason to know that Tony was in mental distress, intoxicated, and had used one more narcotics, specifically cocaine. Defendants thus had a high degree of awareness of specific lethal hazards, but disregarded them.

**ANSWER:** Denied.

## CAUSES OF ACTION

## VIOLATION OF CONSTITUTIONAL RIGHTS

92. The factual allegations contained in the preceding paragraphs are hereby incorporated and re-alleged for all purposes and incorporated herein with the same force and effect as if set forth verbatim.

**ANSWER:** Defendants incorporate by reference their responses to the preceding allegations as their response to this paragraph as if fully set forth herein.

### DEFENDANT DILLARD

93. Defendant Dillard willfully, maliciously, intentionally, knowingly, and plainly incompetently used excessive force to restrain Anthony Timpa despite having no legitimate reason for doing so.

**ANSWER:** Denied.

94. The force used by Defendant Dillard was recklessly excessive and killed Mr. Timpa. This force included all of the facts alleged, including his pinning of Timpa's back with his knee for more than fourteen minutes to the ground.

**ANSWER:** Denied.

95. Defendant Dillard violated Mr. Timpa's rights clearly established under the Fourth Amendment of the United States Constitution to:

   a. freedom from unreasonable seizure of their person; and

   b. freedom from the use of unreasonable, unnecessary, and excessive force.

   c. freedom from lethal force when no criminal offense has occurred;

   d. freedom from lethal force when no officer or third person is in reasonable fear of death or serious bodily injury;

   e. freedom from lethal force when no violent crime has been committed;

      f.   freedom from lethal force when no felony has been committed;

      g.   freedom from lethal force when the subject is not fleeing; and

      h.   freedom from lethal force when arrest is not resisted.

**ANSWER:**  Denied.

96.    Defendant Dillard violated Mr. Timpa's rights clearly established under the United States Constitution the right to medical care for injuries received while in custody. As alleged, Defendant and his co-defendants let several vital minutes pass before taking responsive action. When seconds counted, they laughed, they joked, and Tony died.

**ANSWER:**  Denied. Plaintiffs' denial of medical care claim has been adjudicated in Defendants' favor and dismissed.

97.    In addition, the continued and unnecessary restraint of Tony prevented him from receiving the immediate attention he required including but not limited to:

      a.   oxygen or compressed air;

      b.   a sedative;

      c.   transportation to hospital or in-patient mental health facility

**ANSWER:**  Denied.

### DEFENDANT VASQUEZ

98.    Defendant Vasquez willfully, maliciously, intentionally, knowingly, and plainly incompetently used excessive force to restrain Anthony Timpa despite having no legitimate reason for doing so.

**ANSWER:**  This claim has been adjudicated in Defendant Vasquez's favor and dismissed, and thus no response is required.

99.    The force used by Defendant Dillard was recklessly excessive and killed Mr. Timpa. This force included all of the facts alleged, including his pinning of Timpa with his hands, knees, and body weight.

**ANSWER:**  Denied.

100.    Defendant Dillard violated Mr. Timpa's rights clearly established under the United States Constitution to:

   a.   freedom from unreasonable seizure of their person; and

   b.   freedom from the use of unreasonable, unnecessary, and excessive force.

   c.   freedom from lethal force when no criminal offense has occurred;

   d.   freedom from lethal force when no officer or third person is in reasonable fear of death or serious bodily injury;

   e.   freedom from lethal force when no violent crime has been committed;

   f.   freedom from lethal force when no felony has been committed;

   g.   freedom from lethal force when the subject is not fleeing; and

   h.   freedom from lethal force when arrest is not resisted.

**ANSWER:**  Denied.

101.    Defendant Vasquez violated Mr. Timpa's rights clearly established under the United States Constitution the right to medical care for injuries received while in custody. As alleged, Defendant and his co-defendants let several vital minutes pass before taking responsive action. When seconds counted, they laughed, they joked, and Tony died.

**ANSWER:**  Plaintiffs' denial of medical care claim has been adjudicated in Defendants' favor and dismissed, and thus no response is required.

102.    In addition, the continued and unnecessary restraint of Tony prevented him from receiving the immediate attention he required including but not limited to:

    a.   oxygen or compressed air;

    b.   a sedative;

    c.   transportation to hospital or in-patient mental health facility.

**ANSWER:**   Plaintiffs' denial of medical care claim has been adjudicated in Defendants' favor and dismissed, and thus no response is required.

## DEFENDANT DOMINGUEZ

103.    Defendant Dominguez willfully, maliciously, intentionally, knowingly, and plainly incompetently used excessive force to restrain Anthony Timpa despite having no legitimate reason for doing so.

**ANSWER:**   Denied.

104.    The force used by Defendant Dominguez was recklessly excessive and killed Mr. Timpa. This force included all of the facts alleged, including aiding in the restraint of Timpa.

**ANSWER:**   Denied.

105.    Defendant Dominguez violated Mr. Timpa's rights clearly established under the United States Constitution to:

    a.   freedom from unreasonable seizure of their person; and

    b.   freedom from the use of unreasonable, unnecessary, and excessive force.

    c.   freedom from lethal force when no criminal offense has occurred;

    d.   freedom from lethal force when no officer or third person is in reasonable fear of death or serious bodily injury;

    e.   freedom from lethal force when no violent crime has been committed;

    f.   freedom from lethal force when no felony has been committed;

    g.   freedom from lethal force when the subject is not fleeing; and

    h.   freedom from lethal force when arrest is not resisted.

**ANSWER:**   Denied.

106.      Defendant Dominguez violated Mr. Timpa's rights clearly established under the United States Constitution the right to medical care for injuries received while in custody. As alleged, Defendant and his co-defendants let several vital minutes pass before taking responsive action. When seconds counted, they laughed, they joked, while Tony died.

**ANSWER:**   Plaintiffs' denial of medical care claim has been adjudicated in Defendants' favor and dismissed, and thus no response is required.

**DEFENDANT RIVERA**

107.      Defendant Rivera willfully, maliciously, intentionally, knowingly, and plainly incompetently used excessive force to restrain Anthony Timpa despite having no legitimate reason for doing so.

**ANSWER:**   Plaintiffs' excessive force claim against Officer Rivera has been adjudicated in Defendant Rivera's favor and dismissed, and thus no response is required. Officer Rivera is no longer a party to this lawsuit.

108.      The force used by Defendant Rivera was recklessly excessive and killed Mr. Timpa. This force included all of the facts alleged, including aiding in the restraint of Timpa.

**ANSWER:**   Plaintiffs' excessive force claim against Officer Rivera has been adjudicated in Defendant Rivera's favor and dismissed, and thus no response is required. Officer Rivera is no longer a party to this lawsuit.

109.      Defendant Rivera violated Mr. Timpa's rights clearly established under the United States Constitution to:

        i.   freedom from unreasonable seizure of their person; and

        j.   freedom from the use of unreasonable, unnecessary, and excessive force.

        k.   freedom from lethal force when no criminal offense has occurred;

l.   freedom from lethal force when no officer or third person is in reasonable fear of death or serious bodily injury;

m.  freedom from lethal force when no violent crime has been committed;

n.   freedom from lethal force when no felony has been committed;

o.   freedom from lethal force when the subject is not fleeing; and

p.   freedom from lethal force when arrest is not resisted.

**ANSWER:**  Plaintiffs' excessive force claim against Officer Rivera has been adjudicated in Defendant Rivera's favor and dismissed, and thus no response is required. Officer Rivera is no longer a party to this lawsuit.

110.   Defendant Rivera violated Mr. Timpa's rights clearly established under the United States Constitution the right to medical care for injuries received while in custody. As alleged, Defendant and his co-defendants let several vital minutes pass before taking responsive action. When seconds counted, they laughed and joked, while Tony died.

**ANSWER:**  Plaintiffs' denial of medical care claim has been adjudicated in Defendants' favor and dismissed, and thus no response is required. Officer Rivera is no longer a party to this lawsuit.

### DEFENDANT MANSELL

111.   Defendant Mansell was personally involved in Tony's Fourth Amendment violations, and his wrongful action were causally connected to these deprivations.

**ANSWER:**  Denied.

112.   Sgt. Mansell was the first to arrive, and was the highest ranking supervisor on the scene. When his co-defendants arrived, he stood back, and had them take over the seizure of Tony.

**ANSWER:**  Denied that Sgt. Mansell was the first to arrive. All remaining allegations are admitted.

113.    While Officers Dillard, Vasquez, Rivera, and Defendant Johnson employed excessive restraint, Sgt. Mansell alternated between standing around, making flippant comments, and leaving the officers unsupervised as they killed Tony. He failed to do the following:

      a.  instruct or order the officers not to perform any acts that would results in Tony's cardiac arrest;

      b.  instruct or order the officers to flip Tony on his back or side so that he could breathe properly

      c.  instruct or order the officers to pay closer attention to Tony's breathing and consciousness; and

      d.  instruct or order the officers not to risk Tony's life by prolonging any procedure needlessly, or that was comparatively valueless.

**ANSWER:**    Denied as stated. Plaintiffs' supervisory liability claim against Defendant Mansell has been adjudicated in Defendant Mansell's favor and dismissed, and thus no response is required.

114.    His subsequent anger and surprise at the outcome sharply attest that Mansell had failed to monitor his subordinates, or restrain them in any meaningful way.

**ANSWER:**    Denied. Plaintiffs' supervisory liability claim against Defendant Mansell has been adjudicated in Defendant Mansell's favor and dismissed, and thus no response is required.

115.    His willful failures to instruct or direct his subordinates, and his departure from  the immediate vicinity of Tony's seizure was a cause in fact to Tony's death.

**ANSWER:**    Denied. Plaintiffs' supervisory liability claim against Defendant Mansell has been adjudicated in Defendant Mansell's favor and dismissed, and thus no response is required.

### AIDING AND ABETTING AND BYSTANDER LIABILITY

116.    The factual allegations contained in the preceding paragraphs are hereby incorporated and re-alleged for all purposes and incorporated herein with the same force and effect

as if set forth verbatim.

**ANSWER:**   Defendants incorporate by reference their responses to the preceding allegations as their response to this paragraph as if fully set forth herein.

117.   Tony's homicide was a collective act. While Defendant Dillard plainly applied the greatest aggregate force against Tony's cardiovascular, pulmonary, and circulatory systems, his fellow officers, and Defendant Johnson assisted him in pinning Tony facedown to the ground. As a result Defendants Vasquez, Rivera, Dominguez, Mansell, and Johnson are liable for aiding and abetting.

**ANSWER:**   Denied as stated. Plaintiffs' aiding-and-abetting claim against Defendants Vasquez, Mansell, Dominguez and Officer Rivera has been dismissed, and thus no response is required.

118.   Likewise, each Defendant also had an affirmative duty to prevent his fellow officers from employing needless lethal force. None of them made any effort to stop his fellow officers from killing Tony. Defendants Vasquez, Rivera, Dominguez and Mansell did not flip or place Tony onto his back, remove Dillard, or promptly place Tony on a gurney restrained. Their acts and omissions resulted in the denial of timely, life-saving medical treatment—including the provision of oxygen and/or a proper sedative.

**ANSWER:**   The first sentence of this paragraph exclusively contains legal (rather than factual) assertions to which no answer is required. The remaining allegations are denied. Plaintiffs' denial of medical care claim has been adjudicated in Defendants' favor and dismissed. Plaintiffs' bystander liability claim against Officer Rivera has been adjudicated in his favor and dismissed.

### WRONGFUL DEATH

119.   The factual allegations contained in the preceding paragraphs are hereby incorporated and re-alleged for all purposes and against all Defendants with the same force and effect as if set forth verbatim. As the surviving parent of decedent Anthony Timpa, Plaintiff Vicki Timpa has an

action for wrongful death based on the facts stated in Tex. Civ. Prac. & Rem. Code §§ 71.001-71.012. As the only surviving child of the decedent, K.T. likewise has an action for wrongful death. *Id.*

**ANSWER:**    Defendants incorporate by reference their responses to the preceding allegations as their response to this paragraph as if fully set forth herein. Plaintiffs' wrongful death claim against Defendants Dillard, Vasquez, Dominguez, Mansell and Officer Rivera has been dismissed, and thus no further response is required.

## SURVIVAL ACTION

120.    The factual allegations contained in the preceding paragraphs are hereby incorporated and re-alleged for all purposes and against all Defendants with the same force and effect as if set forth verbatim. Had Mr. Timpa survived, he would have been entitled to bring actions for violations of their constitutional rights and for deprivations of state common law actions for Negligence, Assault, Battery, and False Imprisonment. As representative of their estate, Plaintiff has a cause of action for personal injuries suffered by Anthony Timpa, including to their health, dignity, and reputation before their death. Tex. Civ. Prac. & Rem. Code § 71.021.

**ANSWER:**    Defendants incorporate by reference their responses to the preceding allegations as their response to this paragraph as if fully set forth herein. Plaintiffs' state-law claims against Defendants Dillard, Vasquez, Dominguez, Mansell and Officer Rivera have been dismissed, and thus no further response is required.

## FALSE IMPRISONMENT

## DEFENDANT JOHNSON

121.    The factual allegations contained in the preceding paragraphs are hereby incorporated and re-alleged for all purposes and incorporated herein with the same force and effect as if set forth verbatim.

**ANSWER:**   Defendants incorporate by reference their responses to the preceding allegations as their response to this paragraph as if fully set forth herein.

122.    Plaintiffs plead a cause of action against Defendant Johnson for false imprisonment.

**ANSWER:**   The allegations/claims in this paragraph are not directed to Defendants Dillard, Vasquez, Dominguez, or Mansell, and thus no response is required. To the extent a response is required, the allegations are denied.

123.    Johnson unilaterally chose to make a citizen's arrest of Mr. Timpa by restraining him with handcuffs. Johnson was acting within the course and scope of his employment with Crime Investigate Unit, LLC.

**ANSWER:**   The allegations/claims in this paragraph are not directed to Defendants Dillard, Vasquez, Dominguez, or Mansell, and thus no response is required. To the extent a response is required, the allegations are denied.

124.    Mr. Timpa was conscious of this confinement and was harmed by the citizen's arrest in that the excessive restraint literally killed him.

**ANSWER:**   The allegations/claims in this paragraph are not directed to Defendants Dillard, Vasquez, Dominguez, or Mansell, and thus no response is required. To the extent a response is required, the allegations are denied.

**ASSAULT AND BATTERY**

**DEFENDANT JOHNSON**

125.    The factual allegations contained in the preceding paragraphs are hereby incorporated and re-alleged for all purposes and incorporated herein with the same force and effect as if set forth verbatim.

**ANSWER:**   Defendants incorporate by reference their responses to the preceding allegations as their response to this paragraph as if fully set forth herein.

126.    Pursuant to Texas state law, Plaintiffs plead a cause of action against Defendants Johnson and Crime Investigative Unit, LLC for assault and battery.

**ANSWER:**  The allegations/claims in this paragraph are not directed to Defendants Dillard, Vasquez, Dominguez, or Mansell, and thus no response is required. To the extent a response is required, the allegations are denied.

127.    Defendants Johnson and CIU intentionally, knowingly, and recklessly placed decedent Anthony Timpa in fear of imminent bodily injury.

**ANSWER:**  The allegations/claims in this paragraph are not directed to Defendants Dillard, Vasquez, Dominguez, or Mansell, and thus no response is required. To the extent a response is required, the allegations are denied.

128.    Defendants Johnson and CIU intentionally, knowingly, and recklessly caused decedent Anthony Timpa serious bodily injury, in this case death.

**ANSWER:**  The allegations/claims in this paragraph are not directed to Defendants Dillard, Vasquez, Dominguez, or Mansell, and thus no response is required. To the extent a response is required, the allegations are denied.

129.    Defendants Johnson and CIU intentionally, knowingly, and recklessly placed decedent Anthony Timpa in fear of imminent bodily injury.

**ANSWER:**  The allegations/claims in this paragraph are not directed to Defendants Dillard, Vasquez, Dominguez, or Mansell, and thus no response is required. To the extent a response is required, the allegations are denied.

130.    Defendants Johnson and CIU intentionally, knowingly, and recklessly caused decedent Anthony Timpa serious bodily injury and death.

**ANSWER:**  The allegations/claims in this paragraph are not directed to Defendants Dillard, Vasquez, Dominguez, or Mansell, and thus no response is required. To the extent a response is

required, the allegations are denied.

131.    Defendants Johnson and Crime Investigative Unit was acting within the course and scope of his employment with their respective employers.

**ANSWER:**   The allegations/claims in this paragraph are not directed to Defendants Dillard, Vasquez, Dominguez, or Mansell, and thus no response is required. To the extent a response is required, the allegations are denied.

**NEGLIGENCE AND GROSS NEGLIGENCE**

132.    The factual allegations contained in the preceding paragraphs are hereby incorporated and re-alleged for all purposes and incorporated herein with the same force and effect as if set forth verbatim.

**ANSWER:**   Defendants incorporate by reference their responses to the preceding allegations as their response to this paragraph as if fully set forth herein.

133.    Plaintiffs plead a cause of action against the Defendants CIU and Defendant Johnson for negligence and gross negligence.

**ANSWER:**   The allegations/claims in this paragraph are not directed to Defendants Dillard, Vasquez, Dominguez, or Mansell, and thus no response is required. To the extent a response is required, the allegations are denied.

134.    At all times relevant to this lawsuit, Defendant CIU owed a duty to Plaintiff to exercise reasonably prudent and ordinary care in the determining whether Glenn Johnson was fit to guard the storefront.

**ANSWER:**    The allegations/claims in this paragraph are not directed to Defendants Dillard, Vasquez, Dominguez, or Mansell, and thus no response is required. To the extent a response is required, the allegations are denied.

135.    Defendant CIU violated this duty by negligently permitting Defendant Johnson to remain unsupervised and employ inappropriate force indiscriminately. Defendant CIU failed to act in a reasonably prudent manner, as others would have under the same or similar circumstances.

**ANSWER:**  The allegations/claims in this paragraph are not directed to Defendants Dillard, Vasquez, Dominguez, or Mansell, and thus no response is required. To the extent a response is required, the allegations are denied.

136.    Glenn Johnson was acting within the course and scope of his employment with CIU.

**ANSWER:**  The allegations/claims in this paragraph are not directed to Defendants Dillard, Vasquez, Dominguez, or Mansell, and thus no response is required. To the extent a response is required, the allegations are denied.

## RESPONDEAT SUPERIOR

137.    At all times relevant to this incident, Defendant Johnson was in the course, and scope of his employment for Defendant Crime Investigative Unit, LLC. Plaintiffs thus expressly plea the doctrine of *respondeat superior* against Defendant Crime Investigative Unit, LLC for acts committed by Defendant Johnson.

**ANSWER:**  The allegations/claims in this paragraph are not directed to Defendants Dillard, Vasquez, Dominguez, or Mansell, and thus no response is required. To the extent a response is required, the allegations are denied.

## NEGLIGENT HIRING, SUPERVISION, AND/OR TRAINING

138.    The factual allegations contained in the preceding paragraphs are hereby incorporated and re-alleged for all purposes and incorporated herein with the same force and effect as if set forth verbatim.

**ANSWER:**  Defendants incorporate by reference their responses to the preceding allegations as their response to this paragraph as if fully set forth herein.

139.    Plaintiffs plead a cause of action against Defendant CIU for negligent hiring, supervision, and/or training.

**ANSWER:**   The allegations/claims in this paragraph are not directed to Defendants Dillard, Vasquez, Dominguez, or Mansell, and thus no response is required. To the extent a response is required, the allegations are denied.

140.    At all times relevant to this lawsuit, Defendant CIU owed a duty to Plaintiff to exercise reasonably prudent and ordinary care in the determining whether Defendant Johnson was fit to guard the storefront and properly trained.

**ANSWER:**   The allegations/claims in this paragraph are not directed to Defendants Dillard, Vasquez, Dominguez, or Mansell, and thus no response is required. To the extent a response is required, the allegations are denied.

141.    Defendant CIU violated this duty by negligently permitting Defendant Johnson to carry handcuffs unsupervised, employ the handcuffs indiscriminately, and effect detentions off of the premise of his employer. Defendant CIU failed to act in reasonably prudent manner, as others would have under the same or similar circumstances.

**ANSWER:**   The allegations/claims in this paragraph are not directed to Defendants Dillard, Vasquez, Dominguez, or Mansell, and thus no response is required. To the extent a response is required, the allegations are denied.

142.    a Defendant Johnson was acting within the course and scope of his employment with CIU.

**ANSWER:**   The allegations/claims in this paragraph are not directed to Defendants Dillard, Vasquez, Dominguez, or Mansell, and thus no response is required. To the extent a response is required, the allegations are denied.

**GROSSLY NEGLIGENT HIRING, SUPERVISION AND/OR TRAINING**

143.    The factual allegations contained in the preceding paragraphs are hereby incorporate and re-alleged for all purposes and incorporated herein with the same force and effect as if set forth verbatim.

**ANSWER:**   Defendants incorporate by reference their responses to the preceding allegations as their response to this paragraph as if fully set forth herein.

144.    Plaintiffs plead a cause of action against Defendant CIU for grossly negligent hiring, supervision, and/or training.

**ANSWER:**   The allegations/claims in this paragraph are not directed to Defendants Dillard, Vasquez, Dominguez, or Mansell, and thus no response is required. To the extent a response is required, the allegations are denied.

145.    The acts and omissions of Defendant CIU, described above, when viewed objectively from the standpoint of the Defendant at the time of the acts or omissions, involved an extreme degree of risk, considering the probability and magnitude of the potential harm to others, and Defendants had actual, subjective awareness of the risk involved, but nevertheless proceeded with conscious indifference to the rights, safety, or welfare of others.

**ANSWER:**   The allegations/claims in this paragraph are not directed to Defendants Dillard, Vasquez, Dominguez, or Mansell, and thus no response is required. To the extent a response is required, the allegations are denied.

**DAMAGES**

**ACTUAL DAMAGES**

146.    Plaintiffs sustained actual and consequential damages as a direct result of the actions and/or omissions of the Defendant described hereinabove.

**ANSWER:**   Denied.

147.    As a direct and proximate result of Defendants' acts and omissions as heretofore alleged, the Estate of Anthony Timpa suffered physical impairment, excruciating pain, mental anguish, medical treatments, and death. The estate is therefore entitled to recover all reasonable and necessary medical and funeral expenses incurred for the care, treatment and burial of Anthony Timpa that resulted from the tortious acts of the Defendants. In addition, the Estate of Anthony Timpa has an action for the injuries suffered, including but not limited to the disfigurement, humiliation, past pain and suffering, mental anguish and physical capacity suffered because of the incident. That includes the conscious pain and anticipation of death that Tony suffered for several minutes as he pled for help before his death.

**ANSWER:**   Denied.

148.    Plaintiff K.T., as minor child of the decedent, have suffered wrongful death damages for their individual (1) pecuniary loss, (2) mental anguish, (3) loss of companionship and society, and (4) loss of inheritance. Such damages include, but are not limited to past and future lost earnings, past and future mental anguish damages, and other actual damages that are determined under trial of the merits.

**ANSWER:**   Denied.

149.    Plaintiff Vicki Timpa, as a parent of the decedent, has suffered non-pecuniary wrongful death damages including, but not necessarily limited to, her mental anguish and loss of companionship and society.

**ANSWER:**   Denied.

150.    Plaintiff Cheryll Timpa, as the other parent of the decedent's minor child, has suffered pecuniary wrongful death damages for the loss of child support from Anthony Timpa. Such damages are based on Anthony Timpa's loss of future earnings pursuant to the Texas Family Code.

**ANSWER:**   Denied.

## EXEMPLARY DAMAGES

151.    In addition, the foregoing acts were committed with the kind of willfulness, and gross negligence for which the law allows imposition of punitive damages against said Defendants. Incorporating all of the facts alleged, Defendants, as trained peace officers, and security guards, acted with a high degree of awareness regarding the specific and unjustifiable risks of death to Tony given his obvious intoxication, mental distress, professed cocaine usage, and their prolonged restraint of his limbs, and smothering of his torso.

**ANSWER:**   Denied.

152.    Rather than aid Tony in his time of critical need, Defendants continued to smother him, then mock and laugh at him at his began to his ability to respond and despite his vocal pleas for help and that they were going to kill him. During those critical minutes and seconds, Tony's life hung in the balance but Defendants acted with wanton malice by mocking him. These reckless and willful acts resulted in needless and severe suffering as Tony experienced and anticipated his death for several minutes before expiring.

**ANSWER:**   Denied.

153.    Even worse, in the aftermath, Defendants Vasquez and Dominguez speciously maintained that their sophomoric jokes—including ones about waking up for school and having breakfast—were strategically employed to engage Tony. Such dubious characterizations are a flagrant misrepresentation of the facts as they existed at the time of the incident and demonstrate a high degree of subjective awareness of their manifest harm and conscious indifference.

**ANSWER:**   Denied.

154.    Furthermore, during this homicide, and in its immediate wake, and investigation, multiple officers systematically concealed facts, and misled witnesses, and family members concerning how this homicide occurred.

**ANSWER:**   Denied.

## ATTORNEY'S FEES AND PREJUDGMENT INTEREST

155.    Plaintiffs are further entitled to receive their reasonable attorneys' fees pursuant to 42 U.S.C. § 1988, including those for the interlocutory appeal and any successive appeals of this matter.

**ANSWER:**   Denied.

156.    Plaintiffs are further entitled to receive pre-judgment and post-judgment interest at the highest interest rate allowable by law.

**ANSWER:**   Denied.

## JURY DEMAND

157.    Plaintiffs demand a jury trial.

**ANSWER:**   Admitted that Plaintiffs demand a jury trial.

## PRAYER

Plaintiffs pray that the Defendants be cited to appear and answer herein, and that upon a final hearing of the cause, judgment be entered for the Plaintiffs against all Defendants for actual and exemplary damages in amounts within the jurisdictional limits of the Court, and for further relief as described below:

a.   attorneys' fees for the trial of this matter, and all appeals to the Fifth Circuit Court of Appeals, including the past interlocutory appeal, petition for *en banc* review, and petition for certiorari to the Supreme Court, and any appeals in the future;

b.   together with pre- and post-judgment interest as allowed by law, costs of court, and such other relief to which the Plaintiffs may be entitle at law or in equity.

**ANSWER:**     Denied that Defendants Dillard, Mansell, Dominguez and Vasquez violated Anthony Timpa's constitutional rights or otherwise engaged in any unlawful or unreasonable actions. Denied that Plaintiffs are entitled to judgment in their favor. Denied that Plaintiffs are entitled to damages or remedies of any kind.

## DEFENSES

1.      Defendants plead that Plaintiff has failed to state a claim upon which relief can be granted against any of the Defendants.

2.      Defendants affirmatively assert their entitlement to qualified immunity, and affirmatively plead that at all times relevant to the incidents giving rise to the Plaintiff's claims, they were government officials, to wit, Texas certified peace officers and police officers of the Dallas Police Department; that they were employed at the time of the incidents in question by the City of Dallas; that they are entitled to qualified immunity from suit and from damages in the present cause; and that at all times relevant to the incidents in question, they were performing discretionary functions and acting within and pursuant to the scope of their employment and authority as police officers of the Dallas Police Department, that they acted without malice, without an intent to deprive Plaintiff of any legally protected rights, with a reasonable good faith belief that their actions were lawful and proper; and that they did not violate clearly established law of which a reasonable person would have known.

3.      In support of their affirmative defense of qualified immunity, Defendants affirmatively plead the following additional facts:

   a.   Defendant Dillard did not use excessive or lethal force against Timpa.

   b.   Defendants restrained Timpa to facilitate the paramedics' evaluation so that Timpa could get the medical treatment he needed.

c.  Defendants were entitled to rely and did reasonably rely on the paramedic's instruction to Defendant Dillard that Timpa should be kept in a prone position until the paramedic completed his assessment and administered a sedative.

d.  Defendants actions were reasonable in light of the totality of the circumstances and the information known and available to them at the time.

e.  Defendants did not "hogtie" Timpa. Timpa was never hogtied.

f.  Defendants did not strike Timpa or deploy an electronic control device against him.

g.  Defendants did not use a chokehold against Timpa.

h.  None of the Defendants touched Timpa's throat, obstructed Timpa's airway, or caused or allowed Timpa's airway to be obstructed. There is no evidence that Timpa's airway was obstructed at any time.

i.  Timpa's death was not caused by Defendants' actions or inaction.

j.  There is no evidence that Timpa experienced asphyxiation, nor is there any evidence that asphyxiation caused or contributed to Timpa's death.

## <u>DEMAND FOR JURY TRIAL</u>

1.  Defendants respectfully demand a trial by jury.

Respectfully submitted,

CITY ATTORNEY OF THE CITY OF DALLAS

Christopher J. Caso
City Attorney

*/s/ Lindsay Wilson Gowin*
Senior Assistant City Attorney
Texas State Bar No. 24111401
lindsay.gowin@dallas.gov

7BN Dallas City Hall
1500 Marilla Street
Dallas, Texas 75201
Telephone:      214-670-3519
Telecopier:     214-670-0622

ATTORNEYS FOR DEFENDANTS

## CERTIFICATE OF SERVICE

I certify that on December 21, 2022, I electronically filed the foregoing document with the clerk of the court for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the court.  The electronic case filing system sent a "Notice of Electronic Filing" to all attorneys of record who have consented in writing to accept this Notice as service of this document by electronic means.

*/s/ Lindsay Wilson Gowin*
Senior Assistant City Attorney