## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| **VICKI TIMPA, ET AL.** | § | |
| **Plaintiffs,** | § | |
| | § | |
| **V.** | § | **CIVIL ACTION NO. 3:16-cv-03089-N** |
| | § | |
| **DUSTIN DILLARD, ET AL.** | § | |
| **Defendants.** | § | |

### PLAINTIFFS' TRIAL BRIEF ON ADMISSION OF THE INDEMNITY PLAN OF THE CITY OF DALLAS

Plaintiff files this brief pursuant to Federal Rules of Evidence 401 and 411.

### RELEVANT FACTS

The Court being amply familiar with the principal facts, Plaintiffs will recite only those pertinent to this issue. During discovery and for this trial, the City of Dallas Attorneys' Office has identified a number of witnesses, including the DPD Defendants, who are employees of the City of Dallas.[1] See, *e.g., Defendants' Rule 26(a)(2) Expert Disclosures,* at 2. (ECF No. 144) and *Defendants' Rule 26(a)(3) Pre-Trial Disclosures* (ECF No. 276). Indeed, concerning some of the expert witnesses, DPD Defendants have expressly asserted reliance under Federal Rule of Civil Procedure 26(a)(2) they did not need reports for multiple DPD experts because the Dallas City Attorneys' Office did not have to formally retain such experts. (ECF No. 144) at 2. As civil servants with the City of Dallas, some of the Defendants have, to date had some of their defense costs paid by the City of Dallas through its "City of Dallas Officer and Employee Liability Plan," (hereafter, "the Plan"). Dallas City Code, Ch. 31A. Under the Plan, the City pays for both defense

---

[1] Those include Sergeant Michael Bables, Dallas Police Basic Training Academy; Curtis Burnley, Dallas Fire-Rescue Department; James Flores, Dallas Fire-Rescue Department; Sr. Cpl. Sam Hanson, Dallas Police Department In-Service Academy, Dr. Jeffrey Metzger, Dallas Police Department,

PLAINTIFF'S TRIAL BRIEF ON ADMISSION OF
THE INDEMNITY PLAN OF THE CITY OF DALLAS                    Page 1 of 11

and indemnity of its civil servants who commit torts in the course and scope of their employment for the City. Section 31A-5(a) states:

> The city *shall indemnify and defend* a plan member, in accordance with the terms of this plan, against a loss arising out of any claim, suit, or judgment resulting from an act or omission of the plan member *during the discharge of his duties and within the scope of his office, employment*, or assigned volunteer work with the city. *Id.* (*Emphasis added*).

Mindful of these matters, Defendants identified the City of Dallas as a "financially interested party" at the inception of the litigation. Pursuant to Federal Rule of Civil Procedure 7.1 and several local rules,[2] Defendants filed a Certificate of Interested Parties that required her to list "all persons, firms, partnerships, corporations, guarantors, insurers, affiliates, parent or subsidiary corporations, or other legal entities that are *financially interested in the outcome of the case.*".

During the pendency of this action, the Texas State Health Department also pursued disciplinary actions against the City of Dallas and two witnesses from Dallas Fire & Rescue with violating Tony Timpa's rights. "Texas probing Dallas Fire-Rescue over alleged improper patient care, including Tony Timpa death: The EMS licenses of four department employees have been placed on probation, and the city says the state is 'conducting several investigations'.", *The Dallas Morninge News,* Aug. 31, 2021, https://www.dallasnews.com/news/2021/08/31/texas-probing-dallas-fire-rescue-over-alleged-improper-patient-care-including-in-tony-timpa-death/.

Paramedics Curtis Albert Burnley and James Peter Flores entered agreements resulting in probation of their licensure. (ECF No. 249). Dallas Fire & Rescue, which was represented by the Dallas City Attorneys' Office, also entered into an agreement. *Id.*

## <u>ARGUMENTS AND AUTHORITIES</u>

### A.  FRE 411 provides for the admission to show bias, knowledge or control.

---

[2] LR 3.1( c), 3.2( e), LR 7.4, LR 81.1.(a)(4)(D), and LR 81.2.

FRE 411 states that evidence of liability insurance  is not admissible" to prove negligence or wrongdoing, "the court may admit this evidence for another purpose, such as proving a witness's bias or prejudice or proving agency, ownership, or control." *Newell v. Harold Shaffer Leasing Co., Inc.,* 489 F.2d 103, 110 (5th Cir. 1974)(evidence of insurance was relevant to prove agency and it was error to exclude the evidence). The rule "against evidence of 'liability insurance…must give way where the fact of insurance has arguably an independent, substantive evidentiary relevance'." *Eagle Suspensions, Inc. v. Hellmann Worldwide Logistics, Inc.,* 571 Fed. Appx. 281, 286 (5th Cir. 2014) citing *Dicks v. Cleaver,*  433 F.2d 248, 254 (5th Cir. 1970).

**B.  Rule 411 does not bar admission of evidence of the Plan.**

Defendants have suggested that Rule 411 prohibits the admission of evidence of indemnification. See *DPD Defendants' Motion in Limine No. 6,* at 9. (ECF No. 281). Rule 411 by no means bars the admission of this highly probative evidence. *DSC Communications Corp.  v. NextLevel Communications,* 107 F.3d 322, 329 (5th Cir. 1997); *Kemezy v. Peters,* 79 F.3d 33, 37 (7th Cir. 1996). "Indemnification agreements are admissible when relevant to prove a party's knowledge, the corporate relationship of parties, a disputed issue at trial, or to impeach a witness's credibility." *Procaps S.A. v. Patheon Inc.,* 2015 WL 11090665 at *5 (S.D. Fla. Oct. 19, 2015) *DSC Communications Corp.  v. NextLevel Communications,* 107 F.3d 322, 329 (5th Cir. 1997); *Hermosilla v. Coca-Cola Co.,* 2010 WL 5437258, at *5 (S.D. Fla. 2010); *Galaxy Computer Servs., Inc. v. Baker*, 325 B.R. 544, 551 (E.D. Va. 2005); *Sanford v. Ektelon/Prince Sports Grp., Inc.*, 1999 WL 33544436, at *1 (D. Neb. 1999); *Kaplan v. S.A.C. Capital Advisors, L.P.*, 2015 WL 5730101, at *2 (S.D.N.Y. 2015); *Hennepin Cnty. v. AFG Indus., Inc.*, 726 F.2d 149, 153 (8th Cir. 1984); *Brocklesby v. United States*, 767 F.2d 1288, 1293 (9th Cir. 1985).

**1.  Rule 411 does not preclude the admission of indemnity agreements.**

"Rule 411 applies only to liability insurance." *DSC Communications Corp. v. Next Level Communications,* 929 F.Supp. 239, 242 (E.D. Tex. 1996). A proper reading of Rule 411 holds it "**inapplicable on its face, as indemnification is different from liability insurance**." *Wallace v. Poulos,* 861 F.Supp.2d 587, 602 (D. Md. 2012)*,* citing *Galaxy Comp. Services, Inc. v. Baker*, 325 B.R. 544, 551 n. 2 (E.D. Va. 2005)("The Court does not consider the indemnification agreement to be liability insurance for purposes of Rule 411.") Authorities have stated why Rule 411 has no application to indemnity agreements, like the City's. While "difficult to define," liability insurance does "bear certain characteristics": 1) The insurer is paid to take the risk in question; 2) the insurer is well able to pay; 3) the insurer has agreed to indemnify the insured from liability to third persons as contrasted with coverage from losses sustained by the insured; 4) the insurer will spread the loss among its policy holders; 5) the insured will be disinclined to take an action which might cause the insurer to pay on a liability claim since the insured's premiums will rise; and 6) the insured is insuring a future risk. *DSC Communications Corp. v. Next Level Communications,* 929 F.Supp. 239, 243 (E.D. Tex. 1996). In *DSC Communications,* the Fifth Circuit affirmed the lower court's decision admitting evidence of the indemnity agreement and approved the trial court's distinctions, concluding further the indemnity agreement was "an integral part of the relationship between the parties in th[e] litigation." *DSC Communications Corp.  v. NextLevel Communications,* 107 F.3d 322, 329 (5th Cir. 1997). The Fifth Circuit thought the admission of the agreement was necessary to "cast doubt" on a party counsel's characterizing the litigation to the jury during voir dire as "a question of life or death" for individual defendants who were indemnified by the corporate defendant. *Id.,* at 328-329; see also *Procaps S.A. v. Patheon, Inc.,* 2015 WL 11090665 at *5-6 (S.D. Fla. Oct. 19, 2015)(admitting indemnity agreement. Just as in *DSC Communications,* the City's Plan is one of *indemnity* not *insurance.*

As the first factor indicates, DPD Defendants do **not pay** the City to take any particular risks. Concerning the second factor, the City is a large municipality that may be "well able to pay" claims, its business is not to receive money for the specific risks. The *business* of the City not to insure risks, but to protect and serve all within its territorial jurisdiction. *See* TEX. LOC. GOV'T CODE §§ 51.001 *et seq.;* see also, *e.g., Curtis v. Arapaho,* 2004 WL 2248236 at *3 (N.D. Tex. Oct. 5, 2004). Concerning the third factor, the Plan provides indemnity for the DPD Defendants for liability for losses to third parties, like Plaintiffs, but provides no "coverage from losses sustained by the insured." The fourth factor further distinguishes the Plan, as the risk is not spread among "policy holders." Risks are not underwritten by the payment of premium but from the City coffers from general taxation. DPD Defendants did **not** pay premiums, neither the fifth nor sixth factor apply. As a result, the City's plan does not constitute "liability insurance" for the purposes of Rule 411. *DSC Communications,* 929 F. Supp. at 244: *see also Goldenson v. Steffens,* 2014 WL 3105033 *8 citing CHARLES ALAN WRIGHT & KENNETH GRAHAM, JR., 23 FEDERAL PRACTICE AND PROCEDURE § 5362, at 436 (1980 & Supp.2014).[3] In sum, Rule 411 does not apply and certainly does not preclude the admission of the Plan into evidence.

### 2. Even if the City's indemnity Plan were liability insurance it is admissible.

Rule 411 prohibits admitting insurance only with respect to *liability.* As the Advisory Committee Notes states courts have rejected evidence of liability insurance, despite the "inference of fault from the fact of insurance coverage is a tenuous one, as is its converse." FED. R. EVID.

---

[3] *Goldenson,* at *8, ("Professors Wright and Graham suggest that a number of other factors underlay the adoption (and persistence) of Rule 411 "in the face of the collective scorn of the writers": (1) conformity with state practices; (2) a need to defend the "package of procedures designed to preserve the fault system of liability against the tendency of juries to engage in ad hoc compensatory schemes"; and (3) a conservative preference for "undermining by exceptions rather than the direct overthrowing of the rule." *Id.* at 437–38. They also suggest that it may be a mechanism to assist subrogated insurers in maintaining a cloak of invisibility during jury proceedings in which they purport to "be" the insured party. *Id.* at 433–36.").

PLAINTIFF'S TRIAL BRIEF ON ADMISSION OF
THE INDEMNITY PLAN OF THE CITY OF DALLAS                                    Page 5 of 11

411, *Notes of Advisory Committee on 1972 Proposed Rules.* The stated rationale for the exclusion was the assertion that evidence of liability insurance could be asserted as an inference that a party was negligent. Commentators have rejected this premise. As Judge Weinstein explains

> The probative force of this line of proof is almost nil.... [The driver] knows that accidents result in higher premium rates for his future policies, so that there is an economic incentive not to be involved in accidents.

JACK B. WEINSTEIN ET AL., WEINSTEIN'S EVIDENCE ¶ 411[02] (1995) ("WEINSTEIN'S EVIDENCE"). Though courts generally continue to bar the admission of insurance during the liability phase, despite the lack of probative force behind this moral hazard argument, a significant number of exceptions apply, such as "proving a witness's bias or prejudice or proving agency, ownership, or control." But assuming indemnification falls within this ambit, Rule 411 does not apply "upon the issue whether the person acted negligently or otherwise wrongfully"; the rule "does not require" such evidence to be excluded when it is "offered for another purpose." *Wallace v. Poulos,* 861 F.Supp.2d 587, 601 (D. Md. 2012)*,* citing Fed. R. Evid. 411. Here, as indicated, there are several reasons for which evidence of the Plan may be offered. Based on the evidence to date, these include net worth, control, bias, and interest.

**a. Admission of the Plan is relevant to proving net worth.**

"Punitive damages may be awarded in § 1983 cases "when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." *Heaney v. Roberts,* 846 F.3d 795, 803 (5th Cir. 2017) citing *Smith v. Wade*, 461 U.S. 30, 56, 103 S.Ct. 1625, 75 L.Ed.2d 632 (1983)." To assess exemplary damages, courts rely on "guideposts" established in *BMW of N. Am., Inc. v. Gore,* 517 U.S. 559, 574, 116 S.Ct. 1589, 134 L.Ed.2d 809 (1996). Aggravating factors include whether (1) whether a defendant's conduct was violent or presented a threat of violence, (2) whether a

defendant acted with deceit or malice, as opposed to acting with mere negligence, and (3) whether a defendant has engaged in repeated instances of misconduct." *Gore,* 517 U.S. at 576-77. Here, we have gruesome, slow occurring death followed by reprehensible joking. Under *Gore,* these facts are aggravated. But even without the aggravating factors, DPD Defendants' net worth is likely to be a central matter. FRE 401 holds that evidence having "any tendency" to make a matter of consequence more or less probable is admissible. One of the principal considerations assessing such damages are Defendants' net worth. *State Farm Mut. Auto Ins. Co. v. Campbell,* 538 U.S. 408, 438, 123 S.Ct. 1513 (2003). A key asset in determining that question is the availability of liability insurance.[4] "The defendant should not be allowed to plead poverty if his employer or insurance company is going to pick up the tab." *Kemezy,* 79 F.3d at 37. (Posner, J.)(explaining that it would be worse for the moral hazard if the insurer knew the insured could maintain indigence). It is relevant for the jury to know "the ultimate source of payment" because "[t]he jury must know the impact an award will have on the defendant to properly assess punitive damages." *Perrin v. Anderson,* 784 F.2d 1040, 1047-48 (10th Cir. 1986). As a result, courts have repeatedly reached conclusions like this one:

> [W]e rule that a fact-finder can properly consider the existence of such an [indemnity] agreement as obviating the need to determine whether a defendant's limited financial resources justifies some reduction in the amount that would otherwise be awarded.

*Mathie v. Fries,* 121 F.3d 808, 816 (2nd Cir. 1997)(holding that indemnity agreement for prison guard was admissible in § 1983 action involving sex assault of inmate). In the present case, it

---

[4] *Fleegel v. Estate of Boyles,* 61 P.3d 1267, 1272 & n. 20 (Alaska 2002); *Schaefer v. Ready,* 134 Idaho 378, 3 P.3d 56, 59 (Idaho Ct. App. 2000); *Wheeler v. Murphy,* 192 W.Va. 325, 452 S.E.2d 416, 423 (1994); *Miller v. Szelenyi,* 546 A.2d 1013, 1019 (Me.1988); *Ayers v. Christiansen,* 222 Kan. 225, 229–30, 564 P.2d 458 (1977); *Humana Health Ins. Co. of Florida, Inc. v. Chipps,* 802 So.2d 492, 497–98 (Fla.Ct.App.2001) (holding that trial court correctly admitted evidence of indemnity agreement to rebut defendant's assertions that a large punitive damages award would force the company into financial straits); *Wheeler v. Murphy,* 452 S.E.2d 416, 424 (W.Va .1994).

would be a gross miscarriage of justice for any or all of the Defendants to assert that their relatively modest resources should require a reduction in any potential exemplary damage award. *Mathie,* 121 F.3d at 816; *Kemezy,* 79 F.3d at 37; *Perrin,* 784 F.2d at 1047-48.

Three of the four defendants remain employed with the City, while the fourth, Kevin Mansell, retired from the force. In none of their cases could their come close to satisfying Plaintiffs; actual or exemplary damages should they be found liable. Further confounding matters, too, are the effects of asset exemptions and encumbrances. *See Leibman v. Grand,* 981 S.W.2d 426, 436 (Tex.App.—El Paso 1998, no pet.). As Judge Posner pointed out decades ago, it would be worse for the "moral hazard" if the City of Dallas could hide behind DPD Defendants' plea of "poverty." *Kemezy,* 79 F.33d at 37. This point cannot be overstated for it is well-settled that law enforcement requires public oversight. *Richmond Newspapers, Inc. v. Virginia,* 448 U.S. 555, 572, 100 S.Ct. 2814, 2825 (1980). Indeed, excessive force and police misconduct are social problems affecting the public interest, not private ones affecting private parties. *Morrow v. City of Tenaha,* 2010 WL 3927969 *4 (E.D. Tex. 2010); *Carnaby v. City of Houston,* No. 4:08–cv–1366, 2008 WL 4546606, at *2 (S.D.Tex. Oct. 10, 2008); *see also Doe v. Marsalis,* 202 F.R.D. 233, 238 (N.D. Ill. 2001)(explaining excessive force is "an ugly and expensive syndrome," and one of the "ultimate lose/lose situations in our democratic society" that undermine the public trust). Apprising the jury of the indemnification will prevent DPD Defendants, the City and the DCAO from warping the moral hazard. It will help to prevent Plaintiffs from receiving penurious compensation based on the jury's misimpression that DPD Defendants will remain perpetual judgment debtors for no useful purpose. Neither DPD Defendants nor the City should be allowed to game Plaintiffs, the jury or this Court by fostering the pretense of their insolvency based on a false premise that they will be left holding the bag.

b.      **Admission of the Plan is relevant to bias and interest.**

As stated, DPD Defendants have a platoon of witnesses who are City of Dallas employees. As a result, the Plan is admissible to show bias and interest. "Other 'economic tie[s]' may 'influence the witness to favor the insurance company,' including 'ownership of stock in the company, or a promise of employment, or a promise to pay the witness directly for his testimony." *Ventura v. Kyle,* 825 F.3d 876, 883 (8th Cir. 2016) citing 23 Charles Alan Wright & Kenneth W. Graham, Jr., Federal Practice and Procedure § 5367 (1st ed. 1980)("The paradigm case for use of evidence of insurance to show bias is in the cross-examination of a claims adjuster or insurance company doctor."); see also *Charter v. Chleborad,* 551 F.2d 246, 248 (8th Cir. 1977). In *Chleborad,* the Court of Appeals held that where a defense witness was employed in part by defendant's insurer was clearly admissible to show possible bias of the witness, and the probative value of the evidence far outweighed any danger of unfair prejudice. *Id.* As a result, the trial court did not act within its discretion in excluding such evidence of insurance). Here, the level of bias and interest cannot be overstated. These police and fire witnesses owe more than their "jobs" to the City of Dallas; the City government is responsible not just for their weekly income but for their health care, professional development, continuing education and retirement plans. *Ventura, supra* citing Wright & Graham, § 5367. While Plaintiffs' experts, for example, may be subject to cross-examination concerning the compensation that Plaintiffs' counsel has tendered for *this* case, Defendants' witnesses have owed and will owe far more to their paymaster. Their specific livelihoods, too, cannot be overlooked. Given the societal reverence afforded to first responders, much of the compensation these witnesses receive from the City of Dallas is non-monetary. Such intangible benefits include power, influence, excitement and personal fulfillment. None of these perquisites are inconsequential and some are unique. The City's power and influence will run

throughout the proceedings and the factfinder should know that it and only it that is underwriting the testimony of these witnesses.

### c. Admission of the Plan is relevant to proving control.

Admitting evidence of indemnification will also put the focus on the one entity that has the authority to control police brutality in the City of Dallas: itself. The City of Dallas and the Dallas Police Department have largely embraced Defendants' conduct. None of the Defendants were disciplined for *killing* Timpa, though two were merely reprimanded for mocking him as lay dying and dead. Indeed, at least one of the defendants has since been promoted. See, *e.g.*, "Dallas police promote officer who pinned Tony Timpa to ground before he did in 2016," *The Dallas Morning News*, May 25, 2022. https://www.dallasnews.com/news/courts/2022/05/25/dallas-police-promote-officer-who-pinned-tony-timpa-to-ground-before-he-died-in-2016/. The City and Department have done so, too, despite having several DPD General Orders that prohibit officers from placing subjects in prone restraint (particularly for some 14 minutes *and* certainly not with an officer kneeling upon them). Likewise, the Department's Crisis Intervention Training mandates protocols that Defendants breached *writ large*. Besides the gross violations concerning the prone restraint, they failed to de-escalate the situation or employ a "Five Man Takedown," which would have precluded Timpa's death. Barring the admission of indemnification will mislead the jury about as to what entity is actually controlling the litigation and benefitting from any outcome.

### <u>CONCLUSION</u>

The City and its employees cannot hide behind one another. As the Fifth Circuit makes plain, the indemnity Plan is *not* garden variety liability insurance. As a result, Rule 411 does not bar its admission. Even if the Plan were actually liability insurance, apprising the jury of such evidence would preclude Defendants and their counsel from concealing vital information that well

explains bias, interest, and control. Rule 411 further prohibits the City and DPD Defendants from exploiting their seeming poverty in the face of important questions of net worth. Placing blinders over the factfinders' eyes concerning who will actually pay for Plaintiffs' suffering must not be the Court's plan.

Respectfully submitted,

By:    /s/  Geoff J. Henley
       Geoff J. Henley
       Texas Bar No. 00798253
       ghenley@henleylawpc.com
       **HENLEY & HENLEY, P.C.**
       2520 Fairmount, Suite 200
       Dallas, Texas  75201
       Tel. (214) 821-0222
       Fax. (214) 821-0124

       **ATTORNEYS FOR PLAINTIFFS**

       */s/ Geoff J. Henley*
       Geoff J. Henley

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this the 25th day of June, 2022, a true and correct copy of the foregoing was served on all counsel of record via electronic submission through the ECF system pursuant to the Federal Rules of Civil Procedure.

       */s/  Geoff J. Henley*
       Geoff J. Henley