**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| **VICKI TIMPA, ET AL.** | § | |
| **Plaintiffs,** | § | |
| | § | |
| **V.** | § | **CIVIL ACTION NO. 3:16-cv-03089-N** |
| | § | |
| **DUSTIN DILLARD, ET AL.** | § | |
| **Defendants.** | § | |

## PLAINTIFFS' TRIAL BRIEF ON PUNITIVE DAMAGES AND THE CITY OF DALLAS INDEMNITY PLAN

Plaintiff files this brief pursuant to Federal Rules of Evidence 401, 402, 403 and 411.

## SUMMARY OF ARGUMENT

DPD Defendants are covered insured by virtue of the Plan. The City of Dallas has the burden to prove coverages are excluded. The Indemnity Plan of the City of Dallas does NOT exclude exemplary damages or acts committed with "recklessness." See **Exhibit "A."** Furthermore, the Dallas Court of Appeals has held that intentional acts committed are "not necessarily" excluded  from the Plan because *intentional use of force* is integral to law enforcement. In addition, in assuming unreserved control of the litigation, the City has already waived any coverage exclusion under the *Wilkinson* exception. Still further, there has never been any suggestion that the Defendants' acts as "bystanders," were excluded from coverage. Finally, the Plan provides that the "city council may waive the exclusion for gross negligence…if the city council determines the circumstances justify the waiver." Ord. Nos. 18575, 19884, 20454.

## RELEVANT FACTS

Plaintiffs' pleadings alleged that Defendants committed a number of acts "with the kind of willfulness and gross negligence for which the law allows the imposition of punitive damages."

*Second Amended Complaint,* § 139. Elsewhere, Plaintiffs' alleged that Defendants "actions of restraining Mr. Timpa were intentionally, knowingly and with reckless disregard for Mr. Timpa's constitutional rights." See Plaintiffs' Second Amended Complaint*,* § 82; see also §§ 88, 92, 96.

During the pre-trial hearing, the Court considered the admissibility of the "City of Dallas Officer and Employee Liability Plan," (hereafter, "the Plan"), pursuant to Plaintiffs' proffers in and arguments. During a colloquy about the content of the Plan, the Court asked counsel for the DPD Defendants regarding whether the Plan would indemnify exemplary damages should they be awarded against any of the defendants. The answer was no. But that answer was wrong— particularly for this litigation.  Under the Plan, the City pays for both defense and indemnity of its civil servants who commit torts in the course and scope of their employment for the City. In pertinent part, those provisions read:

### SEC. 31A-5.  COVERAGE.
(a)  The city shall indemnify and defend a plan member, in accordance with the terms of this plan, against a loss arising out of any claim, suit, or judgment resulting from an act or omission of the plan member during the discharge of his duties and within the scope of his office, employment, or assigned volunteer work with the city.

\*\*\*

### SEC. 31A-6.  DEFENSE.
(a)  The city will defend any suit against a plan member who is covered under this plan even if the suit is groundless or fraudulent.

(b)  The city may investigate, negotiate, and settle any claim or suit as it determines necessary. (Ord. 18575)

### SEC. 31A-7.  LIMITS OF COVERAGE.
(a)  The city will pay losses covered by this plan that a plan member is legally obligated to pay, except, that in cases arising from incidents or occurrences where the city's liability exists by virtue of the Texas Tort Claims Act (Chapter 101, Texas Civil Practices and Remedies Code), whether or not the city is a party defendant, the city will pay those losses covered by this plan that a plan member is legally obligated to pay up to, but not exceeding the limits of liability provided by that Act, as amended, for a municipality.

(b)  In addition to the coverage provided in paragraph (a) the city will pay:

(1)   the city's expenses in investigating and defending the claim or lawsuit;

(2)   costs taxed against a plan member in a suit covered by this plan and interest that accrues after entry of judgment before the city has deposited payment with the court on that part of the judgment which does not exceed the limits of coverage;

(3)   reasonable expenses of the plan member incurred at the city's request; and

(4)   attorney's fees ordered by the court to be paid by the plan member. (Ord. Nos. 18575; 18905; 19884)

### SEC. 31A-10.   EXCLUSIONS.

(a)   Coverage under this plan does not apply to a claim or lawsuit that is brought against a plan member:

(1)   by the city;

(2)   arising out of the intentional, knowing, or criminally negligent violation of a penal statute or ordinance committed by or with the knowledge or consent of the plan member, or any claim arising out of acts of fraud committed by or at the direction of the plan member with intent to deceive or defraud;

(3)   arising out of the gross negligence of the plan member, except that the city will defend the plan member in accordance with Section 31A-6(a) of this chapter;

(4)   arising out of affirmative dishonesty or actual intent to injure by the plan member;

***

(b)   The city council may waive the exclusion for gross negligence set forth in Subsection (a)(3) of this section if the city council determines that circumstances justify the waiver. (Ord. Nos. 18575; 19884; 20454).

As indicated in previous filings, the City of Dallas attorneys' office represented all four

DPD Defendants as well as Officer Domingo Rivera[1] at the outset of the litigation.[2] Sec. 31A-12.

---

[1] Claims against that defendant were not sustained on appeal.

[2] **SEC. 31A-12.   LEGAL REPRESENTATION.**
(a)   The city will provide legal representation for a plan member in a claim or suit in which the plan member is covered under this plan.
  (b)   If the city attorney determines that there is a conflict of interests for the city attorney in representing a plan member, and the plan member is otherwise entitled to coverage under this plan, the city will pay the reasonable fee of a private attorney to represent the plan member. The private attorney will be selected by mutual agreement of the plan member and the city attorney. (Ord. 18575)

During the interim when three (Mansell, Vasquez and Dillard) were under indictment for the parallel criminal action for Deadly Conduct, the City (1) hired private counsel for each, but (2) continued to defend Rivera and Dominguez itself through the Office of the Dallas City Attorney. After the Dallas County District Attorneys' Office dismissed the grand jury indictment, the Dallas City Attorney resumed representation of Mansell, Vasquez and Dillard. In addition, the DPD reversed and rescinded the disciplinary recommended against the three defendants.

## ARGUMENTS AND AUTHORITIES

### A.  The Plan indemnifies all Defendants.

#### 1.  Texas law construes municipal liability as contracts.

The City's liability insurance plan is treated like any other insurance contract. Texas law holds that such self-insured coverage plans are proprietary in nature. *Hudson v. City of Houston,* 392 S.W.3d 714 (Tex. App.—Houston [1st Dist.] 2011); *Bailey v. City of Austin,* 972 S.W.2d 180, 192 (Tex. App.—Austin 1998, writ denied); *City of Dallas v. Csaszar,* 1999 WL 12680766, at *3 (Tex. App.—Dallas, pet. denied). As a result, coverage for such plans are subject to the same rules and liabilities as any other insurer. *Gates v. City of Dallas,* 704 S.W.2d 737, 739 (Tex.1986); *Whatley v. City of Dallas,* 758 S.W.2d 301, 304 (Tex. App.—Dallas 1988, writ denied) (explaining that "having assumed administration of its own liability protection plan, [the City of Dallas] is cast in the role of an insurer")

When interpreting an insurance policy, courts apply the general rules of contract construction to ascertain the parties' intent. *TIG Ins. Co. v. N. Am. Van Lines, Inc.,* 170 S.W.3d 264, 268 (Tex.App.—Dallas 2005, no pet.). The primary goal is to give effect to the parties' intent as expressed in the written contract. *Gilbert Tex. Constr.,* 327 S.W.3d at 126; *U.S. Fire Ins. Co. v.*

*Scottsdale Ins. Co.,* 264 S.W.3d 160, 167 (Tex. App.—Dallas 2008, no pet.). The duty to defend a suit is determined by evaluating the four corners of the claim or complaint and the four corners of the contract for indemnity. *National Union Fire Ins. Co. v. Merchant's Fast Motor Lines, Inc.,* 939 S.W.2d 139, 141 (Tex.1997) (an insurer's duty to defend is determined by application of the eight corners rule). "When applying the eight corners rule, we give the allegations in the complaint a liberal interpretation." *National Union,* 939 S.W.2d at 141 (citing *Heyden Newport Chem. Corp. v. Souther Gen. Ins. Co.,* 387 S.W.2d 22, 26 (Tex.1965)). Any uncertainty about whether allegations in a complaint state a covered cause of action is resolved in the insured's favor. *See Heyden,* 387 S.W.2d at 26.

### 2. The Plan covers the Defendants.

It is beyond dispute that the Plan covers Defendants. The City of Dallas certified it is a financially interested party. The Dallas City Attorney has represented Defendant Dominguez since the inception of the litigation and has represented all defendants at least recurrently.

### 3. The City must prove the Plan's coverage exclusions.

If the City seeks to disclaim coverage by virtue of an exclusion, it bears the burden. If an insured proves coverage, then to avoid liability the insurer must prove that the claims falls within an exclusion. *Mid-Continent Cas. Co. v. Krolczyk,* 408 S.W.3d 896, 901 (Tex. App.—Houston [1st. Dist] 2013). "When interpreting an insurance contract," the Supreme Court has consistently held, "we 'must adopt the construction of an exclusionary clause urged by the insured as long as that construction is not unreasonable, even if the construction urged by the insurer appears to be more reasonable or a more accurate reflection of the parties' intent.'" *Evanston Ins. Co. v. ATOFINA Petrochems., Inc.,* 256 S.W.3d 660, 668 & n. 25 (Tex.2008) (quoting *Nat'l Union Fire Ins. Co. v. Hudson Energy Co.,* 811 S.W.2d 552, 555

(Tex.1991)). *Any* limitations on liability are *strictly construed against* the insurer and in favor of the insured, and the insurer must express any intent to exclude coverage in clear and unambiguous language. *Id.*

### 4.  The City cannot prove any exclusions.

#### a.  The Plan does not exclude awards or claims for exemplary damages.

Texas courts have repeatedly held that failure to expressly exclude coverage for punitive damages is fatal to an insurer's claim to escape coverage. *Westchester Fire Ins. Co. v. Admiral Ins. Co.,* 152 S.W.3d 172, 181-182 (Tex. App.—Ft. Worth 2004); *American Home Assur. Co. v. Safway Steek Products Co., Inc., A Div. of Figgie Intern., Inc.,* 743 S.W.2d 693, 702 (Tex. App.—Austin 1987). Indeed, an insurers' efforts to escape such coverage may actionable under the Deceptive Trade Practices Act. *Celestino v. Mid-American Indem. Ins. Co.,* 883 S.W.2d 310 (Tex. App.—Corpus Christi-Edinburg 1994)(plaintiffs had claim for unconscionability against insurer concerning policy exclusion for punitive damages which precluded coverage under circumstances for which the policy was issued.).

In *American Home Insurance,* the Austin Court of Appeals emphasized that an insurer cannot escape coverage by simply alluding to a policy's exclusion of intentional acts.

> For purposes of excluding categories of damages, distinctions drawn upon the nature of the insured's acts are not enough. Almost every conscious or voluntary act may be considered "intended" or "expected." There is nothing in the policy itself which would otherwise forewarn an insured that the intent of the parties was to exclude punitive damages based upon the insured's gross negligence. ***Appellant insurance companies could have easily removed any ambiguity by including an express exclusion from liability for punitive damages.***

The Plan makes no explicit reference to "exemplary" or "punitive" damages. Contrary to the assertions of the Dallas City Attorney, neither is expressly excluded. This is a critical omission.

*American Home, supra..*  In *Westchester Fire Ins. Co.,* the Court likewise found that a policy's

failure to expressly exclude exemplary damages was a material omission in litigation brought by an excess carrier against the primary insurer following a nursing home abuse plaintiff's verdict. The Court explained that the appellee could not rely on *St. Paul Fire & Marine Insurance Co. v. Convalescent Services, Inc.,* 193 F.3d 340, 343 (5th Cir. 1999)(holding under Texas law that insured could not recover from insurer portion of excess judgment attributable to punitive damages when policy <u>specifically excluded coverage</u> for punitive damages).The Fort Worth Court of Appeals emphasized that the Fifth Circuit in *St. Paul* relied on a policy that "*specifically excluded coverage for punitive damages,*" (*Emphasis in original*), and noted that the federal court of appeals relied on that specific exclusion in making its *Erie* guess on Texas substantive law. *Id.* citing *Erie R.R. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

### b.   The Plan does not exclude reckless acts.

While the Plan refers to multiple culpable mental states, it conspicuously omits one. There is a complete absence to any reference of "reckless acts," or those done with "recklessness." Reckless is not a meaningless word, particularly in a policy provision that makes express reference to penal statute mental states—four of which have been well-defined in Texas for decades. TEX. PEN. CODE § 6.03. What is more, it is the City's burden to prove the exclusion of coverage under the circumstances. That is impossible given this glaring omission. The presence of the lesser culpable criminal mental state of criminal negligence, at best, creates some ambiguity about the intent of the overall plan, namely to exclude from coverage criminal conduct committed during the course and scope of employee duties. But even if the policy were merely ambiguous, the City would owe its existing duties of defense, and indemnity. No less important, though, is that had the City wanted to exclude reckless acts, or omissions, it simply could have done so.

### c.  **The Plan does not exclude "necessarily" intentional acts.**

As apparently here, the City of Dallas has asserted that the culpable mental state exclusions

bar coverage in an excessive force claim. *City of Dallas v. Csaszar*, 1999 WL 12680766, at *3-4

(Tex. App.—Dallas, pet. denied). The Dallas Court of Appeals disagreed. While the underlying

claim alleged that an off-duty officer "intentionally hit, kicked, and threatened" the Section 1983

claimant, *Csazar* held "such conduct is not *necessarily* an intentional, knowing, or criminally

negligent violation of a penal ordinance." *Id.,* at 5. (*Emphasis in original*). Much like the *American*

*Home Assurance,* the Court further explained the nature of intent:

> Police officers may be authorized to use force while acting within the scope of their
> employment; it is only an excessive use of force which is improper. Nor does such conduct
> *necessarily* suggest an actual intent to injure. Such force, although intentional, could be
> with the intent to subdue or restrain a suspect, not to injure him. *Id.* (*Emphasis in original*).

*Csazar* recognizes the premise of virtually all law enforcement use of force incidents and

certainly this one. That is, law enforcement seize a subject under the color of authority of law

rather than in violation of penal law. *Id.* Indeed, DPD training materials emphasize to recruits and

veterans alike that *force* is *not* an *assault.* The necessity of the use of force coheres with the

monopoly officers employ over its use. This particular exclusion pertains not to actions arising

from *excessive force* incidents occurring within the scope of their duties, but *ultra vires* criminality.

All seizures require intentional acts—particularly those requiring some use of force. As *Csazar*

implies, law enforcement would grind to a halt under the paradox that every time an officer forcibly

took a suspect into custody he committed a new crime.

The facts favoring coverage here are even more obvious than in *Csazar.* There, the incident

occurred while both Officers Csazar and his colleague were off-duty. While only Csazar was sued

for excessive force, his co-defendant was sued for failing to intervene. At trial, the two prevailed,

but there remained an unpaid bill for attorneys' fees that had been paid for the Dallas Police Association. As a result, the Association filed a declaratory judgment action against the City.[3]

In holding further that the City of Dallas owed a duty of subrogation to the DPA, *Csazar* firmly enforced both the City's contractual and equitable duties. Here, all five officers responded to Tony Timpa's 9-1-1 call where they arrived in uniform, marked patrol units in the scope of their duties and under color of law to answer a mental health distress call. It is beyond dispute too that the officers intentionally and knowingly restrained. They and the Dallas City Attorneys' Office hotly contest whether they did so with the intent *to* violate penal law. As a result, coverage applies.

The bystander claim in *Csazar* merits more than a passing reference, too. Here, we have three bystander claims with which the Court is amply familiar. What is noteworthy though is that despite the reprehensible nature of the bystander Defendants' conduct, none of them could were charged with some kind of criminal act of nonfeasance. Indeed, one of them—Dominguez—was never charged with any criminal act. As a result, Section 31-10(a)(2) could have no application to any of the bystander claims of Defendants, particularly Defendant Dominguez.

### B.  The City of Dallas has already waived any right not to indemnify.

"As a general rule the doctrines of waiver and estoppel will not operate to enlarge the risks covered by an insurance policy." *Basco v. McNeill Ins. Agency,* 2000 WL 992137 at *3 (Tex. App.—Beaumont July 20, 2000) citing *Texas Farmers Ins. Co. v. McGuire,* 744 S.W.2d 601, 602–03 (Tex.1988) (op. on reh'g). "If an insurer, with knowledge of facts indicating noncoverage,

---

[3] **SEC. 31A-13.   DETERMINATION OF COVERAGE.** If the city denies coverage to a plan member, the plan member may seek a determination of coverage by a court of proper jurisdiction in Dallas County, Texas. If the court rules in favor of the plan member, the city shall provide the plan member all benefits under the plan and shall reimburse the plan member for reasonable attorney fees, expenses and costs incurred in obtaining the determination of coverage. (Ord. 18575)

assumes or continues the defense of its insured without obtaining a non-waiver agreement or a reservation of rights, it waives all policy defenses, including those of noncoverage, or it may be estopped from raising them." *Id.* citing *Farmers Texas County Mut. Ins. Co. v. Wilkinson,* 601 S.W.2d 520, 522 (Tex. Civ. App.—Austin 1980, writ ref'd n.r.e.). The rationale undergirding the "Wilkinson Exception" was "the apparent conflict of interest that might arise when the insurer represents the insured in a lawsuit against the insured and simultaneously formulates its defense against the insured for non-coverage." *Goodrich v. Evanston Insurance Company,* 2010 WL 11618872 at *4 (N.D. Tex. Sept. 3, 2010) citing *Wilkinson,* 601 at S.W.2d 520. That rationale is particularly acute where "there was actual prejudice that occurred as a result of the insurer's defense." *Ulico Casually Co. v. Allied Pilots Ass'n,* 262 S.W.3d 773, 785 (Tex. 2008). Examples of such prejudice include actual prejudice "when the insurance company withdraws representation right before trial leaving the insured stranded with no defense. " *Id. ,* citing *Pacific Indemnity Co. v. Acel Delivery Service, Inc.* 485 F.2d 1169 (5th Cir. 1973). "Another example is when the defense attorney retained by the insurance company has divided loyalties." *Id.* citing *Employers Cos. Co. v. Tiltey*, 496 S.W.2d. 552 (Tex. 1973). In the present litigation, the City of Dallas has (1) represented itself; (2) Defendant Dominguez continuously; and (3) Defendants Dillard, Vasquez and Mansell episodically. When the City determined that it would resume the defense of the latter three following the dismissal of the Deadly Conduct in particular the City made it plain that it did not deem these acts as ones arising from criminal conduct. The City rescinded the parallel disciplinary actions which occurred only because of the criminal charges and *not* because for the underlying acts that gave rise to those charges. To reverse course and deny coverage for exemplary damages, which could readily bankrupt any of the defendants, after the Dallas City Attorneys' Office continued to control all facets of the underlying litigation would result in actual prejudice.

*Ulico,* 262 S.W.3d at 785. In sum, the City has waived *any* right to the exclusion—if were actually operative contrary to *Csazar*—Section 31-10(a)(2) of the Plan.

### C.   The Plan retains yet another waiver.

Section 31A-10(b) provides that the "city council may waive the exclusion for gross negligence…if the city council determines the circumstances justify the waiver." Ord. Nos. 18575, 19884, 20454. This last provision makes it clear that the City of Dallas retains the right to change its mind concerning whether it will indemnify acts of gross negligence.

<u>CONCLUSION</u>

The relevance for the purpose net worth (and also control) remains undisturbed. Indeed—given the failures to expressly exclude exemplary damages or reckless conduct; the incomplete exclusion of acts involving done intentionally, knowing or with criminal negligence under *Czaras;* the City's waiver under *Wilkinson;* and finally its memorialized option to indemnify acts of gross negligence—it has become only more probative during a proceeding solely to the consideration of exemplary damages.

Respectfully submitted,

By:   /s/  Geoff J. Henley
Geoff J. Henley
Texas Bar No. 00798253
ghenley@henleylawpc.com
**HENLEY & HENLEY, P.C.**
2520 Fairmount, Suite 200
Dallas, Texas  75201
Tel. (214) 821-0222
Fax. (214) 821-0124

**ATTORNEYS FOR PLAINTIFFS**

*/s/ Geoff J. Henley*
Geoff J. Henley

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on this the 25th day of <u>June</u>, 2022, a true and correct copy of the foregoing was served on all counsel of record via electronic submission through the ECF system pursuant to the Federal Rules of Civil Procedure.

*/s/  Geoff J. Henley*
Geoff J. Henley
