IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| VICKI TIMPA et al., | § § § | |
|        *Plaintiffs*, | § § | |
| and | § § | |
| JOE TIMPA, | § § | Civil Action No. 3:16-CV-3089-N |
|        *Intervenor-Plaintiff*, | § § | |
| v. | § § | |
| DUSTIN DILLARD et al., | § § | |
|        *Defendants*. | § | |

**DEFENDANTS' TRIAL BRIEF
REGARDING LIMITING PLAINTIFFS' EXHIBIT 434**

TO THE HONORABLE COURT:

Defendants Dustin Dillard, Kevin Mansell, Danny Vasquez, and Raymond Dominguez ("Defendants"), for the following reasons, respectfully ask this Court to restrict the use of Plaintiffs' Exhibit 434 (the "Exhibit"). Specifically, Defendants respectfully request this Court instruct Plaintiffs to not reference the Exhibit or its contents during their voir dire, opening statements, or closing arguments, and to seek Court approval outside the presence of the jury prior to introducing its existence and contents.

### I. ARGUMENTS AND AUTHORITIES

The Exhibit concerns disciplinary *allegations* against two witnesses at the scene, paramedics Curtis Burnley and James Flores (the "Paramedics"). *See generally, Ex*. As the Exhibit shows, the Paramedics entered into a settlement agreement with their respective licensing agency, the Texas Department of State Health Services, based on multiple alleged infractions associated

1

with the incident giving rise to this lawsuit. *Id*. Specifically, the Exhibit contains allegations that the Paramedics committed multiple infractions that directly implicate Defendants:

> The proposed action is based upon the following allegation(s):
>
> 1. On or about August 10, 2016, while employed with City of Dallas Fire-Rescue Department as a Licensed Paramedic, you engaged in conduct that resulted in physical and emotional abuse/injury to a patient when you responded to a call involving a patient restrained by a police officer by handcuffs on both hands and legs. Specifically, as the highest medical authority on the scene of the call, you failed to intervene on behalf of the patient in accordance with your medical director's protocol, when you observed the police officer knelt on the back of the handcuffed patient to physically restrain the patient, and continue to the point that the patient was unconscious and no longer breathing, despite the patient's distress cries and pleadings, saying "help me", "don't hurt me", "you are going to kill me".
>
> 2. Additionally, when the patient is evidently unresponsive due to the police distressful restraint, you observed the application of the medication, to wit: Versed, as a chemical restraint to said patient and
>
>    failed to report the incident to your employer before clearing the scene as required by your employer protocol.
>
> 3. Furthermore, you falsified the patient care report of the aforementioned patient when you failed to accurately and/or completely document actual event timelines as it occurred, complete patient assessments, complete vital signs, patient chief complaint, Mechanism of Injury/Mechanism of illness impression, complete narrative charting in chronological order, outcome of treatment preformed; and did not attach the Electrocardiogram monitoring strips for said patient.

Ex. pp. 6-7.

These allegations cover virtually the entire waterfront of the Paramedics' interactions with Mr. Timpa and their subsequent recordkeeping.

However, the Paramedics were never subject to a judicial or agency finding that they *committed* any of the above acts. Instead, they entered into a settlement agreement whereby their

licenses were given a probated suspension and the Paramedics were required to complete various education requirements:

> 1. The Department withdraws its proposal to revoke Respondent's Paramedic License and instead hereby suspends Respondent's Paramedic License for twenty-four (24) months for violation of Department Rules as described in section "III. Facts" of this Order; however, the entirety of the suspension is probated ("probated suspension"). The probated suspension begins on the day the Order is signed by the associate commissioner.
>
> 2. During the first four (4) months of the 24-month probated suspension, Respondent shall complete and provide the Department with certificates of successful completion of the following courses: two (2) hours in Ethics; two (2) hours in Medication Administration; two (2) hours in Patient Assessment; two (2) hours in Patient Care Report Documentation; two (2) hours in Psychiatric/Behavior Emergencies; two (2) hours in Managing Aggressive/Violent Patients; and a sixteen (16) hour Prehospital Trauma Life Support (PHTLS) or International Trauma Life Support (ITLS) course for providers at the basic level (not a refresher course). These courses are to be taken in addition to the Continuing Education (CE) hours Respondent is required by Rule to maintain Respondent's Paramedic License. CE hours must be proctored

*Id*. p. 2.

While this Court denied Defendants' Motion in *Limine* No. 3 seeking to exclude evidence of discipline or reprimands of paramedics or officers related to their encounter with Timpa, the Exhibit includes information that could unfairly prejudice Defendants if Plaintiffs are allowed to mention, comment on, or allude to its contents in front of the jury before the Exhibit has been admitted into evidence. Defendants, therefore, ask this Court to curtail the Exhibit's use and require Plaintiffs to first obtain approval prior to mentioning the Exhibit's contents before the jury or offering it up to a witness. If Plaintiffs are permitted to talk about the Exhibit before it is admitted into evidence or without restriction as to the contents or as in a limited means of cross-examination, or if it is discussed in Plaintiffs' voir dire, opening statement, or closing argument, the jury could be tempted to equate a state agency's allegations and findings of regarding Defendant Dillard's

use of force with a constitutional violation for excessive force, and unfairly prejudice the jury against Defendants. Fed. R. Evid. 403. Moreover, the Exhibit is inadmissible.

First, the document is classic hearsay. Fed. R. Evid. 801(c.) Any offer of the Exhibit that can even be inferred to show that an agency or regulatory body found that the Defendants used unreasonable force violates FRE 801. While conceivable that Plaintiffs could find some other use for the Exhibit, any generalized description or references to it should be excluded or at least require prior Court approval. *See Clapper v. Am. Realty Invs., Inc.*, No. 3:14-CV-02970-X, 2021 WL 8999317, at *7 (N.D. Tex. Apr. 25, 2021) (denying motion *in limine* on hearsay grounds but holding that "Plaintiffs should signal their intent to introduce evidence or testimony related to the [ ] email to allow for objection and evaluation before introduction.")

Second, settlement agreements are almost never admissible evidence. The Fifth Circuit long ago held that

> as the framers of Rule 408 clearly contemplated, the potential impact of evidence regarding a settlement agreement with regard to a determination of liability is profound. It does not tax the imagination to envision the juror who retires to deliberate with the notion that if the defendants had done nothing wrong, they would not have paid the money back.

*United States v. Hays*, 872 F.2d 582, 589 (5th Cir. 1989.)

In finding that another settlement agreement was improperly admitted, the Fifth Circuit noted that "[i]t is reasonable to infer that jurors would view the settlement as an admission of guilt. In addition, the incentive for parties to settle cases involving many plaintiffs would be undermined if their settlement with one victim could come back to haunt them in later suits." *McHann v. Firestone Tire & Rubber Co.*, 713 F.2d 161, 166–67 (5th Cir. 1983.) The jury here could easily assume the Paramedics have admitted to fault and did each of the alleged misdeeds. More critically, the jury could presume that by extension, Defendants likewise committed the misdeeds

4

the Paramedics were alleged to not have stopped. This would necessitate a needless side litigation over the Paramedics' actions when the Paramedics are not defendants in this case.

Further, this is not a settlement agreement to which the Defendants were ever parties, litigants, or were in any way afforded due process to contest the central allegations against them and the adverse information contained in the settlement agreement. Instead, this was a dispute between the Paramedics and a state licensing agency for healthcare personnel engaged in on-the-ground medical services, not an agency equipped to determine whether a use of force was or was not appropriate. "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation," *Graham v. Connor*, 490 U.S. 386, 396–97 (1989), not the as-yet-resolved determinations of a state agency that licenses paramedics.

Third, as another Texas federal court explained, "[a] settlement is not an indication of the truth of the allegations in a complaint." *Martinez v. Walgreen Co.*, No. 7:17-CV-309, 2018 WL 3241228, at *5 (S.D. Tex. July 3, 2018), *aff'd,* 935 F.3d 396 (5th Cir. 2019) (citing *Burks v. XL Specialty Ins. Co.*, 534 S.W.3d 458 (Tex. App.—Houston [14th Dist.] 2015).) The Exhibit reflects a settlement and under controlling Texas law, rather than an admission of liability, the Texas Supreme Court has famously said that a "settlement agreement does nothing more than buy peace." *State Farm Cty. Mut. Ins. Co. of Tex. v. Ollis*, 768 S.W.2d 722, 723 (Tex. 1989) (per curiam.)

The Paramedics "bought peace" with their settlement with the Texas agency. Parties settle disputes for countless reasons that have nothing to do with acknowledging fault or with disputed issues that are completely resolved.[1] Until the appropriateness of the admission of this evidence is

---

[1] *See, e.g.* Jason Krause, Some Cases Settle to Avoid E-Discovery Costs Survey Results Show Corporate Lawyers Are Up on E-Issues, ABA J.E-Report, March 25, 2005.

5

determined,[2] Plaintiffs should not be allowed to reference its existence or contents during voir dire or before the jury during their opening statements or closing arguments, and should be required to seek Court approval for using or referencing it during trial.

## II.     CONCLUSION

WHEREFORE, Defendants Dustin Dillard, Kevin Mansell, Danny Vasquez, and Raymond Dominguez respectfully request that the Court order Plaintiffs to refrain from mentioning the Exhibit or offering to introduce it into evidence until they obtain approval from the Court.

Respectfully submitted,

CITY ATTORNEY OF THE CITY OF DALLAS

TAMMY L. PALOMINO
Interim City Attorney

*s/ J. Cheves Ligon*
Senior Assistant City Attorney
Texas State Bar No. 24070147
john.ligon@dallas.gov

Dallas City Attorney's Office
7DN Dallas City Hall
1500 Marilla Street
Dallas, Texas 75201
Telephone:    214-670-3519
Facsimile:    214-670-0622

*Attorneys for Defendants Dustin Dillard, Kevin Mansell, Danny Vasquez, and Raymond Dominguez*

---

[2] Federal Rules of Evidence 404, 405, and 608 provide limitations on the admission of character evidence, including specific instances of conduct of a witness. Defendants contend that these rules preclude the use of the Exhibit against Defendants.

## CERTIFICATE OF SERVICE

      I certify that on July 17, 2023, I electronically filed the foregoing document with the clerk of court for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the court. The electronic case filing system sent a "Notice of Electronic Filing" to the following attorneys of record who have consented in writing to accept this Notice as service of this document by electronic means.

<em>s/ J. Cheves Ligon</em><br>Senior Assistant City Attorney