IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| VICKI TIMPA et al., | § § § | |
| Plaintiffs, | § § | |
| and | § § | |
| JOE TIMPA, | § § | Civil Action No. 3:16-CV-03089-N |
| Intervenor, | § § | |
| v. | § § | |
| DUSTIN DILLARD et al., | § § § | |
| Defendants. | § § § | |

# DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION FOR NEW TRIAL ON DAMAGES

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ............................................................................................................ ii

I.   SUMMARY OF RESPONSE .......................................................................................... 1

II.  ARGUMENTS AND AUTHORITIES ............................................................................ 3

     A.   Plaintiffs have waived any complaint that the jury's verdict on liability and damages is inconsistent because they failed to raise such a complaint before the jury was dismissed ............................................................. 3

     B.   Fifth Circuit courts rarely overturn jury verdicts, and verdicts are only overturned in extraordinary circumstances that are not present in this case. ......................................................................................................................... 4

     C.   The venue state's laws of damages generally control in section 1983 suits and Texas law allows for the zero damages the Plaintiffs received. ............................................................................................................... 6

     D.   The circumstances of, and evidence presented at, the trial more than justify the jury's decision to award Plaintiffs no money in damages. ................. 9

     E.   Plaintiffs' Motion provides no authority or justification for overturning the jury's findings. .................................................................................................. 12

III. CONCLUSION ............................................................................................................... 15

**TABLE OF AUTHORITIES**

Cases

*Arceneaux v. Mike Hooks, Inc.*,
 15 F.3d 1079 (5th Cir. 1994) ................................................................................................ 14
*Austin v. Davis*,
 876 F.3d 757 (5th Cir. 2017) ................................................................................................ 14
*Bentley v. Bunton*,
 94 S.W.3d 561 (Tex. 2002)..................................................................................................... 8
*Carr v. Wal-Mart Stores, Inc.*,
 312 F.3d 667 (5th Cir. 2002) .................................................................................................. 5
*Childs v. Wal-Mart Stores, Inc.*,
 96 F.3d 1444, 1996 WL 512202 (5th Cir. 1996) .................................................................... 5
*De Paz v. Duane*,
 858 F. App'x 734 (5th Cir. 2021)............................................................................................ 7
*Delesma v. City of Dallas*,
 770 F.2d 1334 (5th Cir. 1985) ................................................................................................ 7
*Foradori v. Harris*,
 523 F.3d 477 (5th Cir. 2008) .............................................................................................. 5, 6
*Ham Marine, Inc. v. Dresser Indus., Inc.*,
 72 F.3d 454 (5th Cir. 1995) .................................................................................................... 5
Hancock v. Variyam,
 400 S.W.3d 59 (Tex. 2013)..................................................................................................... 8
*Heckman v. Gonzalez-Caballero*,
 65 F.4th 222 (5th Cir. 2023) ................................................................................................... 5
Hetzel v. Prince William County,
 523 U.S. 208 (1998) (per curiam)........................................................................................... 5
*Hewitt v. Helms*,
 482 U.S. 755 (1987)............................................................................................................. 12
*In re DePuy Orthopaedics, Inc. Pinnacle Hip Implant Prod. Liab. Litig.*,
 No. 3:11-MD-2244-K, 2017 WL 3841608 (N.D. Tex. June 28, 2017) .................................. 6
*McCaig v. Wells Fargo Bank (Tex.), N.A.*,
 788 F.3d 463 (5th Cir. 2015) .................................................................................................. 6
*Montano v. Orange County*,
 842 F.3d 865 (5th Cir. 2016) ......................................................................................... 2, 4, 7
*Oyefodun v. City of New Orleans*,
 54 F. App'x 793 (5th Cir. 2002) ............................................................................................. 5
*Parkway Co. v. Woodruff*,
 901 S.W.2d 434 (Tex. 1995)................................................................................................... 8
*Pena-Rodriguez v. Colorado*,
 580 U.S. 206 (2017).............................................................................................................. 14
*Peralta v. Epic Diving & Marine Servs., L.L.C.*,
 No. CIV.A. 10-4322, 2012 WL 3815634, (E.D. La. Sept. 4, 2012.) .................................... 13

*Puga v. RCX Sols., Inc.*,
  922 F.3d 285(5th Cir. 2019) ................................................................................. 8
*Rubenstein v. Republic Nat. Life Ins. Co.*,
  74 F.R.D. 337 (N.D. Tex. 1976) ........................................................................... 3
*Saenz v. Fid. & Guar. Ins. Underwriters*,
  925 S.W.2d 607(Tex. 1996) .................................................................................. 8
*Seidman v. Am. Airlines, Inc.*,
  923 F.2d 1134 (5th Cir. 1991) .............................................................................. 6
*Slade v. City of Marshall, Tex.*,
  814 F.3d 263 (5th Cir. 2016) ................................................................................ 7
*Smith v. Acevedo*,
  478 F. App'x 116 (5th Cir. 2012) ....................................................................... 12
*Stancill v. McKenzie Tank Lines, Inc.*,
  497 F.2d 529 (5th Cir. 1974) ................................................................................ 2
*Starks v. Advantage Staffing, LLC*,
  217 F. Supp. 3d 917 (E.D. La. 2016) ................................................................. 13
*Stokes v. United States*,
  753 F. App'x 279 (5th Cir. 2018) ......................................................................... 6
*Team Contractors, L.L.C. v. Waypoint Nola L.L.C.*,
  976 F.3d 509 (5th Cir. 2020) ....................................................................... 2, 3, 4
*Whitehead v. Food Max, Inc.*,
  163 F.3d 265 (5th Cir. 1998) ................................................................................ 5
*Wiltz v. Welch*,
  651 F. App'x 270 (5th Cir. 2016) ................................................................. 12, 13

**Statutes**
28 U.S.C. § 1983 ......................................................................................................... 7
42 U.S.C. § 1988 ......................................................................................................... 7

**Rules**
Fed. R. Civ. P. 49(b)(3) .............................................................................................. 4
Fed. R. Civ. P. 51(c.) ................................................................................................ 12
Fed. R. Civ. P. 59(a) .................................................................................................. 5
Fed. R. Evid. 606(b)(1) ............................................................................................ 16

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| VICKI TIMPA et al., | § § § | |
| Plaintiffs, | § § | |
| and | § § | |
| JOE TIMPA, | § § | Civil Action No. 3:16-CV-03089-N |
| Intervenor, | § § | |
| v. | § § | |
| DUSTIN DILLARD et al., | § § § | |
| Defendants, | § § | |

**DEFENDANTS' RESPONSE TO PLAINTIFFS'
MOTION FOR NEW TRIAL ON DAMAGES**

TO THE HONORABLE COURT:

Defendants Dustin Dillard, Kevin Mansell, Danny Vasquez, and Raymond Dominguez ("Defendants") file this Response to Plaintiffs Vicki Timpa, the Estate of Anthony Timpa, Cheryl Timpa and K.T.'s Motion for New Trial on Damages (ECF No. 334, "Motion") and respectfully urge the Court to deny the Motion for the following reasons:

**I. SUMMARY OF RESPONSE**

Upon receiving the jury's verdict, the Court solicited objections from the parties, through counsel, concerning the jury's verdict and specifically asked whether either side desired for it to return the jury for further consideration of its answers and verdict. Neither side objected. Plaintiffs now ask the Court to order a new trial limited only to damages, contending that the jury's verdict

1

finding Defendant Dominguez liable for depriving Tony Timpa of his constitutional rights, but awarding no damages to Timpa's parents and Estate is inconsistent. However, Plaintiffs have waived any objection to inconsistencies under Fed. R. Civ. P. 49(b) by failing to object to the form of the verdict and answers when the jury announced its verdict, and the jury was still empaneled. *See Team Contractors, L.L.C. v. Waypoint Nola L.L.C.*, 976 F.3d 509, 515 (5th Cir. 2020) (quoting *Montano v. Orange County*, 842 F.3d 865, 881-82 (5th Cir. 2016) ("objections to alleged inconsistencies between a general verdict and answers to verdict questions are waived if a party fails to object when the jury announces the verdict, while the jury is still empaneled.")); *Stancill v. McKenzie Tank Lines, Inc.*, 497 F.2d 529, 534-35 (5th Cir. 1974) ("By failing to object to the form of the verdict and answers at the time they were announced by the jury, both parties waived any objection to inconsistencies under [Federal] Rule [of Civil Procedure] 49(b).")

Even if Plaintiffs have not waived their objection to challenge the jury's verdict under Rule 49(b), Plaintiffs have failed to show that the jury's verdict on damages was against the great weight of the evidence sufficient to warrant a new trial. It is solely within the jury's province to assess the weight of the evidence and determine the credibility of witnesses. *Montano*, 842 F.3d at 874. Here, the jury, after hearing all the evidence, determined that K.T., Timpa's minor child, was entitled to $1 million in noneconomic damages, but that Timpa's parents and the Estate of Anthony Timpa, were not entitled to any damages award.[1] Plaintiffs' Motion does not cite any authority to support their claim that the jury's award of zero dollars in noneconomic damages was an "abuse of discretion." Given the intangible qualities of what constitutes "mental anguish" and "pain and suffering," Fifth Circuit courts grant wide discretion in a jury's assessment and award of noneconomic damages.

---

[1] Plaintiffs abandoned their economic damages claim during trial, leaving noneconomic and punitive damages as the only remaining claims for the jury's consideration and determination.

As this Court noted long ago, "uncertainties of law and fact exist and the competent risks and costs [are] necessarily inherent in taking any litigation to completion." *Rubenstein v. Republic Nat. Life Ins. Co.*, 74 F.R.D. 337, 347 (N.D. Tex. 1976). Plaintiffs subjected Defendants to a federal lawsuit that ended in a jury verdict after seven years of litigation. In the end, the jury decided that only K.T. should recover—and our system of justice requires the jury's verdict should stand.

## II. ARGUMENTS AND AUTHORITIES

### A. Plaintiffs have waived any complaint that the jury's verdict on liability and damages is inconsistent because they failed to raise such a complaint before the jury was dismissed.

Put in its simplest terms, Plaintiffs' Motion argues that the jury's verdict finding Dominguez liable while simultaneously finding no damages for Vicki Timpa, Joe Timpa,[2] or Anthony Timpa's estate is fatally inconsistent. (*See generally* Mot.) However, Plaintiffs have already affirmatively waived this complaint against the jury's verdict, as, upon receipt of the verdict, they consented to the jury's dismissal in lieu of asking that the verdict be returned to the jury while it was still empaneled. This reason alone warrants denial of Plaintiffs' Motion.

Federal Rule of Civil Procedure 49 sets forth the remedies available when there are supposed inconsistencies in a jury's special or general verdict. Here, the jury's verdict was a general verdict, as the jury was instructed on the law and had to apply the law to its factual findings to answer the questions in the Court's verdict form. *See Team Contractors, L.L.C.*, 976 F.3d at 517 (classification as a general verdict "depends on whether jurors must apply the explanations given to them on the law to their fact findings and thereby indicate a final result."). (*See* ECF No. 331 Ct.'s Charge to the Jury.) When a jury submits inconsistent answers on a general verdict form, the

---

[2] Although the Motion complains that no damages were awarded to Joe Timpa (*see, e.g.*, Mot. 1-2), the Motion is only filed on behalf of Plaintiffs Vicki Timpa, individually and as a representative of Anthony Timpa's Estate, Cheryll Timpa, and K.T. (*see id.* 1, 6). Joe Timpa has not sought relief through any post-verdict motions.

3

Court may (1) approve a judgment according to the answers, (2) direct the jury to continue deliberating to cure any inconsistencies, or (3) "order a new trial." Fed. R. Civ. P. 49(b)(3). The options available to Plaintiffs here are limited, however, as it has long been the law in this circuit that "'objections to alleged inconsistencies between a general verdict and answers to verdict questions are waived if a party fails to object when the jury announces the verdict, while the jury is still empaneled.'" *Team Contractors, L.L.C.*, 976 F.3d at 521 (quoting *Montano*, 842 F.3d at 881-82).

Upon receiving the jury's verdict, the Court read the jury's verdict to counsel in chambers. Upon doing so, the Court specifically asked the parties whether the case should be returned to the jury for further deliberation. All parties declined and consented to the jury's dismissal. Further, the Court thereafter read the jury's verdict in open court before the parties and the jury. At that time, none of the plaintiffs objected to the jury's verdict. Because Plaintiffs did not complain of the purported inconsistency in the jury's verdict while the jury was still empaneled, they have waived any complaint concerning such purported inconsistency. *See Team Contractors, L.L.C.*, 976 F.3d at 521; *Montano*, 842 F.3d at 881-82. Accordingly, for this reason alone, the Court should deny Plaintiffs' motion for new trial.

> **B.     Fifth Circuit courts rarely overturn jury verdicts, and verdicts are only overturned in extraordinary circumstances that are not present in this case.**

Even if Plaintiffs have not waived their objection to challenge the jury's verdict under Rule 49(b), Plaintiffs have failed to show that the jury's verdict on damages warrants a new trial. Federal Rule of Civil Procedure 59(a) provides that a court may grant a new trial "after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a). But "[u]nless the evidence is of such quality and weight that reasonable and

4

impartial jurors could not arrive at such a verdict, the findings of the jury must be upheld." *Childs v. Wal-Mart Stores, Inc.*, 96 F.3d 1444, 1996 WL 512202, at *1 (5th Cir. 1996) (citing *Ham Marine, Inc. v. Dresser Indus., Inc.*, 72 F.3d 454, 459 (5th Cir. 1995)). The Fifth Circuit has "repeatedly held that a jury's award is not to be disturbed unless it is so large as to 'shock the judicial conscience,' indicate 'bias, passion, prejudice, corruption, or other improper motive' on the part of the jury, or is 'contrary to all reason.'" *Id.* (citation omitted).

The Fifth Circuit has made clear that it will not overturn the denial of a new trial "unless the movant makes a 'clear showing' of an 'absolute absence of evidence to support the jury's verdict,' thus indicating that the district court abused its discretion in refusing to find the jury's verdict 'contrary to the great weight of the evidence.'" *Oyefodun v. City of New Orleans*, 54 F. App'x 793 (5th Cir. 2002) (quoting *Whitehead v. Food Max, Inc.*, 163 F.3d 265, 269 (5th Cir.1998)).

Critically, absent special circumstances, "[t]he Seventh Amendment requires that no fact tried by a jury, shall be otherwise re-examined . . . ." *Hetzel v. Prince William County*, 523 U.S. 208, 211 (1998) (per curiam); *see also Carr v. Wal-Mart Stores, Inc.*, 312 F.3d 667, 672 (5th Cir. 2002) ("The Seventh Amendment 'fashions [a] federal policy favoring jury decisions of disputed fact questions.'") (citation omitted). And "[t]he size of the award a plaintiff is entitled to is generally a question of fact, and the reviewing court should be 'exceedingly hesitant' to overturn the decision of the jury—the primary fact finder—and the trial judge who concurred with its verdict." *Foradori v. Harris*, 523 F.3d 477, 504 (5th Cir. 2008) (citations omitted). Therefore, the general practice of federal courts is to defer to juries on the issue of damages. *See Heckman v. Gonzalez-Caballero*, 65 F.4th 222, 227 (5th Cir. 2023) (cleaned up) ("In sum, jury verdicts on

5

damages may be overturned only upon a clear showing of excessiveness or upon a showing that they were influenced by passion or prejudice . . .").

Federal courts are reluctant to force a retrial of the noneconomic damages Plaintiffs seek. This is "[b]ecause of the 'intangibility' of nonpecuniary harms like pain and suffering or emotional distress, [the Fifth Circuit is] 'exceedingly hesitant' to overturn a factfinder's judgment calls in this area." *Stokes v. United States*, 753 F. App'x 279, 283 (5th Cir. 2018) (quoting *McCaig v. Wells Fargo Bank (Tex.), N.A.*, 788 F.3d 463, 484 (5th Cir. 2015); *see also In re DePuy Orthopaedics, Inc. Pinnacle Hip Implant Prod. Liab. Litig.*, No. 3:11-MD-2244-K, 2017 WL 3841608, at *5 (N.D. Tex. June 28, 2017) ("Because non-economic damages are 'to a large degree not susceptible to monetary quantification,' the jury has '*especially broad leeway*' when awarding them.") (emphasis added) (quoting *Seidman v. Am. Airlines, Inc.*, 923 F.2d 1134, 1141 (5th Cir. 1991). The Fifth Circuit has thus "upheld the denial of a new trial on the question of damages even when we have disagreed with the award." *Foradori*, 523 F.3d at 504 (citations omitted).

Therefore, at the outset, Plaintiffs face nearly insurmountable odds in seeking this Court's overturning the jury's verdict.

### C.  The venue state's laws of damages generally control in section 1983 suits and Texas law allows for the zero damages the Plaintiffs received.

Section 1983 does not provide specific remedies for claimants. *See* 28 U.S.C. § 1983. To fill in the gaps, 42 U.S.C. § 1988 directs courts to look to the forum state's laws wherever it does not specifically conflict with federal law:

> Section 1988 requires that we apply state law to a section 1983 action where federal law is deficient, unless that state law conflicts with other federal law or policies. This provision is rooted in the recognition that "federal law will not cover every issue that may arise in the context of a federal civil rights action." "In 42 U.S.C. § 1988, Congress 'quite clearly instructs [federal courts] to refer to state statutes' when federal law provides no rule of decision for actions brought under §

6

1983." Section 1988, however, provides that state law governs only "so far as the same is not inconsistent with the Constitution and laws of the United States."

*Slade v. City of Marshall, Tex.*, 814 F.3d 263, 266 (5th Cir. 2016) (internal citations omitted).

The Fifth Circuit has long applied the Texas Wrongful Death Act to claims where, as here, claimants seek damages over a death that a Texas state actor allegedly caused under color of law. *See De Paz v. Duane*, 858 F. App'x 734, 737 (5th Cir. 2021) (applying Texas Wrongful Death Act in section 1983 claim); *Delesma v. City of Dallas*, 770 F.2d 1334, 1338 (5th Cir. 1985) (Applying section 1988 and finding the Texas Wrongful Death Act to be the "relevant source of law" in section 1983 case for a wrongful death claim).

The Fifth Circuit has repeatedly applied Texas law in cases even if it caused the plaintiff to recover nothing:

> Under Texas law, any plaintiff can recover as long as she can prove causation; officers are unlikely to change their behavior in anticipation of the speculative possibility that a future plaintiff will be unable to prove causation at trial. At bottom, [plaintiff's] position reduces to an argument that Texas's causation requirement is inconsistent with the policies underlying § 1983 because it will prevent her from recovering in this case. Nevertheless, as we have said before, "[t]he fact that employing the Texas rule in this case denies compensation to appellants does not suffice to render the borrowing impermissibly inconsistent with federal law."

*Slade*, 814 F.3d at 267 (quoting *Delesma*, 770 F.2d at 1340).

As to awarding noneconomic damages for pain and suffering, Texas law allows the trier of fact "to conclude from 'general experience and common sense' that someone suffered pain." *Montano*, 842 F.3d at 888 (citation omitted). The Fifth Circuit recently described Texas law's approach as follows:

> The Supreme Court of Texas defines loss of consortium as the loss of companionship, emotional support, love, felicity, and sexual relations necessary to a successful marriage. Damages for loss of consortium are non-pecuniary damages, which "do not require certainty of actual monetized loss." They are, instead, "measured by an amount that a reasonable person could possibly estimate as fair

7

> compensation." While "translating the subjective nature of this loss into monetary terms" is difficult, *Texas courts trust "the ability of the jury to calculate an appropriate award based on the evidence."*

*Puga v. RCX Sols., Inc.*, 922 F.3d 285, 296–97 (5th Cir. 2019) (citations omitted) (emphasis added).

Further, rather than assume damages for noneconomic claims for loss of consortium and mental anguish, Texas courts have long required significant evidence to support these claims. *See Parkway Co. v. Woodruff*, 901 S.W.2d 434, 444 (Tex. 1995) (requiring the introduction of "direct evidence of the nature, duration, and severity of their mental anguish, thus establishing a substantial disruption in the plaintiffs' daily routine."). After *Parkway*, the Texas Supreme Court concluded in a personal injury case that "[n]ot only must there be evidence of the *existence* of compensable mental anguish, there must also be some evidence to justify the *amount awarded*." *Saenz v. Fid. & Guar. Ins. Underwriters*, 925 S.W.2d 607, 614 (Tex. 1996) (emphasis added); *see also Hancock v. Variyam*, 400 S.W.3d 59, 68 (Tex. 2013) ("There must be both evidence of the existence of compensable mental anguish and evidence to justify the amount awarded.")

Additionally, Texas courts require juries not just to identify actual evidence of noneconomic damages, but to tether awards to the *quality and extent* of the evidence. For example, in 2017, the Texas high court applied *Saenz* in overturning a $7,000,000 mental anguish award even though "[t]he record le[ft] no doubt that [the plaintiff] suffered mental anguish." *Bentley v. Bunton*, 94 S.W.3d 561, 606 (Tex. 2002). There, that record indicated that (1) the plaintiff could not sleep, (2) he experienced embarrassment in public life, (3) his family life was disrupted, (4) his children were distressed at school, (5) he felt depressed, and (6) he felt that his honor and integrity had been irrevocably impugned. *Id.* at 606–07. But "all of this [wa]s no evidence that [he] suffered mental anguish damages *in the amount of $7 million.*" *Id.* at 607 (emphasis added).

In sum, Texas law on noneconomic damages empowers juries to be the factfinder on whether mental anguish related to the loss exists, ascertaining its scope, and then with determining the fair amount of compensation that is just. It does not require an award of noneconomic damages.

**D.    The circumstances of, and evidence presented at, the trial more than justify the jury's decision to award Plaintiffs no money in damages.**

Given how recently the trial in this case concluded, Defendants are without an official record of the trial to which they can cite. However, nothing in the course of the trial should lead this Court to take the extreme step of reordering the Defendants through another trial on damages. For multiple reasons, the jury was well within its prerogative to award the damages it did.

First, Plaintiffs were not remotely restricted in their presentation of the evidence they had of noneconomic damages. The Court allowed broad direct examinations of Vicki Timpa, Joe Timpa, Cheryll Timpa, and K.T., including Plaintiffs' counsel's extended efforts to draw out the Plaintiffs' testimony of whatever suffering they experienced that was even arguably attributable to the death of Anthony Timpa. In addition to the testimony, the jury saw numerous family photographs and even letters K.T. had written his deceased father. Plaintiffs had ample opportunity to offer testimony and evidence regarding their claimed damages. The jury simply did not view the evidence in the way that Plaintiffs hoped it would.

Second, Defendants offered testimony and evidence regarding the extent of Timpa's addiction to alcohol and drugs. A reasonable jury could have concluded that Plaintiffs' emotional damages resulted from Timpa's choices, and not from the actions of Defendants.

Third, Plaintiffs never objected to this Court's jury charge, instructions, or interrogatories on damages. Pertinently, this Court's charge included the following:

9

QUESTION NO. 5:

What sum of money, if paid now in cash, would fairly and reasonably compensate Plaintiffs for their damages, if any, resulting from the death of Tony Timpa?

Consider the elements of damages listed below and none other. Consider each element separately. Do not award any sum of money on any element if you have otherwise, under some other element, awarded a sum of money for the same loss. That is, do not compensate twice for the same loss, if any. Do not include interest on any amount of damages you find.

Answer separately, in dollars and cents, for damages, if any. Do not reduce the amounts, if any, in your answers because of the negligence, if any, of Tony Timpa.

The elements of damages are:

1. Loss of companionship and society sustained in the past or that, in reasonable probability, will be sustained in the future.

2. Mental anguish sustained in the past or that, in reasonable probability, will be sustained in the future.

Answer in dollars and cents for damages, if any, for:

(ECF No. 331, p. 17.)

The jury was instructed four times to assess what amount of money would fairly compensate the Timpas, "*if any.*" (*Id.* (emphasis added).) The jury was similarly instructed on the question of the Estate of Tony Timpa. (*Id.* at 19.) In other words, they were explicitly charged that they did not have to award any money at all, yet at no time did Plaintiffs object to this instruction. Under the Federal Rules of Civil Procedure, Plaintiffs have waived any objection to this instruction which clearly and unequivocally instructed the jury that it was not required to award damages. *See* Fed. R. Civ. P. 51(c.)

Third, it became obvious through evidence admitted during the trial that at least some of the Plaintiffs had been dishonest throughout the legal process. For example, Joe Timpa admitted on the stand that he had known his son had serious drug and alcohol problems, yet he disclaimed any such knowledge at both his deposition and—more critically—to the Dallas County Medical Examiner soon after his son died. Cheryll Timpa, likewise, brazenly continued to maintain that she had *no knowledge* that her husband of many years and the co-parent of her son had any sort of drug and alcohol problems, even though he had been to rehab four times and had just spent forty days in a rehabilitation facility mere weeks before his death. Both Cheryll Timpa and Joe Timpa testified in their depositions that they did not know the names of any of Anthony Timpa's friends, yet Joe Timpa admitted on the stand that he did, in fact, know who Anthony's friends were. Based on such misrepresentations, the jury likely discounted the remainder of Plaintiffs' testimony regarding their damages.

Fourth, it is more than probable that the massive amount of money damages Plaintiffs sought had a negative impact on the jury. By way of comparison, the City of Minneapolis settled George Floyd's family's lawsuit for $27 million,[3] the City of Louisville settled the lawsuit with the family of Breonna Taylor for $12 million,[4] and less than a month after the jury denied Plaintiffs' request for over one billion dollars, a Los Angeles jury awarded $13.5 million for a death in custody where officers used their bodyweight to restrain the decedent.[5] Plaintiffs' counsel asked the jury to award *hundreds of millions of dollars* in compensatory damages—only to then request the jury to *multiply that figure* for purposes of punitive damages. A reasonable jury could well have concluded that Plaintiffs were not pursuing this lawsuit for obtaining justice but were

---

[3] https://apnews.com/article/minneapolis-pay-27-million-settle-floyd-family-lawsuit-52a395f7716f52cf8d1fbeb411c831c7
[4] https://www.cnn.com/2020/09/15/us/breonna-taylor-louisville-settlement/index.html
[5] https://apnews.com/article/los-angeles-police-custody-death-lawsuit-verdict-556e0a54283eea66dfce4599d116c32c

instead seeking a financial windfall. As such, the jury's determination that the Plaintiffs were entitled to zero dollars in damages was judicious.

Finally, the circumstances at bar—a constitutional violation with no damages—are nothing new. For example, the Fifth Circuit examined one case where a section 1983 plaintiff whose constitutional rights had been violated "received nominal damages of one dollar instead of the approximately $650,000 in actual damages that he sought" and found that his "relatively minor success in this case accomplished little beyond giving him 'the moral satisfaction of knowing that a federal court concluded that his rights had been violated.'" *Smith v. Acevedo*, 478 F. App'x 116, 125 (5th Cir. 2012) (quoting *Hewitt v. Helms*, 482 U.S. 755, 762 (1987)).

In sum, for these reasons alone, the jury was well within its rights—and within reason—to refuse to award Plaintiffs any financial compensation.

### E. Plaintiffs' Motion provides no authority or justification for overturning the jury's findings.

Plaintiffs' Motion essentially argues that if a jury finds tort liability, it must inexorably find pain and suffering damages for anyone with standing to sue the tortfeasor(s). (*See* Mot. 4 ("As a matter of law, the jury was required to award the Timpas damages after having found that Defendant Dominguez failed to intervene to prevent their son's death from excessive force.").) Plaintiffs cite no applicable authority for this proposition. Defendants are certainly unaware of any.

First, Plaintiffs inexplicably cite a Fifth Circuit case applying Louisiana law. *Id.* (citing *Wiltz v. Welch*, 651 F. App'x 270, 272 (5th Cir. 2016) (seeking new trial because "verdict awarding him past medical expenses but no general damages is contrary to Louisiana law" and because the "Louisiana Supreme Court has recognized that 'a jury verdict awarding medical expenses but simultaneously denying damages for pain and suffering will most often be inconsistent in light of the record.'")) (citation omitted). Plaintiffs next cite an Eastern District of Louisiana decision that

12

applied *Wiltz* in a maritime law case where objective physical injuries were found in evidence. *Id*. (citing *Starks v. Advantage Staffing, LLC*, 217 F. Supp. 3d 917, 920 (E.D. La. 2016) (applying *Wiltz* to find "Plaintiff will likely need to continue taking pain medication for another year. The Court therefore finds there is no evidentiary basis for the jury's award of '$0' for future pain and suffering because the Plaintiff has proven objective injuries that require medical care.")) Lastly, Plaintiffs cite an unreported Eastern District of Louisiana maritime case where a new trial on damages was ordered, *inter alia*, because the defendant had "not cited to any cases upholding a jury's award of '$0' for pain and suffering when the plaintiff underwent surgery as a result of an injury for which the jury found the defendant liable." *Id*. (citing *Peralta v. Epic Diving & Marine Servs., L.L.C.*, No. CIV.A. 10-4322, 2012 WL 3815634, at *3 (E.D. La. Sept. 4, 2012.) Even if the final two were somehow applicable, their hallmark was pain and suffering from "objective injuries" that required medical care—not the noneconomic pain and suffering damages Plaintiffs sought at trial. In other words, Plaintiffs point this Court to no case that holds a jury abuses its discretion in finding a constitutional violation but no noneconomic damages for some, but not all, of the claimants.

Second, Plaintiffs cite a *Dallas Morning News* article in which it was reported that two of the jurors expressed, during an interview at Plaintiffs' counsel's office, misgivings about the final award. (Mot. 2.) Not only is such hearsay inadmissible, even *sworn testimony* of this type would not be admissible under the Federal Rules of Evidence:

> During an inquiry into the validity of a verdict or indictment, a juror may not testify about any statement made or incident that occurred during the jury's deliberations; the effect of anything on that juror's or another juror's vote; or any juror's mental processes concerning the verdict or indictment. The court may not receive a juror's affidavit or evidence of a juror's statement on these matters.

13

Fed. R. Evid. 606(b)(1). Furthermore, the jurors' statements to the media were engineered by Plaintiffs' counsel as part of a staged press conference at his office, and the jurors explicitly mentioned that their regrets arose largely from inadmissible evidence presumably supplied to them by Plaintiffs' counsel.

As the Fifth Circuit recently noted, even where there are allegations that a juror lied during the voir dire process, such evidence is prohibited and the "only exception" the Supreme Court has "made to Rule 606(b)(1)'s prohibitions is when, after the jury is discharged, a juror comes forward with compelling evidence that another juror made clear and explicit statements indicating that racial animus was a significant motivating factor in his or her vote to convict." *Austin v. Davis*, 876 F.3d 757, 790 (5th Cir. 2017) (quoting *Pena-Rodriguez v. Colorado*, 580 U.S. 206, 211 (2017) (quotation marks omitted)). Therefore, whatever the two jurors told the *Dallas Morning News* should be disregarded.

Third, Plaintiffs attached the purported results of "two focus groups" which led Plaintiffs to believe that they were likely to receive a substantial jury award. (Mot. p. 2, n.1 (citing ECF No. 334-1).) Plaintiffs cite no case law or evidentiary rules that make such a document either admissible hearsay or relevant evidence that a jury "abused its discretion." Indeed, the Fifth Circuit has found that even when juries deviate from admitted economic experts' assessments, "[n]onetheless, the law does not mandate that the jury return an award which falls within parameters established by such experts." *Arceneaux v. Mike Hooks, Inc.*, 15 F.3d 1079 (5th Cir. 1994). Further, as noted above, Plaintiffs sought hundreds of millions of dollars from the jury in compensatory damages and many more multiple of that in punitive damages. Yet even their own consultants' estimations showed a range of jury verdicts as low as $3 million—and that was

assuming a victory. ECF No. 334-2, p. 8. If anything, these "focus group" results belie Plaintiffs' claims that the jury abused its authority in only awarding $1 million to K.T.[6]

### III. CONCLUSION

After years of castigating Defendants in the media when they were prevented from defending themselves, Plaintiffs subjected Defendants to a seven-day federal jury trial. The jury decided that Anthony Timpa's mother, father, and estate were entitled to <u>zero dollars in damages</u>, and that verdict should stand. Therefore, Defendants respectfully request that the Court deny Plaintiffs' Motion.

Respectfully submitted,

CITY ATTORNEY OF THE CITY OF DALLAS

TAMMY L. PALOMINO
City Attorney

s/ *Lindsay Wilson Gowin*
Senior Assistant City Attorney
Texas State Bar No. 24111401
lindsay.gowin@dallas.gov

Dallas City Attorney's Office
7DN Dallas City Hall
1500 Marilla Street
Dallas, Texas 75201
Telephone: 214-670-3519
Facsimile:  214-670-0622

*Attorneys for Defendants Dustin Dillard, Kevin Mansell, Danny Vasquez, and Raymond Dominguez*

---

[6] There are other concerns about this document. First, it states that "[t]hese results are from *an online jury study*." ECF No. 334-2 at 10 (emphasis added.) The document does not include any studies or literature on how reliable an internet-based methodology is to study a strictly in-person process of hearing evidence and deliberating among other jurors. Second, this document appears to contain unredacted confidential work product and attorney litigation strategy. *See, e.g. id.* at 27. ("You need to empower those jurors with a high request and empower them to fight for it. It isn't every day you have a case that has a realistic 9-figure potential.") If this disclosure were in error, any work product or attorney-client privileges have been waived.

## CERTIFICATE OF SERVICE

  I certify that on November 7, 2023, I electronically filed the foregoing document with the clerk of court for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the court.  The electronic case filing system sent a "Notice of Electronic Filing" to the following attorneys of record who have consented in writing to accept this Notice as service of this document by electronic means.

*s/ Lindsay Wilson Gowin*
Senior Assistant City Attorney
